UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Jae H. Cho, Esq.
**FELICELLO LAW P.C.**
100 Plainfield Ave., Ste 8E
Edison, NJ 08817
Telephone:  732-545-9600
Email: jae@felicellolaw.com

Michael James Maloney, Esq. (*pro hac vice* pending)
**FELICELLO LAW P.C.**
366 Madison Ave, 3rd Floor
New York, NY 10017
Telephone:  (212) 584-7806
Direct:  (646) 564-3510
Email:  mmaloney@felicellolaw.com
*Counsel for Joseph Falcao*

| | |
|---|---|
| In re:<br><br>1 THRASIO ONE, INC.,<br><br>    *Reorganized Debtor*. | Chapter 11<br><br>Case No. 24-11850 (CMG) |
| META ADVISORS, LLC, solely in its capacity as Trustee of the Thrasio Legacy Trust,<br><br>    *Plaintiff*,<br><br>   v.<br><br>JOSHUA SILBERSTEIN; CARLOS CASHMAN; DANIEL BOOCKVAR; JOSEPH FALCAO; MOUNIR OUHADI; ADITYA RATHOD; ARI HOROWITZ; EVERYTHING'S COMING UP MILLHOUSE, LLC; CASHMAN FAMILY INVESTMENT II, LLC; HUDSON PALM LLC; and YARDLINE CAPITAL CORP.,<br><br>    *Defendants*. | Adv. Pro. No. 24-01637 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANT JOSEPH FALCAO TO COMPEL ARBITRATION AND STAY OR, IN THE ALTERNATIVE, TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 2

STANDARD OF REVIEW ............................................................................................... 5

ARGUMENT ................................................................................................................... 8

I.      The Claims Against Falcao Must be Arbitrated ................................................... 8

II.     In the Alternative, the Claims Against Falcao Should be Dismissed .................. 9

   A.     Counts II and III must be dismissed for failure to state a claim. ................. 10

   B.     Count IV - Conspiracy to Fraudulently Transfer Tender Offer Proceeds ... 13

   C.     The Remaining Claims Against Mr. Falcao Must Be Dismissed ................. 15

        1.      Plaintiff's claim against Mr. Falcao for unjust enrichment must be dismissed
                as untimely. .............................................................................. 15

        2.      Plaintiff's claims against Mr. Falcao for breach of fiduciary duty of oversight,
                waste of corporate assets, breaches of fiduciary duty of loyalty, and aiding and
                abetting breach of fiduciary duty all must be dismissed for failure to state a
                claim ......................................................................................... 17

             a)   Count VII - Breach of Fiduciary Duty of Oversight/Loyalty - No Controls .. 17

             b)   Count VIII - Waste of Corporate Assets – Inventory ..................................... 19

             c)   Count IX – Breach of Fiduciary Duty of Loyalty - Usurping Corporate
                  Opportunity ............................................................................. 21

             d)   Count X – Breach of Fiduciary Duty of Loyalty -  Misuse of Confidential
                  Corporate Information ............................................................. 21

             e)   Count XI - Aiding and Abetting Breach of Fiduciary  Duty of
                  Oversight/Loyalty - Secondary Sales ...................................... 23

   CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Adv. Cardiovascular Sys., Inv. v. Medtronic Vascular, Inc.*,
    182 Fed. Appx. 994 (Fed. Cir. 2006) ...................................................... 16

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ............................................................... 6, 12, 17

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) .................................................................. 6, 17

Broz v. Cellular Info. Sys., Inc.,
    673 A.2d 148 (Del. 1996) ................................................................ 21

Cahill v. Silva,
    188 N.E.3d 984 (Mass. App. 2022) ....................................................... 14

CompuCredit Corp. v. Greenwood,
    565 U.S. 95 (2012) ....................................................................... 9

Creamer v. Gen. Teamsters Loc. Union 326,
    579 F. Supp. 1284 (D. Del. 1984) ........................................................ 14

*D'Addario v. Johnson & Johnson*, Civ. No. 19-15627,
    2020 WL 3546750 (D.N.J. June 30, 2020) ................................................. 17

Dean Witter Reynolds, Inc. v. Byrd,
    470 U.S. 213 (1985) ...................................................................... 8

Emerson Radio Corp. v. Fok Hei Yu, No. 2:20-CV-01618-WJM-MF,
    2021 WL 1186824 (D.N.J. Mar. 30, 2021) ................................................. 15

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) .............................................................. 6

Gavin v. Club Holdings, LLC, No. CV 15-175-RGA,
    2016 WL 1298964 (D. Del. Mar. 31, 2016) ................................................ 15

*Glassberg v. Boyd,*
    35 Del.Ch. 293, 116 A.2d 711 (1955) .................................................... 14

Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    885 F.2d 1149 (3d Cir. 1989) ............................................................. 8

Henry Schein, Inc. v. Archer and White Sales, Inc.,
    586 U.S. 63 (2019) ....................................................................... 8

*In re Allserve Sys. Corp.*,
   379 B.R. 69 (Bankr. D.N.J. 2007)...................................................................... 7

*In re Am. Metrocomm Corp.*,
   274 B.R. 641 (Bankr. D. Del. 2002) .................................................................. 7

In re Bernstein,
   259 B.R. 555 (Bankr. D.N.J. 2001)................................................................... 14

In re Bridge,
   18 F.3d 195 (3d Cir. 1994) ............................................................................... 10

In re Bridgeport Holdings, Inc.,
   388 B.R. 548 (Bankr. D. Del. 2008) ........................................................... 18, 19

In re Caremark Intern. Inc. Derivative Litig.,
   698 A.2d 959 (Del. Ch. 1996)........................................................................... 18

*In re Clark Ent. Group, Inc.*,
   183 B.R. 73 (Bankr. D.N.J. 1995)...................................................................... 7

In re DSI Renal Holdings, LLC,
   574 B.R. 446 (Bankr. D. Del. 2017) ................................................................. 20

*In re Fedders N.A., Inc.*,
   405 B.R. 527 (Bankr. D. Del. 2009) ................................................................. 10

In re F-Squared Inv. Mgt., LLC, No. AP 17-50716,
   2019 WL 4261168 (Bankr. D. Del. Sept. 6, 2019)......................................11, 12, 13

In re Hagerstown Fiber Ltd. Partn.,
   277 B.R. 181 (Bankr. S.D.N.Y. 2002)................................................................ 9

In re McDonald's Corp. Stockholder Derivative Litig.,
   291 A.3d 652 (Del. Ch. 2023)...................................................................... 19, 20

In re Mintze,
   434 F.3d 222 (3d Cir. 2006).............................................................................. 9

In re Modell's Sporting Goods, Inc., No. 20-14179 (VFP),
   2023 WL 2961856 (Bankr. D.N.J. Apr. 14, 2023) ............................................. 7

In re NSC Wholesale Holdings LLC,
   637 B.R. 71 (Bankr. D. Del. 2022) ................................................................... 18

In re PHP Healthcare Corp.,
   128 Fed. Appx. 839 (3d Cir. 2005) .................................................................... 7

In re Swarthmore Group, Inc., No. AP 24-00095-AMC,

2025 WL 213861 (Bankr. E.D. Pa. Jan. 15, 2025).................................................. 16

In re Tzanides,
    574 B.R. 489 (Bankr. D.N.J. 2017)........................................................................... 14

*In re USDigital, Inc.*,
    443 B.R. 22 (Bankr. D. Del. 2011) .......................................................................... 23

In re Walt Disney Co. Derivative Litig.,
    906 A.2d 27 (Del. 2006) .......................................................................................... 19

*Jurista v. Amerinox Processing, Inc.*,
    492 B.R. 707 (D.N.J. 2013) ..................................................................................... 10

Kahn v. Kohlberg Kravis Robert's & Co., L.P.,
    23 A.3d 831 (Del. 2011) .......................................................................................... 22

*LaSala v. Bordier et Cie*, 519 F.3d 121 (3d Cir. 2008)........................................... 23

*Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*,
    2005 WL 46553 (D. Del. Jan. 5, 2005) ................................................................... 16

MHA, LLC v. Amerigroup Corp.,
    539 F. Supp. 3d 349 (D.N.J. 2021) .......................................................................... 17

*Neblett v. Clairmont Paciello & Co., P.C.*, No. 4:15-CV-01622,
    2016 WL 3181904 (M.D. Pa. June 8, 2016) ............................................................. 7

Polk 33 Lending, LLC v. Schwartz,
    555 F. Supp. 3d 38 (D. Del. 2021) ........................................................................... 20

*Protas v. Cavanagh*, C.A. No. 6555-VCG,
    2012 WL 1580969 (Del. Ch. May 4, 2012) ............................................................. 21

Smith v. Spizzirri,
    601 U.S. 472 (2024)................................................................................................... 8

*Snyder v. Farnam Cos., Inc.*,
    792 F. Supp. 2d 712 (D.N.J. 2011) ........................................................................... 7

Stone ex rel. AmSouth Bancorporation v. Ritter,
    911 A.2d 362 (Del. 2006) ........................................................................................ 18

**Statutes**

11 U.S.C § 550............................................................................................................ 10

11 U.S.C. § 108........................................................................................................... 16

11 U.S.C. § 544(b)(1).......................................................................................... 10

9 U.S.C. § 1 et seq.............................................................................................. 8

Del. Code Ann. tit. 6, § 1304 ............................................................................11

Del. Code Ann. tit. 6, § 1305 ............................................................................11

Del. Code. Ann. tit. 10, § 8106(a)..................................................................... 15

Mass. Gen. Laws Ann. ch. 109A, § 5 ...............................................................11

Mass. Gen. Laws Ann. ch. 109A, § 6 ...............................................................11

**Treatises**

Restatement (Second) of Conflict of Laws § 302 (1971) ............................................ 15

Defendant Joseph Falcao a/k/a José Falcao ("Falcao") submits this memorandum of law in support of his motion to compel arbitration of the claims asserted by META Advisors, LLC ("Plaintiff") in its capacity as Trustee to the Thrasio Legacy Trust ("Trust"), the successor-in-interest to the claims of chapter 11 debtor Thrasio Holdings, Inc. ("Thrasio" or the "Company") and otherwise stay this action pending the outcome of that arbitration, and in the alternative to dismiss the Complaint as against Mr. Falcao. Falcao does not consent to entry of final orders or judgment by the bankruptcy court in this adversary proceeding. Fed. R. Bankr. P. 7012(b).

## PRELIMINARY STATEMENT

This is the wrong forum for Plaintiff to assert its claims against Mr. Falcao. Nearly all of the claims asserted against Mr. Falcao are subject to a mandatory arbitration provision included in a February 5, 2022 Separation Agreement (the "Separation Agreement") entered into by the Company and Mr. Falcao when Mr. Falcao left his employment at Thrasio effective January 31, 2022 and more than two years before the bankruptcy filing giving rise to this adversary proceeding.

Under the Separation Agreement, disputes between Mr. Falcao and the Company "arising out of the terms of [the] agreement, their interpretation, and any of the matters herein released shall be subject to arbitration." Ex. A § 17. The "matters herein released" include, *inter alia*, claims related to his employment by the company and claims related to his "right to purchase or actual purchase of shares of stock of the Company, including, without limitation, any claims for fraud, misrepresentation, breach of fiduciary duty; breach of duty under applicable state corporate law, and securities fraud under any state or federal law." Ex. A § 5.

Given the broad arbitration clause, most of Plaintiff's claims against Mr. Falcao, which include claims of conspiracy to fraudulently transfer tender offer proceeds, unjust enrichment, breach of fiduciary duty, waste of corporate assets, and aiding and abetting breach of fiduciary duty, must be arbitrated as provided under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. The

1

Court also has the discretion to stay the constructive fraudulent transfer claims brought under 11 U.S.C. § 544(b). Accordingly, the Court should stay the entire action as against Mr. Falcao, pending completion of the arbitration.

If the Court determines that the arbitration provision does not provide for arbitration of these claims,[1] the Court should dismiss Plaintiff's claims against Mr. Falcao because they fail to plausibly state a claim. The allegations do not delineate how Mr. Falcao, in contrast to the group of "D&O Defendants" as a whole, committed the alleged wrongdoing. Nor do the allegations properly allege the financial condition of the Company at the time of the transactions now being attacked. A mere allegation of "insolvency" is not sufficient to plausibly state a claim under the relevant statutes. And the Complaint does not plausibly support the contention that the Board-approved transfers constitute waste or a breach of Mr. Falcao's fiduciary duty. Thus, it would be proper for the Court to dismiss all claims against Mr. Falcao.

## STATEMENT OF FACTS

### Summary of the Allegations

The Complaint asserts nine claims against Mr. Falcao. Seven of those are state law claims related to his performance of job duties as a former officer of Thrasio. (Count 4 – conspiracy, Count 6 – unjust enrichment, Count 7 – breach of fiduciary duty of oversight, County 8 – waste of corporate assets, County 9 – breach of fiduciary duty of loyalty, Count 10 – breach of fiduciary duty of loyalty, and County 11 – aiding and abetting breach of fiduciary duty.) Yet very few of the Complaint's allegations refer to Mr. Falcao. Most of the conduct alleged in the Complaint is attributed to "D&O Defendants"[2] as a group even though it is clear from these allegations that not all members of the "D&O Defendants" participated in each allegation of misconduct. For instance,

---

[1] Mr. Falcao reserves all rights to appeal a denial of his motion to compel arbitration.
[2] Undefined capitalized terms have the meaning ascribed to them in the Complaint.

even though the central theme of Plaintiff's Complaint is that the group of "D&O Defendants" made false representations to "Thrasio's investors, lenders, and Amazon Sellers" about Thrasio's financial condition, the Complaint does not include any allegation that **Mr. Falcao** made any representations to any of those persons. Complaint ¶43 & throughout. And the Complaint's allegation that Mr. Falcao "withheld . . .information from potential investors" does not provide the Court with grounds to make an inference against Mr. Falcao because the Complaint does not assert any facts showing that Mr. Falcao ever spoke to any investors.

The only specific allegations about communications by Mr. Falcao were that he informed Boockvar—the former President of the Company—that Mr. Falcao "was not comfortable with a number of the Company's controls or lack thereof" (Complaint ¶88) and that Mr. Falcao provided to Boockvar "updates on inventory problems." Complaint ¶201. These statements attributed to Mr. Falcao do not support any of the claims asserted against him and do not suggest that he misled investors, creditors, or Amazon Sellers.

The Complaint also alleges that the "D&O Defendants caused the Board to approve a tender offer," but includes no specific allegation of any step taken by Mr. Falcao that caused the Board's approval. Complaint ¶¶59-64.

Key allegations of the Complaint undermine Plaintiff's claims against Mr. Falcao. For instance, the Complaint alleges that the 2020 Tender Offer was approved by the Board of Directors in July 18, 2020, more than three years before the Company filed its bankruptcy petition. Complaint ¶59. The Complaint also alleges that on March 15, 2021, the Company hired a new CFO to replace Mr. Falcao. Complaint ¶68. The Complaint does not include the allegation that Mr. Falcao ever resumed the role of CFO after March 15, 2021. At the time that the Board approved the 2021 Secondary Sales, Mr. Falcao was not serving as CFO. Complaint ¶77.

<u>The Arbitration Agreement</u>

To assist the Court with considering Mr. Falcao's motion to compel arbitration, Mr. Falcao submits the following additional facts. Mr. Falcao and the Company executed a separation agreement on February 5, 2022, which contained the following arbitration provision:

> ARBITRATION. THE PARTIES AGREE THAT ANY AND ALL DISPUTES ARISING OUT OF THE TERMS OF THIS AGREEMENT, THEIR INTERPRETATION, AND ANY OF THE MATTERS HEREIN RELEASED, SHALL BE SUBJECT TO ARBITRATION IN THE COUNTY IN WHICH EMPLOYEE PRIMARILY PERFORMED SERVICES FOR THE COMPANY, BEFORE THE JUDICIAL ARBITRATION AND MEDIATION SERVICE ("***JAMS***") UNDER ITS COMPREHENSIVE ARBITRATION RULES ("***JAMS RULES***") AND THE LAW OF THE STATE IN WHICH EMPLOYEE PRIMARILY PERFORMED SERVICES FOR THE COMPANY. THE ARBITRATOR MAY GRANT INJUNCTIONS AND OTHER RELIEF IN SUCH DISPUTES. THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN ACCORDANCE WITH THE LAW OF THE STATE IN WHICH EMPLOYEE PRIMARILY PERFORMED SERVICES FOR THE COMPANY, AND THE ARBITRATOR SHALL APPLY THE SUBSTANTIVE AND PROCEDURAL LAW OF THE STATE IN WHICH EMPLOYEE PRIMARILY PERFORMED SERVICES FOR THE COMPANY LAW TO ANY DISPUTE OR CLAIM, WITHOUT REFERENCE TO ANY CONFLICT-OF LAW PROVISIONS OF ANY JURISDICTION. TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH THE LAW OF THE STATE IN WHICH EMPLOYEE PRIMARILY PERFORMED SERVICES FOR THE COMPANY, THE LAW OF THE STATE IN WHICH EMPLOYEE PRIMARILY PERFORMED SERVICES FOR THE COMPANY SHALL TAKE PRECEDENCE. THE DECISION OF THE ARBITRATOR SHALL BE FINAL, CONCLUSIVE, AND BINDING ON THE PARTIES TO THE ARBITRATION. THE PARTIES AGREE THAT THE PREVAILING PARTY IN ANY ARBITRATION SHALL BE ENTITLED TO INJUNCTIVE RELIEF IN ANY COURT OF COMPETENT JURISDICTION TO ENFORCE THE ARBITRATION AWARD. THE PARTIES TO THE ARBITRATION SHALL EACH PAY HALF THE COSTS AND EXPENSES OF SUCH ARBITRATION, AND EACH PARTY SHALL SEPARATELY PAY FOR ITS RESPECTIVE COUNSEL FEES AND EXPENSES; PROVIDED, HOWEVER, THAT THE ARBITRATOR SHALL AWARD ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY, EXCEPT AS PROHIBITED BY LAW. THE PARTIES AGREE THAT PUNITIVE DAMAGES SHALL BE UNAVAILABLE IN ARBITRATION. THE PARTIES HEREBY AGREE

TO WAIVE THEIR RIGHT TO HAVE ANY DISPUTE BETWEEN THEM RESOLVED IN A COURT OF LAW BY A JUDGE OR JURY. NOTWITHSTANDING THE FOREGOING, THIS SECTION WILL NOT PREVENT EITHER PARTY FROM SEEKING INJUNCTIVE RELIEF (OR ANY OTHER PROVISIONAL REMEDY) FROM ANY COURT HAVING JURISDICTION OVER THE PARTIES AND THE SUBJECT MATTER OF THEIR DISPUTE RELATING TO THIS AGREEMENT AND THE AGREEMENTS INCORPORATED HEREIN BY REFERENCE. SHOULD ANY PART OF THE ARBITRATION AGREEMENT CONTAINED IN THIS PARAGRAPH CONFLICT WITH ANY OTHER ARBITRATION AGREEMENT BETWEEN THE PARTIES, THE PARTIES AGREE THAT THIS ARBITRATION AGREEMENT SHALL GOVERN.

Ex. A, § 17, to Certification of Jae H. Cho.

The "matters herein released" include, among other things:[3]

a. any and all claims relating to or arising from Employee's employment relationship with the Company and the termination of that relationship;

b. any and all claims relating to, or arising from, Employee's right to purchase, or actual purchase of shares of stock of the Company, including, without limitation, any claims for fraud, misrepresentation, breach of fiduciary duty, breach of duty under applicable state corporate law, and securities fraud under any state or federal law;

c. any and all claims for wrongful discharge of employment; termination in violation of public policy; discrimination; harassment; retaliation; breach of contract, both express and implied; breach of covenant of good faith and fair dealing, both express and implied; promissory estoppel; negligent or intentional infliction of emotional distress; fraud; negligent or intentional misrepresentation; negligent or intentional interference with contract or prospective economic advantage; unfair business practices; defamation; libel; slander; negligence; personal injury; assault; battery; invasion of privacy; false imprisonment; conversion; and disability benefits;

Ex. A § 15.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon

---

[3] The Separation Agreement also provides that the applicable law should be "the laws of the state or commonwealth in which Employee primarily performed services for the Company, without regard for choice-of-law provisions. Employee consents to personal and exclusive jurisdiction and venue in the state or commonwealth in which Employee primarily performed services for the Company." Mr. Falcao primarily performed services for the Company in Massachusetts.

which relief can be granted addresses the sufficiency of the pleading, rather than the merits of a claim. To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint should be dismissed where the claims have not been "nudged . . . across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Post *Twombly-Iqbal*, the Third Circuit instructs district courts to conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (Citations omitted).

The Court must also engage in a choice of law analysis here. Although the bankruptcy and this adversary proceeding were brought in New Jersey, the Company is incorporated in Delaware and its principal place of business is Massachusetts. Mr. Falcao performed most of his work for the company in Massachusetts. The Separation Agreement between Mr. Falcao and the Company provides for the application of Massachusetts law.[4]

This Court should apply Massachusetts law to the fraudulent transfer (Counts II & III) and conspiracy to fraudulently transfer claims (Count IV), and the Court should apply Delaware law

---

[4] Ex. A § 27. "This Agreement shall be governed by the laws of the state or commonwealth in which Employee primarily performed services for the Company, without regard for choice-of-law provisions. Employee consents to personal and exclusive jurisdiction and venue in the state or commonwealth in which Employee primarily performed services for the Company." There is no dispute that Mr. Falcao primarily performed services from Massachusetts.

to the remaining claims against Mr. Falcao. The choice of law rules of the forum state apply in bankruptcy matters.[5] *In re Clark Ent. Group, Inc.*, 183 B.R. 73, 77 (Bankr. D.N.J. 1995); *In re PHP Healthcare Corp.*, 128 Fed. Appx. 839, 843 (3d Cir. 2005) (non-precedential) (adopting the choice of law of "the state in which the Bankruptcy Court resides"); *In re Modell's Sporting Goods, Inc.*, No. 20-14179 (VFP), 2023 WL 2961856, at *26 (Bankr. D.N.J. Apr. 14, 2023) (collecting cases). The forum state here is New Jersey. New Jersey applies "the most significant relationship" test to resolve conflict of law issues.  *In re Modell's Sporting Goods, Inc.*, 2023 WL 2961856, at *26, quoting *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011). It is a two-step analysis, that requires (1) a determination of whether a conflict exists and (2), if there is a conflict, a determination of which state has the "most significant relationship to the claim." *In re Modell's Sporting Goods, Inc.*, 2023 WL 2961856, at *26 (citations omitted). When there is no conflict, the law of the forum state applies. *Id.* For claims related to a corporation's internal corporate affairs, New Jersey's choice of law rules provide that the Court should apply the laws of the state of incorporation. *In re Modell's Sporting Goods, Inc.*, 2023 WL 2961856, at *25, citing *In re Allserve Sys. Corp.*, 379 B.R. 69, 79 (Bankr. D.N.J. 2007).

Applying this rubric to Plaintiff's claims against Mr. Falcao related to alleged fraudulent transfers — the non-internal affairs claims — the Court must first determine if there is a conflict between the laws of New Jersey and the laws of Massachusetts, where Mr. Falcao performed his work for the Company. If there is a conflict, the Court should apply the laws of the state with the "most significant relationship to the claim" here, the law of the Commonwealth of Massachusetts. But Delaware law should be applied to most of the claims asserted against Mr. Falcao because

---

[5] Even if the Court were to apply federal common law, the result would be the same. Federal common law applies the "Restatement's 'most significant relationship test' to decide choice of law issues." *In re Am. Metrocomm Corp.*, 274 B.R. 641, 659 (Bankr. D. Del. 2002). This test is "nearly identical" to New Jersey's interest analysis. *Neblett v. Clairmont Paciello & Co., P.C.*, No. 4:15-CV-01622, 2016 WL 3181904, at *15 (M.D. Pa. June 8, 2016).

most of the claims arise from the Company's internal affairs.

## ARGUMENT

## I.        The Claims Against Falcao Must be Arbitrated

The breach of fiduciary duty and waste claims asserted against Mr. Falcao must be

arbitrated because the February 2022 Separation Agreement requires that "any and all disputes

arising out of the terms of this agreement, their interpretation, and any of the matters herein

released [i.e., all matters related to Mr. Falcao's employment] shall be subject to arbitration."[6] The

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), "mandates that district courts *shall* direct

the parties to proceed to arbitration on issues as to which an arbitration agreement has been

signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985), citing 9 U.S.C. §§ 3, 4. The

Supreme Court has found that this statutory language "leaves no place for the exercise of discretion

by a district court." *Dean Witter Reynolds, Inc.*, 470 U.S. at 218. The breach of fiduciary duty and

waste claims asserted against Mr. Falcao in this suit all arise from his employment relationship

with the company and his "right to purchase, or actual purchase of shares of stock of the Company."

Because these claims fall within those included in the scope of the arbitration provision, Plaintiff

should be compelled to arbitrate these claims.

Although Third Circuit precedent provides that "the trustee cannot be required to arbitrate

its section 544(b) claims," *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d

1149, 1155 (3d Cir. 1989), Mr. Falcao notes the tension between this precedent and modern

Supreme Court precedent favoring arbitration and the long line of cases noting no inherent conflict

between federal statutory schemes and the FAA. *See*, *e.g.*, *Smith v. Spizzirri*, 601 U.S. 472 (2024);

*Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68 (2019) (holding that the FAA

---

[6] Ex. A.

8

requires that the parties' contract to arbitrate be interpreted "as written"); CompuCredit Corp. v. Greenwood, 565 U.S. 95, 98 (2012) (holding that courts are required to "enforce agreements to arbitrate according to their terms" "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command'" and finding that the Credit Repair Organizations Act ("CROA") did not override the FAA's mandate); *see also* In re Mintze, 434 F.3d 222, 231-2 (3d Cir. 2006) (holding that the bankruptcy court lacks discretion to deny enforcement of an arbitration agreement where the claim to be decided by the Bankruptcy Court is not a statutory claim created by the Bankruptcy Code). Mr. Falcao reserves the right to argue on appeal, if necessary, that *Hays* should be overturned to the extent that it does not require a bankruptcy trustee to arbitrate the Section 544(b) claims.

Even under the *Hays* precedent, it is appropriate for the Court to stay this action as against Mr. Falcao pending arbitration of the arbitrable claims. *See Smith*, 601 U.S. at 475-76 (the "plain statutory text" of the FAA "requires a court to stay the proceeding"). Because it is appropriate for this Court to compel arbitration of almost all of the claims asserted against Mr. Falcao in the Complaint, the Court should stay the fraudulent transfer claims (Count II and Count III). *In re Hagerstown Fiber Ltd. Partn.*, 277 B.R. 181, 208 (Bankr. S.D.N.Y. 2002) (concluding that "nonarbitrable" fraudulent transfer claims should be stayed against all defendants pending conclusion of the arbitration).

## II.   In the Alternative, the Claims Against Falcao Should be Dismissed[7]

---

[7] Mr. Falcao joins in the following portions of the briefs submitted by his co-defendants: Points I, II (A), (B), (D), (E) & (G), III (A) & (B), IV (A), (B) & (C) of the brief submitted by Defendants Joshua Silberstein and Everything's Coming Up Millhouse, LLC and Section IV of the brief submitted by Defendant Daniel Boockvar.

If the Court does not agree that the arbitrable claims be compelled to arbitration and the case otherwise stayed as against Mr. Falcao, the Court should dismiss the claims against Mr. Falcao for the separate reasons below.

### A.   Counts II and III must be dismissed for failure to state a claim.

Plaintiff purports to rely on 11 U.S.C. §§544 and 550 as well as state fraudulent transfer law to avoid and recover Tender Offer Proceeds as constructive fraudulent transfers. Plaintiff fails to state a claim for a constructive fraudulent transfer under any of these laws.

Section 544(b)(1) of the Bankruptcy Code (the so-called "Strong Arm" provision) provides that "[e]xcept as provided in paragraph (2) [for charitable transfers], the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 544. And Section 550 of the Bankruptcy Code provides who the Trustee may recover from. 11 U.S.C.A. § 550.

The "applicable law" is the state law governing fraudulent transfers. _In re Bridge_, 18 F.3d 195, 200 (3d Cir. 1994). As an initial matter, Plaintiff fails to provide adequate notice of its claim because it fails to identify the "applicable law."[8] It does not say which state's law it purports to apply to the claim. Notice of the "applicable law" is required here because there are three potentially applicable state laws: Delaware, where Thrasio is incorporated; New Jersey, where the bankruptcy petition was filed; and Massachusetts, where Thrasio maintains its principal place of business. A plaintiff must give notice of the law he has invoked to assert his claim. It is improper to leave Mr. Falcao guessing as to what legal principles govern his defense.

---

[8] Plaintiff is required to plead its fraudulent transfer claims with specificity. _Jurista v. Amerinox Processing, Inc._, 492 B.R. 707, 745 (D.N.J. 2013), quoting _In re Fedders N.A., Inc._, 405 B.R. 527, 544 (Bankr. D. Del. 2009).

Pursuant to New Jersey's choice of law principles – *supra*, pages 6-8–it is likely that the law of the Commonwealth of Massachusetts is the appropriate law to apply to Counts II and III.

Applying Massachusetts law, the Trustee would either need to show: (1) that the creditor's claim arose before the transfer and the debtor made the transfer "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation"; (2) the creditor's claim arose before the transfer and the "the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent."; or (3) the creditor's claim arose or after the transfer was made and the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor" or without receiving equivalent value or the debtor "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." Mass. Gen. Laws Ann. ch. 109A, § 5 & Mass. Gen. Laws Ann. ch. 109A, § 6. Delaware law is substantially the same. *See* Del. Code Ann. tit. 6, § 1304 & Del. Code Ann. tit. 6, § 1305.

The Trustee cannot state a claim for fraudulent transfer under these laws. Plaintiff has not alleged facts from which the Court could infer that Thrasio was insolvent on the date of the challenged transfers. This is fatal to Plaintiff's claim. *See In re F-Squared Inv. Mgt., LLC*, No. AP 17-50716, 2019 WL 4261168, at *11 (Bankr. D. Del. Sept. 6, 2019). As the *F-Squared* Court explained, "That this element of a constructive fraudulent conveyance is a factual question does not excuse a plaintiff from pleading facts; to so conclude would effectively permit a plaintiff to evade the pleading standard." *Id.*

11

Plaintiff summarily alleges that Thrasio was "insolvent" at the time of the Tender Offer or "was rendered insolvent" by the Tender Offer. This conclusory allegation is not sufficient under *Twombly*. *Id.*; *Iqbal*, 556 U.S. at 678. Plaintiff fails to include any information about Thrasio's assets and liabilities at the time of the challenged transfer, making any inference about insolvency pure guesswork.

Insolvency is defined in the Bankruptcy Code as "the financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair valuation." *In re F-Squared Inv. Mgt., LLC*, 2019 WL 4261168, at *11 (citation omitted). It is determined at the time of the conveyance. *Id.* To determine insolvency, the Complaint would have to include information about Thrasio's "property" or assets. But the Complaint does not include any detail about Thrasio's assets and liabilities at the time of the Tender Offer and makes the conclusory allegation that the "total fair value of Thrasio's liabilities exceeded the total amount of Thrasio's assets, and Thrasio was insolvent with no reasonable prospects to continue its business successfully." Complaint ¶144.

Plaintiff's citation to calculations included in the Company's audited 2020 financial statements—not prepared until June 30, 2022[9]– do not provide the necessary information about Thrasio's financial condition in August 2020 at the time of the Tender Offer. Plaintiff alleges that the "audited 2020 financial statements reflect an operating loss of approximately $88.04 million, a net loss of approximately $148.71 million, and an accumulated deficit of approximately $302.95 million." Complaint ¶64 (emphasis removed). But that information only provides, at most, half the story. Plaintiff does not include any information about Plaintiff's **assets** at the time of the Tender Offer.

Nor has the Trustee set forth allegations tending to show that the debtor was "engaged or

---

[9] Complaint at ¶14.

was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small." Mass. Gen. Laws Ann. ch. 109A, § 5. Courts apply a "reasonable foreseeability test" not a Monday-morning quarterback test. *In re F-Squared Inv. Mgt., LLC*, 2019 WL 4261168, at *17 (explaining that to "strike a proper balance" under the "reasonable foreseeability" test, courts must "take[ ] into account that 'businesses fail for all sorts of reasons, and that fraudulent [conveyance] laws are not a panacea for all such failures") (quoted citation omitted).

The Trustee does not say what the assets of the debtor were at the time of the Tender Offer, other than to concede that the debtor had recently raised $260 million through a Series C-1 offering. Complaint ¶59; *see also* Complaint ¶61 (acknowledging retention of 60% of the C-1 offering proceeds). Nor does the Trustee include allegations that the debtor should have known in August 2020 that it "intended to incur . . .. or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." Mass. Gen. Laws Ann. ch. 109A, § 5. In addition to raising a significant amount of capital just before the Tender Offer, the Company also continued to function for more than three years after the Tender Offer before filing for bankruptcy protection.

Because Plaintiff has not adequately stated a claim for constructive or actual fraudulent transfer, Counts II and III must be dismissed as to Mr. Falcao.

### B.    Count IV - Conspiracy to Fraudulently Transfer Tender Offer Proceeds

Plaintiff's claim of conspiracy to fraudulently transfer Tender Offer Proceeds must be dismissed as untimely. Mr. Falcao primarily performed his work for the Company in Massachusetts. Under the applicable conflicts of law principles, Massachusetts law should be applied to this claim as asserted against Mr. Falcao. *See supra* at pages 6-8. But even if Delaware law applied, the result would be the same.

Under Massachusetts law, "[a] claim for civil conspiracy is subject to a three-year statute

of limitations." *Cahill v. Silva*, 188 N.E.3d 984 (Mass. App. 2022) (citation omitted). Delaware also applies a three-year statute of limitations to civil conspiracy claims. *Creamer v. Gen. Teamsters Loc. Union 326*, 579 F. Supp. 1284, 1290 (D. Del. 1984), citing *Glassberg v. Boyd,* 35 Del.Ch. 293, 116 A.2d 711, 717 (1955).

Plaintiff alleges that the conspiracy to fraudulently transfer Tender Offer proceeds occurred at the time of the transfer in August 2020. Complaint ¶¶177-79. The statute of limitations on that claim ran in August 2023. By the time that the Company filed for bankruptcy protection in February 2024, the statute of limitations had already run on that claim. *In re Tzanides*, 574 B.R. 489, 511 (Bankr. D.N.J. 2017) ("It is well-settled that for a trustee to bring a cause of action pursuant to the Section 544(b) avoiding power, a Trustee must demonstrate the existence of an actual unsecured creditor that existed on the bankruptcy petition date who could have also brought the claim under applicable state or federal law.") (collecting cases); *In re Bernstein*, 259 B.R. 555, 559 (Bankr. D.N.J. 2001) (a bankruptcy trustee may not assert a claim where the statute of limitations has run prior to the petition date). Plaintiff has not alleged any basis for the Court to enlarge the statute of limitations on this claim.

Plaintiff's conspiracy claim against Mr. Falcao also fails because Plaintiff fails to allege facts by which the Court could infer that Mr. Falcao had reached an agreement with other named defendants to commit fraud. Plaintiff summarily alleges that Defendants "had an agreement" but includes no details as to what this agreement entailed, whether and how Mr. Falcao could have known that the Tender Offer was a fraudulent transfer. Stating that Mr. Falcao was a transferee of the Tender Offer and "sought approval for the wire payments" is insufficient to establish an agreement to defraud. This claim must be dismissed as to Mr. Falcao.

**C.    The Remaining Claims Against Mr. Falcao Must Be Dismissed**

Because the Company was registered in Delaware, Delaware law applies to Plaintiff's claims that implicate the Company's internal affairs. *See* pages 6-8 above.

**1.    Plaintiff's claim against Mr. Falcao for unjust enrichment must be dismissed as untimely.**

Plaintiff's claim against Mr. Falcao for unjust enrichment is a claim that implicates the Company's internal affairs. *Emerson Radio Corp. v. Fok Hei Yu*, No. 2:20-CV-01618-WJM-MF, 2021 WL 1186824, at *4 (D.N.J. Mar. 30, 2021) (citation omitted) (unjust enrichment claim  "is centered on the fiduciary relationship between Defendant and [company], and Defendant's apparent conflict of interest in allegedly forcing the issuance of the special dividend" and therefore "implicates the company's internal affairs"). As explained by the District Court of New Jersey, "matters that are peculiar to the special relationship between a corporation and its directors and the business decisions made thereby" are a corporation's internal affairs. Plaintiff's claim for unjust enrichment here is based on its contention that Mr. Falcao was unjustly enriched by receiving his "share of the Proceeds in the Tender Offer." Complaint ¶43. The Board's decision to approve the Tender Offer—a redemption by the corporation of outstanding shares of its own stock—was an exercise of business judgment. Restatement (Second) of Conflict of Laws § 302 (1971) (internal affairs of a corporation include the "purchase and redemption by the corporation of outstanding shares of its own stock"). As such, like the unjust enrichment claim in *Emerson Radio*, the unjust enrichment here implicates Thrasio's internal affairs. *Emerson Radio Corp.*, 2021 WL 1186824, at *4.

Under Delaware law, the statute of limitations for unjust enrichment actions is three years. *Gavin v. Club Holdings, LLC*, No. CV 15-175-RGA, 2016 WL 1298964, at *8 (D. Del. Mar. 31, 2016), citing Del. Code. Ann. tit. 10, § 8106(a) and *Medtronic Vascular, Inc. v. Advanced*

*Cardiovascular Sys., Inc.,* 2005 WL 46553, at *4 (D. Del. Jan. 5, 2005), *aff'd,* 182 Fed. Appx. 994

(2006). The limitations period begins to run "at the time of the alleged wrongful act," subject to

two exceptions that do not apply here. *Medtronic Vascular, Inc.*, 2005 WL 46553, at *4, *aff'd,* 182

Fed. Appx. 994 (Fed. Cir. 2006). The limitations period can be tolled if the injury is "inherently

unknowable." *Adv. Cardiovascular Sys., Inv. v. Medtronic Vascular, Inc.*, 182 Fed. Appx. 994, 999

(Fed. Cir. 2006). Or the limitations period can be told if defendant "fraudulently concealed" facts

that would have put defendant on notice. *Medtronic Vascular, Inc.*, 2005 WL 46553, at *4. Plaintiff

makes no allegation that the Company—in whose shoes it stands—had no notice of the Tender

Offer or that the Tender Offer was inherently unknowable, nor could such an allegation seriously

be made. The Board of Directors of the Company approved the Tender Offer on which Plaintiff

now seeks to base its claim. Thus, there can be doubt that the three-year statute of limitations

should run from the date of the alleged wrongful act, *i.e.*, the date of the Tender Offer.

The Bankruptcy Code does not extend the statute of limitations when the limitations period

has expired before the bankruptcy proceeding commenced. *See In re Swarthmore Group, Inc.*, No.

AP 24-00095-AMC, 2025 WL 213861, at *5-6 (Bankr. E.D. Pa. Jan. 15, 2025), citing 11 U.S.C. §

108.

Mr. Falcao received the proceeds from the Tender Offer in August 2020. The statute of

limitations on any claim for unjust enrichment based on that conduct ran in August 2023. This

claim was not asserted until December 2024; the underlying bankruptcy was not commenced until

February 2024. Thus, any claim against Mr. Falcao for unjust enrichment based on the Tender

Offer is stale and must be dismissed.

**2.    Plaintiff's claims against Mr. Falcao for breach of fiduciary duty of oversight, waste of corporate assets, breaches of fiduciary duty of loyalty, and aiding and abetting breach of fiduciary duty all must be dismissed for failure to state a claim.**

*a)    Count VII - Breach of Fiduciary Duty of Oversight/Loyalty - No Controls*

Plaintiff summarily alleges that "Falcao knew about the inventory control problems . . . **yet did not fix the problems** and instead took actions to benefit himself, such as participating in the Tender Offer." Complaint ¶202 (emphasis added). Plaintiff asserts no other specific allegations about Mr. Falcao's conduct that underlies its claim against him under Count VII of the Complaint. Plaintiff's bald statement that Mr. Falcao "did not fix the problems" fails to provide the Court with sufficient facts from which it could infer that Mr. Falcao had the ability and means to take steps that would have prevented the alleged problems. And the only specific benefit attributed to Mr. Falcao is the Tender Offer, which is too far in the past to support a claim against Mr. Falcao here. *See* Point II.C.1 *supra*. In short, the allegations against Mr. Falcao on this count fail the *Iqbal/Twombly* standard. *Iqbal*, 556 U.S. at 678 (complaint must plausibly allege that each "defendant is liable for the misconduct alleged."); *Twombly*, 550 U.S. at 570.

The rest of the allegations for Count VII rely on impermissible group pleading and fail to provide Mr. Falcao with adequate notice of the claim against him. *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 365 (D.N.J. 2021) (noting that "courts in this District generally do not allow 'group pleading,' because the complaint must allege 'sufficient facts to identify each defendant's role.'"), quoting *D'Addario v. Johnson & Johnson*, Civ. No. 19-15627, 2020 WL 3546750, at *6 (D.N.J. June 30, 2020). When, as here, a claim fails to include "factual allegations warranting an inference that each [defendant] could be liable," the claim should be dismissed. *MHA, LLC*, 539 F. Supp. 3d at 365.

Even if the breach of the duty of oversight claim against Mr. Falcao satisfied the notice

requirements of Rule 8, Plaintiff's allegations fail to state a claim. To state a claim for a breach of fiduciary duty of loyalty based on a breach of the duty of oversight, Plaintiff must allege that Mr. Falcao owed a duty of oversight that he breached. But no such duty exists here with respect to Mr. Falcao. *See* In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 574-75 (Bankr. D. Del. 2008)* (explaining that it is corporate **directors**, not corporate **officers**, who owe a duty of oversight necessary to support what is generally known as a *Caremark* claim). A duty of oversight is a duty of the board of directors, not a duty owed by the officers of the company. In re Caremark Intern. Inc. Derivative Litig.*, 698 A.2d 959, 970 (Del. Ch. 1996)* (noting that "a **director's obligation** includes a duty to attempt in good faith to assure that a corporate information and reporting system, which the board concludes is adequate, exists, and that failure to do so under some circumstances may, in theory at least, render a director liable for losses caused by non-compliance with applicable legal standards") (emphasis added); *see also* Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 369 (Del. 2006)* (noting that the "*Caremark* standard for so-called 'oversight' liability draws heavily upon the concept of director failure to act in good faith").

Plaintiff does not allege that Mr. Falcao was a director of the Company; Mr. Falcao was not. Plaintiff, nonetheless, summarily states that Mr. Falcao was "responsible for financial oversight and establishing information systems related to financial oversight." Complaint ¶196. But the Complaint does not set forth any facts from which the Court can infer that Mr. Falcao exerted control over the accounting function such that it would be proper to impose a fiduciary duty on him. In re NSC Wholesale Holdings LLC, 637 B.R. 71, 87 (Bankr. D. Del. 2022) (finding that where a complaint "only offers a conclusory allegation" of defendant's "status as a 'controller' and 'officer,' there are no facts to warrant permitting a breach of fiduciary duty claim" to proceed).

Nor can Mr. Falcao be liable for any failure of the Board to oversee the accounting function.

As the Complaint concedes, Mr. Falcao updated the Company's President on inventory problems.

Complaint ¶201. There are no allegations that Mr. Falcao's job function included reporting to the

board or that he had any ability to control what steps were taken by the Company to improve the

accounting and inventory systems.

And Plaintiff's fiduciary duty claim against Mr. Falcao fails for the additional reason that

Plaintiff has not pled the necessary facts from which this Court could draw the inference that (1) the

Board failed to implement a reporting system or controls or (2) the Board was aware of red flags

and chose to disregard them. *In re McDonald's Corp. Stockholder Derivative Litig.*, 291 A.3d 652,

676 (Del. Ch. 2023) (finding no breach of the duty of oversight). The facts alleged in the Complaint

suggest the opposite: the board had implemented "three different methods" to calculate the value

of its inventory. Complaint ¶199.

### b)    Count VIII - Waste of Corporate Assets – Inventory

Plaintiff's claim of waste of corporate assets against Mr. Falcao suffers from the same

defects as its claim of breach of the fiduciary duty of oversight: (1) as a non-director, Mr. Falcao

had no ability to control the assets of the corporation; and (2) there are no individual allegations

against Mr. Falcao, only the same group pleading problems that plague the entirety of the

Complaint.[10]

There will only be a finding of corporate waste "in the rare, "unconscionable case where

'**directors** irrationally squander or give away corporate assets." *In re Bridgeport Holdings, Inc.*,

388 B.R. at 576–77 (emphasis added), quoting *In re Walt Disney Co. Derivative Litig.*, 906 A.2d

27, 74 (Del. 2006) (citations omitted) (no corporate waste where board awarded executive a

severance package worth more than $130 million after one year of work). Officers cannot be liable

---

[10] See *supra*.

for corporate waste under Delaware law. *See In re DSI Renal Holdings, LLC*, 574 B.R. 446, 476 (Bankr. D. Del. 2017) (collecting cases and noting that the court could not locate "any cases in which the Delaware courts have determined that officers or controlling shareholders could be liable for corporate waste," and dismissing the corporate waste claim against corporate officers on that basis).

Even if Plaintiff could state a claim against a corporate officer such as Mr. Falcao, its allegations do not make out a claim. Under Delaware law, a corporate transaction only constitutes waste "when it is so one-sided that no rational person acting in good faith could approve it." *In re McDonald's Corp. Stockholder Derivative Litig.*, 291 A.3d 652, 693 (Del. Ch. 2023) (declining to find waste where corporate board permitted a CEO who had been disciplined for wrongful conduct "to receive separation benefits, including severance, as part of a no-fault termination").

Plaintiff contends that Thrasio's purchase of "an estimated $800 million in excess inventory by February 2022" constitutes waste of corporate assets. Complaint ¶213. There is no basis alleged in the Complaint for that conclusion: Plaintiff does not allege that the inventory purchased had a value less than the Company paid for it. Thus, at most the acquisition of inventory was merely the exchange of one type of asset for another, not waste. There is no allegation that any of the defendants acted in bad faith in purchasing the inventory or stood to personally benefit from the allegedly excess inventory. Indeed, there is nothing in Plaintiff's Complaint to suggest that the purchase of the allegedly excess inventory was anything other than a routine business decision – albeit one that in hindsight may have been misguided. This is not waste. *Polk 33 Lending, LLC v. Schwartz*, 555 F. Supp. 3d 38, 44 (D. Del. 2021) (finding no "waste" where company only needed some of the inventory ordered, noting that this subsequent fact "does not retroactively render such an ordinary course transaction to be 'waste'"), citing *Protas v. Cavanagh*, C.A. No. 6555-VCG,

2012 WL 1580969, at *9 (Del. Ch. May 4, 2012) (a finding of waste is inappropriate "even if

hindsight proves that the transaction may have been ill-advised") (citation omitted).

Thus, Count VIII claim for corporate waste should be dismissed as to Mr. Falcao.

> c)    *Count IX – Breach of Fiduciary Duty of Loyalty - Usurping*
> *Corporate Opportunity*

Plaintiff has not plausibly alleged a claim against Mr. Falcao for "usurping a corporate

opportunity." To state such a claim, Plaintiff must show that (1) the corporation was financially

able to exploit the business opportunity, (2) the opportunity was in the company's line of business,

(3) the Company had an "interest or expectancy in the opportunity," and (4) by taking the

opportunity, Mr. Falcao was "placed in a position inimicable to his duties to the corporation." *Broz*

*v. Cellular Info. Sys., Inc.*, 673 A.2d 148, 154–55 (Del. 1996). The Complaint does not even attempt

to fit the 2020 and 2021 Secondary Sales into this framework. Nor could it. As the *Broz* Court

explains, "presenting the opportunity to the board creates a kind of 'safe harbor' for the director,

which removes the specter of a post hoc judicial determination that the director or officer has

improperly usurped a corporate opportunity." *Broz, 673 A.2d* at 157. Plaintiff concedes that both

the 2020 and 2021 Secondary Sales were presented to the Board and approved by the Board before

Mr. Falcao participated in the sales. Thus, he did not usurp a corporate opportunity — the Board

could have chosen not to approve the sales. That the Company filed a bankruptcy petition years

after the Secondary Sales does not change the analysis.

Plaintiff's claim against Mr. Falcao for breach of fiduciary duty of loyalty for usurping a

corporate opportunity must be dismissed.

> d)    *Count X – Breach of Fiduciary Duty of Loyalty -*
> *Misuse of Confidential Corporate Information*

Plaintiff has not plausibly stated a claim against Mr. Falcao for a breach of fiduciary duty

of loyalty based on misuse of confidential information. To assert this claim, Plaintiff must show

that Mr. Falcao "possessed material, nonpublic company information" and "used that information improperly by making trades because [he] was motivated, in whole or in part, by the substance of that information." *Kahn v. Kohlberg Kravis Robert's & Co., L.P.*, 23 A.3d 831, 838 (Del. 2011). Plaintiff's allegations against Mr. Falcao fall woefully short of this standard.

Plaintiff asserts that Mr. Falcao was CFO, Senior Vice President of Finance, and Treasurer during the relevant time but does not allege what confidential information Mr. Falcao had or how that information could have motivated Mr. Falcao to participate as a selling shareholder in the 2021 Secondary Sales. Plaintiff relies on group pleading to assert, without basis, that "each" of Messrs. Silverstein, Cashman, Boockvar, Falcao, Ouhadi, and Rathod, "by virtue of their respective insider positions," "possessed material confidential information regarding Thrasio's that was not known to the lenders, investors, and other stakeholders of Thrasio's." Complaint ¶230. Despite conceding elsewhere in the Complaint that Mr. Falcao was not the CFO at the time of the 2021 Secondary Sales, Plaintiff falsely contends that Mr. Falcao was the CFO during the relevant time (Complaint ¶228). But even if Mr. Falcao had been the CFO, the Complaint fails to include allegations by which this Court could infer that Mr. Falcao knew that the Board had been given inaccurate information, that Mr. Falcao knew about the resignation of then-CFO Bill Wafford on July 8, 2021, or that Mr. Falcao knew that Mr. Wafford's resignation was withheld from the Board.

Moreover, Plaintiff concedes that the Board approved the 2021 Secondary Sales. Complaint ¶77. And Plaintiff includes no allegations that Mr. Falcao did anything in connection with the 2021 Secondary Sale other than to participate as a selling shareholder. Complaint ¶¶71-91.

Plaintiff includes the unsubstantiated allegation that Mr. Falcao "knew" of the inaccuracy of the financial statements and "withheld that information from potential investors," without

including any allegations about whether Mr. Falcao ever communicated with any of the potential investors. Complaint ¶89. Nor does the Complaint include a suggestion that Mr. Falcao had any duty (or ability) to communicate with potential investors about either secondary sale, making clear that Mr. Falcao was not the CFO at the time of the 2021 Secondary Sales. Complaint ¶68.

Plaintiff's claim against Mr. Falcao for breach of the fiduciary duty of loyalty for misuse of corporate information must be dismissed.

> e)    Count XI - Aiding and Abetting Breach of Fiduciary
> Duty of Oversight/Loyalty - Secondary Sales

Plaintiff may not assert an aiding and abetting claim against Mr. Falcao on the same basis for which it also asserts a direct claim. Plaintiff alleges at Count VIII that Mr. Falcao breached his fiduciary duty of oversight. Mr. Falcao "cannot have aided and abetted the same fiduciary duty he allegedly breached in a previous count." *In re US Digital, Inc.*, 443 B.R. 22, 47 (Bankr. D. Del. 2011).

In addition, for the same reasons as above, Plaintiff has not adequately stated a breach of fiduciary duty of oversight as against Mr. Falcao: (1) Mr. Falcao was not a director and did not have a duty of oversight; (2) the stated allegations suffer from the defect of group pleading and do not adequately put Mr. Falcao on notice of the claims against him.

Even if the Court excused those defects, Plaintiff has not stated a claim for aiding and abetting a breach of fiduciary duty of oversight/loyalty. "Under Delaware law, aiding and abetting a breach of fiduciary duty has three elements: (1) a breach of fiduciary duty, (2) knowing participation in that breach by the defendant, and (3) damages." *LaSala v. Bordier et Cie*, 519 F.3d 121, 130 (3d Cir. 2008). Plaintiff's summary allegation that Falcao and the others "each knew about the others' fiduciary obligations, and knew about the fiduciary duty obligations" does not provide the necessary allegations of facts by which the Court could reasonably infer that Mr. Falcao

"knowing[ly] participat[ed]" in any breach.

## CONCLUSION

For all these reasons, the Court should enter an Order either compelling arbitration of the claims made against Mr. Falcao and staying the case pending arbitration or, in the alternative, dismissing all claims against Mr. Falcao, and granting such other and further relief as the Court deems just and proper.

Dated:  New York, New York      Respectfully submitted,
       March 3, 2025

                                       FELICELLO LAW P.C.

                                       By:  */s/ Jae H. Cho*
                                       Michael James Maloney (*pro hac vice* pending)
                                       366 Madison Avenue
                                       3rd Floor
                                       New York, New York 10017
                                       Tel. (212) 584-7806
                                       mmaloney@felicellolaw.com

                                       and

                                       Jae H. Cho, Esq.
                                       100 Plainfield Ave., Ste 8E
                                       Edison, NJ 08817
                                       Telephone:  732-545-9600
                                       Email: jae@felicellolaw.com

                                       *Counsel for Joseph Falcao*