## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>1 THRASIO ONE, INC.,<br><br>        Reorganized Debtor.<br>─────────────────────<br>META ADVISORS, LLC, solely in its capacity as Trustee of the Thrasio Legacy Trust,<br><br>        Plaintiff,<br><br>vs.<br><br>JOSHUA SILBERSTEIN; CARLOS CASHMAN; DANIEL BOOCKVAR; JOSEPH FALCAO; MOUNIR OUHADI; ADITYA RATHOD; ARI HOROWITZ; EVERYTHING'S COMING UP MILLHOUSE, LLC; CASHMAN FAMILY INVESTMENT II, LLC; HUDSON PALM LLC; and YARDLINE CAPITAL CORP.,<br><br>        Defendants. | Chapter 11<br><br>Case No. 24-11840 (CMG)<br><br>(Jointly Administered)<br><br><br>Adv. Proc. No. 24-01637-CMG |

---

**BRIEF IN REPLY TO PLAINTIFF'S OPPOSITION TO, AND IN FURTHER SUPPORT OF, DEFENDANT YARDLINE CAPITAL CORP.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
John E. Jureller, Jr.

*Attorneys for Defendant Yardline Capital Corp.*

## <u>TABLE OF CONTENTS</u>

ARGUMENT ........................................................................................................................1

    A.  Constructive Fraudulent Transfer Claims ...............................................................2

    B.  Actual Fraudulent Transfer Claims..........................................................................9

    C.  Other Independent Grounds for Dismissal of the Claims......................................11

CONCLUSION...................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

*Cases:*

*In re Alameda Rsch. Ltd. v. Giles,* 2024 Bankr. LEXIS 2584 ............................................................ 14

*In re Excide Techs.*, 378 B.R. 762 (Bankr. D. Del. 2007) ……………………………………12

*In re HH Liquidation, LLC,* 590 B.R. 211 (Bankr. De. Del. 2018)………………………………8

*Hurwitz v. Mahoney (In re Space Case)*, 2024 WL 1628440 (Bankr. D. Del. April 15, 2024).8,15

*Innovative Custom Brands, Inc. v. Minor,* 2016 WL 308805, at *3 (S.D.N.Y. Jan. 25, 2016)…...4

*In re Solutions Liquidation LLC,* 608 B.R. 384 (Bankr. D. Del. 2019) .....................................8, 15

*S&R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F. 2d. 371 (3d Cir. 1992) .................................................. 13

*Other Authorities:*

11 U.S.C. § 365 ..............................................................................................................................12

N.J. Stat. § 25:2-25 ....................................................................................................................2, 9

Defendant Yardline Capital Corp. ("<u>Yardline</u>") respectfully submits this memorandum of law in reply ("Reply") to *Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss* (the "Opposition"), and in further support of, its motion to dismiss (the "Motion") the Complaint of Plaintiff META Advisors, LLC, solely in its capacity as Trustee of the Thrasio Legacy Trust.[1]

## <u>ARGUMENT</u>[2]

Weighing in at 114 pages, the Opposition grapples with trying to submit arguments opposing the separate motions to dismiss filed on behalf of the eleven (11) defendants as a result of the myriad pleading deficiencies in the claims asserted in the Complaint.   It is easy to lose sight of actual claims asserted in the Complaint against Yardline, namely four (4) counts for avoidance of actual or constructive fraudulent transfers against Yardline related to two events: (a) the issuance of certain promissory notes and investments made by Thrasio into Yardline as a result of Thrasio taking over full ownership of Yardline [Counts XIX, XX], and (2) Thrasio's forgiveness of these loans in exchange for equity of its then wholly-owned subsidiary Yardline [Counts XXI, XXII]. The Motion clearly establishes that these claims against Yardline must be dismissed for, among other reasons, the failure to meet the pleading requirements for either constructive or actual fraudulent transfers.

Moreover, the Motion also sets out clear arguments on how these claims in the Complaint warrant dismissal as a result of, *inter alia*, failing to identify which state's laws these fraudulent transfer claims are even brought under, the Complaint's self-serving avoidance of the Disinterested Directors' Independent Investigation Results which was directly relied upon by the Debtors in

---

[1]Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Complaint.

[2] In addition to the arguments set forth herein and in the Motion, Yardline continues to join in and incorporate by reference the applicable arguments asserted by the other Defendants in their respective motions to dismiss the Complaint and replies, as if more fully set forth herein.

confirming their Plan before this Court, and the sale of Yardline to a third-party, good faith purchaser for approximately $12 million in 2022, which sale agreement included express representations and warranties and releases issued in the transaction that unequivocally compel dismissal of the claims against Yardline.

Notwithstanding the volume of the pleading and Plaintiff's unfettered access to all relevant documents prior to filing the Complaint, the Opposition nonetheless fails to rebut the Motion's clear arguments. As a result, these actual or constructive fraudulent transfer claims asserted against Yardline in the Complaint must be dismissed.

A. **Constructive Fraudulent Transfer Claims**:

Plaintiff asserts two counts of constructive fraudulent transfers as against Yardline, as follows: (a) In Count XIX, the Complaint asserts claims for avoidance of constructive fraudulent transfers allegedly arising from the loans and investments made by Thrasio to Yardline, as approved by the Thrasio Board, which were part of Thrasio's three-step process to takeover sole ownership of and assert control over Yardline; and (b) similarly, in Count XXI, the Complaint asserts claims for avoidance of constructive fraudulent transfers related to Thrasio's business decision, also upon Board approval, to forgive those same loans in exchange for equity.

In order to assert a plausible claim for avoidance of constructive fraudulent transfers, the Complaint must plead sufficient facts to plausibly establish that (i) the Debtor was insolvent, or otherwise rendered insolvent, at the time of each of the transfers, and (ii) the Debtor did not receive reasonably equivalent value in exchange for the transfers. *See* N.J. Stat. § 25:2-25(a).

By the Motion, Yardline clearly establishes that the Complaint fails to plead sufficient facts to plausibly establish that Thrasio was insolvent at the time of each of the Yardline Transfers. The Opposition cannot overcome these arguments.

2

As set forth in the Motion, at or around the time of the Yardline Transfers, Thrasio (a) "received a verbal offer from a potential partner to provide $600 million in financing in connection with a SPAC transaction that would take the Company public" (*see*, Complaint, ¶ 69), and (b) was in the process of completing a capital raise of more than $1 billion in a Series D offering in October and November 2021. *See* Complaint, ¶69. This Series D offering included participation from funds whose representatives were on the Board of Thrasio at all relevant times.  In fact, it was on this basis that the Independent Investigation Results, which <u>specifically</u> <u>included</u> the Disinterested Director's <u>analysis</u> of the loans and other payments made to Yardline by Thrasio in its takeover of the subsidiary and the forgiveness thereof in exchange for equity which are alleged in the Complaint, concluded "*.... it is important to note that nearly all of the Yardline Transfers occurred prior to the October 2021 initial closing of the Series D Preferred Stock Financing, in which sophisticated third parties (including Advent and Silver Lake) invested more than $1 billion in Thrasio's equity after engaging in due diligence.  As a result, Thrasio likely had significant equity value at the time of most, if not all, of the Yardline Transfers ....*"  *See* Independent Investigation Results, ¶ 45.

Neither the Complaint nor the Opposition dispute this point, seeking to distance itself from the Independent Investigation Results by claiming that it is not bound by the conclusions therein. Instead, as to insolvency the Opposition in conclusory fashion relies only upon (a) the statement in certain PWC audit reports for 2020 and 2021, which were apparently not even completed until more than two years later[3] (*see* Complaint, ¶ 48), that there was substantial doubt about Thrasio's ability to continue as a going concern, and (b) the allegation that "the total value of Thrasio's liabilities exceed the total amount of Thrasio's assets." *Id.,* ¶ 319.  It is submitted that the reliance

---

[3] The audits were not completed until at least June 2022, almost a year after the transfers at issue, and 6 months after the sale of Yardline to a third-party, good faith purchaser.

upon these two statements alone is not sufficient to plausibly establish insolvency necessary to sustain these fraudulent transfer claims.

11 U.S.C. § 101(32)(A) defines "insolvent" as a "financial condition such that the sum of such entity's debts is greater that all of such entity's property, at fair valuation, exclusive of …(i) property transferred, concealed, or removed with the intent to hinder, delay, or defraud such entity's creditors."  Plaintiff's allegation in the Complaint that Thrasio had a negative net worth on a balance sheet, without more, is insufficient. *See e.g. In re Trans World Airlines, Inc.*, 180 B.R. 389, 405 (Bankr. D. Del. 1994), *rev'd on other grounds,* 203 B.R. 890 (D. Del. 1996). Further, the Complaint also fails to plead facts regarding Thrasio's solvency at the time of each of the specific Yardline Transfers.  *See* e.g. *Innovative Custom Brands, Inc. v. Minor,* 2016 WL 308805, at *3 (S.D.N.Y. Jan. 25, 2016) (granting defendant's motion to dismiss where plaintiff failed to plead "that the corporation's liabilities exceeded its assets at the time the transfers took place.").

Further, the Complaint does not provide any facts to plausibly establish that Thrasio was rendered insolvent as a result of the Yardline Transfers, or that Thrasio made the loans or investments believing that they could not be repaid.

Nonetheless, the Opposition's refusal to acknowledge the $1 billion Series D investment as expressly detailed in the Independent Investigation Report, is fatal to these claims.  *See, e.g.,* Complaint, ¶69.

In addressing the Motion's arguments regarding reasonably equivalent value, the Opposition conclusory states that "[t]he Company did not receive equivalent value for the transfers because Yardline was an asset without value to the Company; it was a 'zero value' proposition." *See* Opposition, p. 97 (citing the Complaint, ¶ 104).   In doing so, the Opposition relies upon a

statement allegedly made by an otherwise, unidentified non-Thrasio affiliated director of Yardline, who purportedly "acknowledged that Silberstein **may have thought** that '[there [was] zero value in the current Yardline asset.'" *See* Complaint, ¶ 104 *(emphasis added)*.  In similar unconvincing manner, the Complaint continues to rely upon the assertion that Silberstein only sought to acquire Yardline as result of his animosity towards Horowitz. *See, e.g.* Complaint, ¶¶ 105, 111.  However, these allegations are belied by the facts, including as plead in the Complaint.

The Opposition, as it relates to Yardline's Motion, selectively fails to address or otherwise avoids material facts which establish Thrasio's intent in its acquisition of sole ownership of Yardline and the value thereof to Thrasio, including among other things:

- o Thrasio made business decisions, unanimously approved by its Board, to outright purchase all of the ownership interests in Yardline through a three-step process;
- o This was not a controversial decision as Thrasio was already a "founding" investor in Yardline, with a negotiated right to become the majority stakeholder in the company upon the occurrence of certain events which were solely under its control;
- o It is not disputed that at the time Yardline, which Plaintiff describes without any support as having "zero value", had been financially attractive for the significant Yardline Convertible Noteholders and prospective Yardline Series A investors;
- o Silberstein, Thrasio's CEO at the time, believed that Yardline's business complimented the business of Thrasio, and the acquisition removed a material competitive threat to Thrasio's business model;
- o As a direct result of Thrasio's actions in securing 100% ownership, and as unanimously authorized by the Boards of the entities, Yardline became contractually obligated pay more than $20.9 million to the Yardline Convertible Noteholders, all of which Thrasio was fully aware of and had orchestrated at the time it took such actions, and thus Thrasio necessarily provided Yardline with the necessary funds to pay these options as required by contract;
- o Thrasio provided funding to its now wholly owned subsidiary, which amounts were ultimately forgiven in exchange for equity upon approval of the Thrasio Board;
- o In January 2022, Thrasio entered into and closed a transaction to sell Yardline to a third party, Swiftline Corp. ("Swiftline"), for approximately $7 million in cash, plus shares in the purchaser's stock valued at $5 million, for a total of more than $12 million in consideration;
- o The sale transaction contained representations by Thrasio to the third-party, good faith purchaser that Yardline had no continuing obligation to Thrasio;

5

- o As further consideration for the transaction, the Opposition does not contest that representations, warranties and releases were included under the sale agreement; and

- o The Yardline Transaction was finalized and completed in January 2022, and all obligations thereunder were satisfied, and nothing about the Yardline Transaction is or remains executory in nature.

Despite being ignored by the Opposition, there can be no dispute that these facts are material to the claims against Yardline and establish that reasonably equivalent value was received by Thrasio for the Yardline Transfers.

Just six months prior to the Yardline Transfers at issue in the Complaint, Thrasio had already invested $1 million in "founding capital" with Yardline. *See, e.g.,* Complaint, ¶98. Silberstein, then CEO of Thrasio, "*envisioned that Yardline would complement Thrasio's business model by providing debt financing to small businesses that sold products on Amazon but were not yet ready to be acquired by Thrasio." See* Complaint, ¶96 (emphasis added). As set forth in the Motion, Yardline provided material deal flow for acquisitions and, with the core to Thrasio's business model and growth being competitive against other aggregators to source acquisitions, Thrasio wanted this to be proprietary. Thrasio did not want Yardline entering into exclusive relationships with other parties nor did Thrasio want Yardline to be acquired by any of their competitors.

The Complaint further concedes Yardline's value by acknowledging that Yardline attracted significant interest from Convertible Noteholders and had also secured sufficient Series A investors, including Convertible Notes funded by the lead investors, to allow for a closing on the equity financing. *See* Complaint, ¶¶ 99, 101, 102, 112. In fact, it was the loans which allowed Thrasio to secure sole ownership, which is indisputably value achieved for the company. But for

the purchase, these Convertible Noteholders would have received significant ownership interests in Yardline, and likely restricted Thasio's control over Yardline as its wholly owned subsidiary.

The Complaint itself details the complex process effectuated by Thrasio to achieve sole ownership of Yardline.  In April 2021, Thrasio commenced a three-step process for its takeover of Yardline. *See* Complaint, ¶ 105-106.  First, it held a business update as required under the Service Level Agreement to come into compliance with the agreement, which converted Thrasio's Class B stock non-voting stock into class A common stock, making Thrasio the controlling shareholder of Yardline, holding 67% of Yardline's voting stock. *See* Complaint, ¶ 107.  Second, "in order to prevent dilution of its ownership, Thrasio took advantage of a special feature of Yardline's Convertible Notes to eliminate the possibility of their conversion, causing an Extraordinary Event to occur, all of which triggered the Convertible Noteholders to lose their conversion rights for a contractually agreed consideration. *See* Complaint, ¶108.  And third, "Thrasio retired the stock held by Horowitz and other Yardline insiders in May 2021, after which Thrasio became the sole shareholder of Yardline." *See* Complaint, ¶ 109.   This was not an "off-the-cuff" transaction but instead was a well thought-out strategy by Thrasio.

The Yardline Transfers arose from these actions of Thrasio in securing sole ownership of Yardline.   While the Opposition tries to separate the act of acquisition from the required payment (*see* Opposition, p 10), the facts as alleged in the Complaint contradict this argument.  *See* Complaint, ¶¶ 109, 116.  The remaining transfers were investments by Thrasio in furtherance of the business of its then wholly owned subsidiary. *See* Complaint, ¶ 117.

The Complaint also acknowledges that Thrasio sold Yardline for approximately $12 million in cash and stock in 2022.  *See* Complaint, ¶ 119.   Clearly, this sale was indicative of the value seen in Yardline.

The Opposition also does not dispute the fact that Thrasio's acquisition of Yardline and each of the Yardline Transfers were approved by unanimous vote of Thrasio's Board. While the Opposition seeks to minimize this fact or otherwise disagrees with such approval, it is clear that the business judgment of Thrasio's Board must be upheld. There is no indication in the Complaint that Thrasio's Board decisions were the result of fraud, malfeasance, or otherwise. *See, e.g., In re Solutions Liquidation LLC*, 608 B.R. 384, 402 (Bankr. D. Del. 2019); *Hurwitz v. Mahoney (In re Space Case)*, 2024 WL 1628440, *15 (Bankr. D. Del. April 15, 2024).

The Opposition also cannot overcome the fact that transfers from a parent to its wholly owned subsidiary are not fraudulent transfers. *In re HH Liquidation, LLC,* 590 B.R. 211, 266 (Bankr. D. Del. 2018). Instead, the Opposition seeks to assert that this rule does not apply because it claims in conclusory fashion that Yardline was purportedly insolvent at the time of the transfers. *See* Opposition, p. 99. Nonetheless, the Complaint fails to provide any facts to plausibly state that Yardline was insolvent at the time. The Complaint's only alleged support for its claims regarding Yardline's solvency (or insolvency) is (a) a purported opinion of an unidentified Yardline director - "Yardline's only non-Thrasio-affiliated director acknowledged that Silberstein **may have thought** that 'there [was] zero value in the current Yardline asset'" (*See* Complaint, ¶104)(emphasis added) - and (b) certain alleged financial **projections** regarding Yardline's projected 2021 EBITDA. *Id.* (emphasis added). These two conclusory statements in the Complaint alone are not sufficient to plausibly establish that Yardline was insolvent at the time of the Yardline Transfers. In fact, Yardline was NOT insolvent at the time of the Yardline Transfers. Nonetheless, the facts asserted in the Complaint undisputably establish otherwise, including the significant interest of both the Yardline Convertible Noteholders and the potential Series A investors at the

relevant time (*see, e.g.,* Complaint, ¶¶ 99, 100, 101, 102, 105), and the ultimate sale to a good faith third-party purchaser in January 2022 (*see* Complaint, ¶ 119).

Based upon the foregoing, and as set forth in the Motion, it is submitted that the two counts for avoidance of constructive fraudulent transfers as against Yardline fail to meet the pleading requirements and must be dismissed in all respects.

B. **Actual Fraudulent Transfer Claims**:

The Complaint asserts two counts of actual fraudulent transfers as against Yardline: (a) In Count XX, the Complaint asserts claims for avoidance of actual fraudulent transfers allegedly arising from the loans and investments made by Thrasio to Yardline as a result of Thrasio taking over full ownership of Yardline; and (b) similarly, in Count XXII, the Complaint asserts claims for avoidance of actual fraudulent transfers related to Thrasio's decision, upon Board approval, to forgive those same loans made by Thrasio to Yardline in exchange for equity.   The Opposition fails to provide any argument to cure the pleading deficiencies for either of these claims as set forth in the Motion.

Unable to provide any direct evidence to establish any actual intent to hinder, delay, or defraud any creditor of the debtor through the Yardline Transfers (*see* N.J. Stat. § 25:2-25(a)(1)), the Opposition must rely upon certain "badges" of fraud to establish a plausible claim.   Yet, the alleged "badges" of fraud relied upon in the Opposition lack merit, and in any case fail to meet the heightened pleading standard under Rule 9(b).   The purported "badges" of fraud, as stated in the Opposition, are that "the transfers were made to insiders, like Cashman, who received value in that his personal legal concerns were removed by the payment", "the insider relationship between Cashman and Horowitz", and "the fact that the Company did not receive 'reasonably equivalent value' when it forgave Yardline's Promissory Notes, and the Company was insolvent." *See*

Opposition, p. 97. Yet, each of these purported "badges" of fraud are unsupported by the facts. First, there are no viable facts in the Complaint to support any allegation that "insiders" were beneficiaries of the Yardline Transfers. The Yardline Transfers were necessary payments to Yardline Convertible Noteholders for contractual obligations triggered when Thrasio executed its three-step plan to acquire sole ownership of Yardline. While the Complaint baldly asserts that Cashman and Horowitz (who could not even remotely be deemed an "insider", and is not mentioned in the Opposition on this point) were beneficiaries of the Yardline Transfers so as to avoid potential litigation, there are no facts asserted to support this claim or create any reasonable inference that either individual was facing potential legal liability or threatened litigation.[4] Conclusory statements in the Complaint do not suffice. Second, the Complaint specifically alleges that Silberstein harbored animosity against Horowitz and spends significant time asserting the Silberstein's actions were to force Horowitz out of the Company, so it makes no plausible sense that the alleged friendship between Horowitz and Cashman provides evidence of any intent by Thrasio to hinder, delay or defraud creditors.[5] Why would Silberstein agree if he despises Horowitz so much? Third, as explained in the Motion and above herein, there are no facts to plausibly conclude that Yardline was insolvent and thus any transfer between the parent Thrasio and its wholly owned subsidiary Yardline would not be subject to avoidance as a fraudulent transfer. Further, Thrasio forgave the promissory notes *in exchange for equity* in the company, all upon Board approval. Lastly, as set forth above, the Opposition fails to address the $1 billion investment in Thrasio through the Series D offering at the relevant time period. The Independent Investigation Results, which was expressly relied upon by the Debtor in confirming the Plan, were clear on this point.

---

[4] *See, also*, the motions to dismiss filed by both Cashman and Horowitz, which arguments are incorporated herein.
[5] It is also unclear what the term "insider relationship" means.

Further, none of these baseless "badges" of fraud can overcome the presumption of the unanimous approval of the Thrasio Board of all of these Yardline Transfers. Nothing in the Complaint establishes any facts showing an intent by Thrasio to hinder, delay or defraud any party. As set forth in the Motion, there was no scheme; just a business decision which Plaintiff now seeks to second guess and unwind because Plaintiff claims, with 20/20 hindsight, that it lacked any financial gain for Thrasio at the end of the day due to Thrasio management missteps with the business.

**C.  Other Independent Grounds for Dismissal of the Claims.**

While it is established that Plaintiff has separately failed to meet the pleading requirements for claims seeking avoidance of constructive and actual fraudulent transfers related to the Yardline Transfers, the Motion also asserts separate, independently viable arguments which warrant dismissal of these claims in the Complaint.

First, the Opposition does not dispute that Thrasio entered into a sale transaction with a third-party, good faith purchaser, which transaction was completed and closed in January 2022. The Opposition does not, and cannot, dispute that Thrasio, in entering into the sale transaction, made express representations and warranties to the third-party purchaser that Yardline owed no obligations to Thrasio. The Opposition also does not dispute that releases were issued under the sale transaction. In failing to do so, the Opposition concedes these points.

Instead of disputing these significant facts, the Opposition seeks to circumvent them by arguing that they are not relevant, the releases were somehow rejected by the Debtor or are precluded by unrelated damage claims asserted by Yardline's parent company, Swiftline, in the Debtors' bankruptcy cases. None of these arguments have any merit.

First, the Opposition argues that any release issued as part of the sale transaction in January 2022 was rejected by the Debtor through its Plan and Confirmation Order.  Pointing to a provision in the Confirmation Order which states that "[t]he Employment Agreements, separation agreements and/or purported releases between the Debtors and the Excluded Parties, which are rejected and, upon the Effective Date, are no longer in effect", Plaintiff claims that any release of Yardline under the sale agreement was rejected by the Debtors.  For starters, the release provision related to Yardline was not part of any Employment Agreement (as defined in the Plan) or a separation agreement as described in the Plan.  Without making any assumptions as to whether such agreements are executory in nature, these provisions in the Plan and Confirmation Order were not intended to address representations, warranties, or releases in all transactions (and related documents) entered into by the Debtors in the course of their businesses.  These transactions were the core and integral part of the Debtors' businesses.  To this end, nothing is asserted in the Complaint to support this fact in any event.

Most importantly though, the sale agreement is not an executory contract and cannot be rejected by the Debtors.  *See* 11.U.S.C. § 365.  While 11 U.S.C. § 365 allows debtors to assume or reject an executory contract, it provides no such option for non-executory contract. *In re Exide Techs.,* 378 B.R. 762, 765 (Bankr. D. Del. 2007).  "In determining whether a contract is executory and, hence, subject to rejection, courts in this Circuit utilize the Countryman standard, which provides that a contract is executory when 'the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.'" *Id.* at 766.  The sale agreement between Swiftline. and the Debtors related to the purchase and sale of the shares of Yardline and the transaction closed in January 2022.  All obligations thereunder were completed

12

in January 2022.   Now, more than three years after the transaction closed, the Debtors are not able

to reject the sale agreement to avoid cherry-picked provisions therein.

Notwithstanding, the rejection of an executory contract (which this is not) is a breach by

Thrasio, and does not permit or otherwise allow Thrasio to rescind the negotiated provisions in the

agreement.   The counterparty retains all of those negotiated rights.   *See, e.g., Mission Prod.*

*Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 379-380 (2019).   The Debtors' breach of the

agreement does open the door to let them now seek to avoid their express obligations under the

transaction and related sale agreement.   To do so would allow any party to exit an existing

agreement, and the obligations thereunder, by just breaching same.   Yardline is still entitled to its

bargained for terms under the sale agreement, including any express representations and warranties

or releases negotiated and agreed thereunder.

Second, the Opposition asserts that Yardline is "blocked" from seeking to enforce the

release agreements with the Debtors under a theory of "inconsistent remedies" because Swiftline,

as Yardline's parent company since January 2022, asserted breach of contract claims against the

Debtors for damages related to the transaction.   However, Swiftline's proof of claim is actually in

conformance with the case law cited in the Opposition.   *S&R Corp. v. Jiffy Lube Int'l, Inc.,* 968

F.2d 371, 376 (3d. Cir. 1992), as cited by the Opposition[6], states "under basic contract principles,

when one party to a contract feels that the other contracting party has breached its agreement, the

non-breaching party may either stop performance and assume the contact is avoided, or continue

its performance and sue for damages.   Under no circumstances may the non-breaching party stop

performance and continue to take advantage of the contract's benefits."   Swiftline, the third-party

purchaser of Yardline under the January 2022 sale transaction, filed its proof of claim, asserting

---

[6]It should be noted that the facts of *S&R Corp.*, which relate to the continued use of a trademarked license, are
completely distinguishable from the argument of "inconsistent remedies" as alleged in this matter.

that the Debtors breached the sale transaction by, *inter alia*, providing false financials.  At such time, there was no indication that Yardline would be the subject of any claims, much less claims that the Independent Investigation Report ultimately indicated were not viable.  By the proof of claim, Swiftline seeks damages related to the alleged breach by the Debtors.  Swiftline does not assert a claim for recission of the sale transaction, nor has it stopped its performance under the sale agreement.  To that end, the sale transaction was completed, all obligations thereunder were met, and the transaction closed more than three years ago.

Third, the Opposition argues that the sale transaction between Swiftline and Thrasio is irrelevant to Plaintiff's fraudulent transfer claims.  Nothing could be further from the truth.  The sale and related sale agreement provides reasonable inference of the value assigned to Yardline, and the express representations, warranties and releases provided to Swiftline as a good faith purchaser and subsequent transferee, and such transaction is protected from avoidance. *See Alameda Rsch. Ltd. v. Giles (In re FTX Trading Ltd.)*, 2024 Bankr. LEXIS 2584, *34 (citing 11 U.S.C. § 550(a)(1) and (2)).  The Complaint does not provide any facts to allow the Court to make a reasonable inference that the sale of Yardline by Thrasio to Swiftline was not a negotiated, arms-length transaction, for fair consideration.

Fourth, the Complaint's complete failure to assert which state law the claims are being brought under is fatal to the claims.   The only claims asserted in the Complaint against Yardline are these constructive and actual fraudulent transfer claims under applicable state law.   Which state's law is being asserted is integral to the defense, and the failure to plead this issue is fatal to these claims.

Finally, the Motion states that the Yardline Transfers were all unanimously approved by Thrasio's Board and thus are entitled to the presumption under the business judgment rule.  In the

Opposition, Plaintiff asserts that the presumption can only be asserted as an affirmative defense and thus the Court should not consider in deciding the Motion.   It is submitted that this is incorrect, and the Court must and should give deference to the business judgment of the Board, and nothing is asserted in the Complaint to rebut such presumption.  *See, e.g., In re Solutions Liquidation LLC*, 608 B.R. at 402; *Hurwitz v. Mahoney (In re Space Case)*, 2024 WL 1628440, at *15.   The Opposition also infers (without providing any support) that the Board's decision unanimously approving the Yardline Transfers was not "fully informed", however this argument ignores, among other things, the undisputed fact that Thrasio was already a "founding" investor in Yardline with a negotiated right to become the majority shareholder at its sole option and thus already had knowledge of the business.  The Opposition fails to assert any argument to dispute this material fact.  Lastly, the Opposition argues, without citing any legal support, that Yardline cannot rely upon the business judgment rule since it was a third-party corporation.   Nonetheless, the Complaint's claims against Yardline rely upon, in part, on the argument that the Board was not informed and thus a questioning of the business judgment of the Board.  At the time of such decisions, Yardline was a wholly owned subsidiary of Thrasio.  As such, the claims must be dismissed based upon the presumption of the valid business judgment of the Board.

## **CONCLUSION**

For all the foregoing reasons set forth in the Motion and in this Reply, the Complaint must

be dismissed with prejudice as against Yardline.

Dated:  New York, New York
        June 16, 2025

                                        KLESTADT WINTERS JURELLER
                                        SOUTHARD & STEVENS, LLP

                                        *By: /s/John E. Jureller, Jr.*
                                            John E. Jureller, Jr.
                                        200 West 41st Street, 17th Floor
                                        New York, NY 10036
                                        Tel:  (212) 972-3000
                                        Fax:  (212) 972-2245
                                        jjureller@klestadt.com

                                        *Attorneys for Defendant*
                                        *Yardline Capital Corp.*