| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>Jae H. Cho, Esq.<br>**FELICELLO LAW P.C.**<br>100 Plainfield Ave., Ste 8E<br>Edison, NJ 08817<br>Telephone: 732-545-9600<br>Email: jae@felicellolaw.com<br><br>Michael James Maloney, Esq. (admitted *pro hac vice*)<br>**FELICELLO LAW P.C.**<br>366 Madison Ave, 3rd Floor<br>New York, NY 10017<br>Telephone: (212) 584-7806<br>Direct: (646) 564-3510<br>Email: mmaloney@felicellolaw.com<br>*Counsel for Joseph Falcao* | |
| In re:<br><br>1 THRASIO ONE, INC.,<br><br>        *Reorganized Debtor*. | Chapter 11<br><br>Case No. 24-11850 (CMG) |
| META ADVISORS, LLC, solely in its capacity as Trustee of the Thrasio Legacy Trust,<br><br>        *Plaintiff*,<br><br>    v.<br><br>JOSHUA SILBERSTEIN; CARLOS CASHMAN; DANIEL BOOCKVAR; JOSEPH FALCAO; MOUNIR OUHADI; ADITYA RATHOD; ARI HOROWITZ; EVERYTHING'S COMING UP MILLHOUSE, LLC; CASHMAN FAMILY INVESTMENT II, LLC; HUDSON PALM LLC; and YARDLINE CAPITAL CORP.,<br><br>        *Defendants*. | Adv. Pro. No. 24-01637 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION BY DEFENDANT JOSEPH FALCAO TO COMPEL ARBITRATION AND STAY OR, IN THE ALTERNATIVE, TO DISMISS**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT .............................................................................................................................. 2

I.      The arbitration agreement requires most claims against Falcao to be arbitrated with the remaining claims to be stayed. ............................................................................. 2

      A.      The Trustee is bound by the arbitration agreement. ........................................ 2

      B.      Bankruptcy Court lacks authority to deny enforcement of the arbitration clause as to Plaintiff's claims that do not arise from the Bankruptcy Code. ..................... 3

      C.      Plaintiff's claims are subject to the arbitration agreement. ............................. 5

      D.      The Court should stay the proceeding. ............................................................ 5

II.      Counts II and III must be dismissed against Falcao. ................................................. 6

III.      Count IV must be dismissed against Falcao. ............................................................. 6

IV.      Plaintiff's unjust enrichment claim is untimely as asserted against Falcao. ............. 8

V.      Plaintiff has not stated a claim against Falcao for breach of fiduciary duty of oversight/loyalty – no controls (Count VII) .............................................................. 8

VI.      Plaintiff has not stated a claim against Falcao for waste of assets – inventory (Count VIII) ............................................................................................................................... 9

VII.      Plaintiff has not stated claims against Falcao for breach of fiduciary duty or aiding and abetting a breach of fiduciary duty (Counts 9-11). ................................................. 10

CONCLUSION ........................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

*Allandale Farm Inc. v. Koch*, No. 97350,
  1997 WL 1229248 (Mass. Super. Nov. 3, 1997) .................................................................. 9

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ............................................................................... 11

*Broz v. Cellular Info. Sys. Inc.*,
  673 A.2d 148 (Del. 1996) ............................................................................................... 12

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ......................................................................................................... 4

*Emerson Radio Corp. v. Fok Hei Yu*, No. 2:20-CV-01618-WJM-MF,
  2021 WL 1186824 (D.N.J. Mar. 30, 2021) ..................................................................... 10

*Fagin v Gilmartin*,
  432 F.3d 276 (3d Cir 2005) .............................................................................................. 9

*Gantler v. Stephens*,
  965 A.2d 695 (Del. 2009) ............................................................................................... 13

*Hays and Co. v Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  885 F2d 1149 (3d Cir 1989) ............................................................................................. 3

*Higher Educ. Mgmt. Group, Inc. v. Mathews*, No. Civ.A. 9110-VCP,
  2014 WL 5573325 (Del. Ch. Nov. 3, 2014) ................................................................... 13

*In re APF Co.*,
  264 BR 344 (Bankr D Del 2001) ................................................................................. 2, 4

*In re Bayou Steel BD Holdings, L.L.C.*,
  642 B.R. 371 (Bankr. D. Del. 2022) ............................................................................... 11

*In re Fedders North America, Inc.*,
  405 B.R. 527 (Bankr. D. Del. 2009) ............................................................................... 11

*In re Flagstaff Realty Assocs.*,
  60 F.3d 1031 (3d Cir. 1995) ............................................................................................. 4

*In re Fleming Companies, Inc.*,
  325 B.R. 687 (Bankr. D. Del. 2005) ................................................................................. 7

*In re Highland Cap. Mgmt., L.P.*, No. 19-34054-SGJ11,
  2021 WL 5769320 (Bankr. N.D. Tex. Dec. 3, 2021) ....................................................... 4

*In re Mintze*,
    434 F3d 222 (3d Cir 2006) .................................................................................................. 4

*In re Mintze*, 434 F.3d ........................................................................................................... 5, 6

*In re Paragon Offshore PLC*,
    588 B.R. 735 (Bankr. D. Del. 2018) ................................................................................. 3, 4

*Lamoureux v. Smith*, No. 07953B,
    2007 WL 4633272 (Mass. Super. Nov. 5, 2007) ................................................................. 8

*Matter of Nat'l Gypsum Co.*,
    118 F.3d 1056 (5th Cir. 1997) ............................................................................................. 5

*McLaughlin v. J-PAC, LLC*, No. 10-2594-BLS1,
    2011 WL 1758945 (Mass. Super. Apr. 14, 2011) ............................................................... 8

*Pagliuca v. City of Bos.*,
    35 Mass. App. Ct. 820 (1994) ............................................................................................. 8

*Shearson/Am. Exp., Inc. v McMahon*,
    482 US 220 (1987) ............................................................................................................... 5

*Smith v Spizzirri*,
    601 U.S. 472 (2024) ............................................................................................................. 6

*Williams v. Medley Opp. Fund II, LP*,
    965 F.3d 229 (3rd Cir. 2020) ............................................................................................... 3

**Statutes**

11 U.S.C. § 541 .......................................................................................................................... 2

11 U.S.C. § 544 .......................................................................................................................... 1

9 U.S.C. § 1 ................................................................................................................................ 1

9 U.S.C. § 3 ................................................................................................................................ 4

9 U.S.C. § 4 ................................................................................................................................ 4

Mass. Gen. Laws Ann. ch. 260, § 2A ........................................................................................ 8

**Treatises**

Restatement (Second) of Conflict of Laws § 302 (1971) ........................................................... 9

Defendant Joseph Falcao a/k/a José Falcao ("Falcao") submits this reply memorandum of law in further support of his motion to compel arbitration of the claims asserted by META Advisors, LLC ("Plaintiff") in its capacity as Trustee to the Thrasio Legacy Trust ("Trust"), the successor-in-interest to the claims of chapter 11 debtor Thrasio Holdings, Inc. ("Thrasio" or the "Company") and otherwise stay this action pending the outcome of that arbitration, and in the alternative to dismiss the Complaint as against Mr. Falcao. Falcao does not consent to entry of final orders or judgment by the bankruptcy court in this adversary proceeding. Fed. R. Bankr. P. 7012(b).[1]

**PRELIMINARY STATEMENT**

The broad arbitration clause here requires most of Plaintiff's claims against Mr. Falcao, including the claims of conspiracy to fraudulently transfer tender offer proceeds, unjust enrichment, breach of fiduciary duty, waste of corporate assets, and aiding and abetting breach of fiduciary duty, to be arbitrated as provided under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"). The Court also has the discretion to stay the constructive fraudulent transfer claims brought under 11 U.S.C. § 544(b) pending the arbitration. Defendants' contention that the arbitration clause contained in Mr. Falcao's Separation Agreement does not bind the Trust is absurd. The Trust stands in the shoes of the Company which is bound by the arbitration provision with Mr. Falcao. The Company's agreement to arbitrate does not disappear simply because the Company's claims are asserted by the Trustee. Accordingly, the Court should stay the entire action as against Mr. Falcao, pending completion of the arbitration.

Even if the arbitration provision does not provide for arbitration of these claims,[2] the Court should dismiss Plaintiff's claims against Mr. Falcao because they fail to plausibly state a claim.

---

[1] Undefined capitalized terms have the meaning ascribed to them in the Complaint.
[2] Mr. Falcao reserves all rights to appeal a denial of his motion to compel arbitration.

1

The allegations fail to delineate how Mr. Falcao, in contrast to the group of "D&O Defendants" as a whole, committed the alleged wrongdoing and Plaintiff cannot remedy that defect via its opposition to the motion to dismiss. Nor do the allegations properly allege the financial condition of the Company at the time of the transactions at issue. A mere allegation of "insolvency" is not sufficient to plausibly state a claim under the relevant statutes. And the Complaint does not plausibly support the contention that the Board-approved transfers constitute waste or a breach of Mr. Falcao's fiduciary duty. Thus, the Court should dismiss all claims against Mr. Falcao.[3]

## ARGUMENT

**I.  The arbitration agreement requires most claims against Falcao to be arbitrated with the remaining claims to be stayed.**

**A.  The Trustee is bound by the arbitration agreement.**

Plaintiff cites no authority to support its bald and erroneous contention that the Trustee of the Trust—as opposed to the Company—is not a party to the arbitration agreement. On the contrary, courts in this District have held that "where the trustee brings an action as successor to the debtor's interest under 11 U.S.C. § 541, the terms of an arbitration clause bind the trustee to the same extent as the debtor because in this context 'the trustee stands in the shoes of the debtor,' *i.e.*, the trustee can only assert those causes of action possessed by the debtor and is subject to the same defenses, including a valid arbitration provision, as could have been asserted against the debtor." In re APF Co., 264 BR 344, 363 (Bankr D Del 2001) (quoting Hays and Co. v Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F2d 1149, 1154 (3d Cir 1989)).

Here, Plaintiff is bringing this action against Defendants as the trustee of debtor, 1 Thrasio One, Inc ("Debtor"). Because Plaintiff is acting on behalf of debtor's interest as a party to this

---

[3] Mr. Falcao joins in the arguments asserted by Joshua Silberstein and Everything is Coming up Millbrook, LLC in their reply brief at points I; II(A), (B), (C), (E), (F), (H); III, and IV.

2

claim, Plaintiff stands in the shoes of the debtor and is bound to the arbitration agreement as a party to this claim. Thus, there is a valid arbitration agreement to the parties that must be enforced.

Plaintiff's reliance on Williams v. Medley Opp. Fund II, LP, 965 F.3d 229, 237 n.7 (3rd Cir. 2020) is misplaced. In that case, the court denied a motion to compel arbitration because the arbitration agreement itself was found to be unenforceable as a matter of public policy – specifically, it restricted the arbitrator to applying only tribal law and barred consideration of federal or state law claims, which the Supreme Court held impermissible. The issue there was not whether the party resisting arbitration was a signatory or not, but rather the enforceability of the arbitration agreement.

Nor does the Bankruptcy's Court's order that the Separation Agreement is "no longer in effect" have any effect on the enforceability of the arbitration clause. *In re Paragon Offshore PLC*, 588 B.R. 735, 749 (Bankr. D. Del. 2018) (finding that "the rejection of an executory contract is only 'a breach of a contract, and *the terms of the contract still control the relationship of the parties.'"*) (*emphasis* in original) (citations omitted). The arbitration clause remains enforceable against the Company, and its successor-in-interest: the Trustee of the Trust. *See In re Paragon Offshore PLC*, 588 B.R. at 749. *In re Highland Cap. Mgmt., L.P.*, No. 19-34054-SGJ11, 2021 WL 5769320 (Bankr. N.D. Tex. Dec. 3, 2021), from the Northern District of Texas, cited by Plaintiff, does not apply here and its holding is contrary to Third Circuit precedent. *See In re Paragon Offshore PLC*, 588 B.R. at 749 & n. 64; *In re Flagstaff Realty Assocs.*, 60 F.3d 1031, 1034 (3d Cir. 1995) (finding that "rejection" allows the debtor the burden of continuing to provide services but does not alter the vitality of the other terms of the agreement) (citations omitted).

**B.      Bankruptcy Court lacks authority to deny enforcement of the arbitration clause as to Plaintiff's claims that do not arise from the Bankruptcy Code.**

The FAA, "mandates that district courts *shall* direct the parties to proceed to arbitration on

3

issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)*, citing 9 U.S.C. §§ 3, 4. The Supreme Court has interpreted the FAA as establishing a federal policy favoring arbitration which requires enforcement of agreements to arbitrate statutory claims. *In re APF Co., 264 BR 344, 361 (Bankr D Del 2001)*. The FAA's mandate can only be overridden if a party opposing arbitration can demonstrate that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *In re Mintze, 434 F3d 222, 229 (3d Cir 2006)* (quoting *Shearson/Am. Exp., Inc. v McMahon, 482 US 220, 227 (1987)*. Congressional intent can be determined by reviewing: "(1) the statute's text, (2) the statute's legislative history, or (3) 'an inherent conflict between arbitration and the statute's underlying purposes.'" *In re Mintze*, 434 F.3d at 229.

In the Third Circuit, the Bankruptcy Court only has discretion to deny enforcement of an otherwise applicable arbitration clause if "the party opposing arbitration can establish congressional intent, under the *McMahon* standard, to preclude waiver of judicial remedies for the statutory rights at issue." *In re Mintze*, 434 F.3d at 231. This standard "applies equally to core and non-core proceedings" *In re Mintze*, 434 F.3d at 231, citing *Matter of Nat'l Gypsum Co.,* 118 F.3d 1056, 1067 (5th Cir. 1997) ("[W]e believe that nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceedings, i.e., whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether the arbitration proceeding would conflict with the purposes of the Code.").

The *Mintz* Court established that there is no congressional intent to preclude waiver of judicial remedies for the statutory rights at issue in the statutory text or the legislative history of the Bankruptcy Code. *In re Mintze*, 434 F.3d at 231. The only issue for the Court to consider is whether there is "an inherent conflict between arbitration and the statute's underlying purposes."

4

*In re Mintze*, 434 F.3d at 229. Plaintiff's allegations of fraudulently transferring tender offer proceeds, unjust enrichment, breach of fiduciary duty, waste of corporate assets, and aiding and abetting breach of fiduciary duty are not claims derived from the Bankruptcy Code; their resolution in an arbitration will not lead to any inherent conflict with the purposes of the Bankruptcy Code. As such, the court must compel arbitration in the absence of a clear congressional command to the contrary – which has not been demonstrated in Plaintiff's Opposition to Defendants' Motion to Dismiss.

C. **Plaintiff's claims are subject to the arbitration agreement.**

Plaintiff's interpretation of the arbitration provision of the February 2022 Separation Agreement is unduly narrow. Under the February 2022 Separation Agreement, the arbitration provision is written broadly and unambiguously to cover "any and all disputes arising out of the terms of this agreement, their interpretation, and any of the matters herein released." This language extends well beyond the literal terms of the Agreement and explicitly includes any matter released in the Agreement. Here, all matters related to Mr. Falcao's employment are subject to arbitration as the Separation Agreement expressly requires arbitration of "any disputes arising out of its terms" or "any of the matters herein released," which include the breach of fiduciary and waste claims that have been asserted against Mr. Falcao. Plaintiff's argument that the release provision only bars claims by Mr. Falcao against the Company, and not the other way is around, is contrary to the scope of the arbitration clause. Thus, the arbitration clause is mutual and applies to "any and all disputes," regardless of whether they are brought by Mr. Falcao or Plaintiff.

D. **The Court should stay the proceeding.**

Section 3 of the FAA specifies that, when a dispute is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until [the] arbitration has concluded." *Smith v Spizzirri*, 601 U.S. 472, 473 (2024). Thus, the plain statutory text of the FAA "requires a

5

court to stay the proceeding." *Id*. Because it is appropriate for this Court to compel arbitration of almost all of the claims asserted against Falcao in the Complaint, the Court should stay the fraudulent transfer claims (Count II and Count III). And it would be judicially efficient for the Court to stay the non-arbitrable claims against Falcao because they rely on the same underlying facts and circumstances as the claims subject to arbitration, i.e. the breach of fiduciary duty and waste claims. *See* In re Fleming Companies, Inc., 325 B.R. 687, 695 (Bankr. D. Del. 2005) ("The FAA allows the court to stay non-arbitrable claims where doing so will promote judicial economy or avoid conflicting rulings.").

## II.     Counts II and III must be dismissed against Falcao.

Plaintiff's motion to dismiss does not remedy the defects in Plaintiff's Counts II and III as against Falcao. Specifically, Plaintiff continues to state in conclusory form that "Thrasio was insolvent at the time of the Tender Offer" and contends that the Complaint's recitation of "facts from audited financial statements" are sufficient for meeting the particularity standard. It is not.

As Falcao details in his opening brief (Dkt. 65 at 12), the citation to calculations of the Company's operating loss, net loss, and accumulated deficit for 2020 does not provide sufficient information for the Court to plausibly infer that the Company was insolvent because the citation does not provide any information about the Company's assets at the time of the Tender Offer. Where insolvency is defined as the sum of an entity's debts as greater than all of an entity's property, it cannot be calculated without knowing the sum of the entity's property. *See* In re F-Squared Inv. Mgt., LLC, 2019 WL 4261168, at *11 (citation omitted).

## III.    Count IV must be dismissed against Falcao.

Plaintiff misstates the statute of limitations for civil conspiracy claims under Massachusetts law. A tort action, such as the civil conspiracy claim asserted by Plaintiff, must be "commenced only within three years next after the cause of action accrues." Mass. Gen. Laws Ann. ch. 260, §

6

2A; *Pagliuca v. City of Bos.*, 35 Mass. App. Ct. 820, 824 (1994). The cause of action does not accrue "when a plaintiff learns of the injury," as asserted by Plaintiff, but accrues "on the date of the first allegedly wrongful act." *Lamoureux v. Smith*, No. 07953B, 2007 WL 4633272, at *2 (Mass. Super. Nov. 5, 2007)." It is the date of the injury that controls, not the date of the plaintiff's knowledge. Falcao cannot be held liable under a civil conspiracy claim here where his alleged last act in furtherance of the alleged conspiracy occurred in August 2020 and this claim was not brought until after August 2023.

Further, Plaintiff asserts, without support, that the Court may "infer" that he had reached an agreement to fraudulently transfer the Tender Offer Proceeds. But, as explained in Falcao's opening brief, Plaintiff's allegations that Falcao was a transferee of the Tender Offer and "sought approval for the wire payments," is insufficient to establish civil conspiracy to make a fraudulent transfer under Massachusetts law. Civil conspiracy can be established by alleging either coercion (not alleged here) or by allegations showing both a "common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." *McLaughlin v. J-PAC, LLC*, No. 10-2594-BLS1, 2011 WL 1758945, at *2 (Mass. Super. Apr. 14, 2011). It is not sufficient for Plaintiff to allege an agreement to engage in the Tender Offer Proceeds - the Plaintiff must include allegations that Falcao committed a tortious act, *i.e.* that he acted to defraud. *Allandale Farm Inc. v. Koch*, No. 97350, 1997 WL 1229248, at *3 (Mass. Super. Nov. 3, 1997) ("If there is no tort set out as to a single party, the charge of conspiracy adds nothing unless there is a showing of a wrongful act in addition to the parties' concerted action.") (citation omitted). Plaintiff's allegation that Falcao sought approval of the wire transfers does not allege a tortious act in furtherance of the alleged conspiracy. Thus, Plaintiff has not, and cannot, state a claim of civil conspiracy against Falcao.

7

**IV.     Plaintiff's unjust enrichment claim is untimely as asserted against Falcao.**

Plaintiff's unjust enrichment claim against Falcao must be dismissed because it is untimely. See Dkt. 65 at 15-16.

Plaintiff's application of New Jersey law to the unjust enrichment claim is flawed because it is based on the wrong legal standard. Under New Jersey's choice-of-law rules with respect to unjust enrichment claims, the law of the state of incorporation governs internal corporate affairs. Fagin v Gilmartin, 432 F.3d 276, 282 (3d Cir 2005). Plaintiff's claim for unjust enrichment here is based on its contention that Mr. Falcao was unjustly enriched by receiving his "share of the Proceeds in the Tender Offer." Complaint ¶ 43. The Board's decision to approve the Tender Offer – a redemption by the corporation of outstanding shares of its own stock – was an exercise of business judgment. Restatement (Second) of Conflict of Laws § 302 (1971) (internal affairs of a corporation include the "purchase and redemption by the corporation of outstanding shares of its own stock"). As such, the presumption is that Delaware law applies to the unjust enrichment claim, not New Jersey as Plaintiff applies. See *Emerson Radio Corp. v. Fok Hei Yu*, No. 2:20-CV-01618-WJM-MF, 2021 WL 1186824, at *4 (D.N.J. Mar. 30, 2021) (holding that both of Plaintiff's unjust enrichment claims are inextricably intertwined with Emerson's internal affairs and should therefore be governed by Delaware law.)

**V.     Plaintiff has not stated a claim against Falcao for breach of fiduciary duty of oversight/loyalty – no controls (Count VII)**

Plaintiff cites to a case from a bankruptcy court in Texas in a failed effort to support its contention that corporate officers owe a duty of oversight sufficient to support a *Caremark* claim under Delaware law. Dkt. 118 at ECF 83. But as set out in detail in Falcao's opening brief, under Delaware law, a duty of oversight is a duty of the board of directors, not a duty owed by the individual officers of the company. Dkt. 65 at 17-18. Falcao was not a director of the Company

8

and cannot be held liable for a failure of oversight claim.

VI. **Plaintiff has not stated a claim against Falcao for waste of assets – inventory (Count VIII)**

Other than naming his position as CFO at the Company – a position Falcao only held until March 15, 2021, Plaintiff fails to allege any facts that would support an inference for its broad claim that Falcao was responsible for managing the inventory of the Company. As Plaintiff admits, Falcao did inform Boockvar about his concerns regarding the lack of certain controls. The Complaint does not contain any allegations about Falcao's ability to control the assets of the Company or make any changes to the financial controls in place. Rather, as the Complaint acknowledges, Falcao raised the issue of the need for greater controls. Thus, Falcao fulfilled his duty as the CFO. He was not a director of the Company and had no power to do anything about managing the inventory of the Company.

Nor does the Plaintiff's opposition to the motion to dismiss remedy the fatal flaw of Plaintiff's corporate waste claim: Plaintiff fails to establish that the value of the inventory was less than the price of inventory paid by the Company. Exchanging cash for assets with equal value cannot constitute waste. *In re Bayou Steel BD Holdings, L.L.C.*, 642 B.R. 371, 406 (Bankr. D. Del. 2022) ("Under Delaware law, corporate waste exists where there is 'an exchange of corporate assets for consideration so disproportionately small as to lie beyond a range at which any reasonable person might be willing to trade.'"); *see In re Fedders North America, Inc.*, 405 B.R. 527, 549 (Bankr. D. Del. 2009) (finding that to survive a motion to dismiss, "a corporate waste claim 'must rest on the pleading of facts that show that the economics of the transaction were so flawed that no disinterested person of right mind and ordinary business judgment could think the transaction beneficial to the corporation'"). A corporate waste claim is generally only viable where there is "a transfer of corporate assets that serves no corporate purpose; or for which no

9

consideration at all is received." *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000) (citation omitted).

Here, Plaintiff admits that corporate assets were transferred for inventory, which by definition has a corporate purpose. And even if *ex-post* the decision to purchase that quantum of inventory was "unreasonably risky," that is not enough to state a claim of corporate waste. *Id.* As the Supreme Court of Delaware has warned, "Courts are ill-fitted to attempt to weigh the 'adequacy' of consideration under the waste standard or, *ex-post*, to judge appropriate degrees of business risk." *Id.* (citation omitted). Thus, Plaintiff fails to state a corporate waste claim against Falcao.

### VII. Plaintiff has not stated claims against Falcao for breach of fiduciary duty or aiding and abetting a breach of fiduciary duty (Counts 9-11).

Plaintiff's description of *Broz v. Cellular Info. Sys. Inc.*, 673 A.2d 148 (Del. 1996), is misleading. In that case, the defendant had not presented a corporate opportunity to the board. The Court found that "[i]t is not the law of Delaware that presentation to the board is a necessary prerequisite to a finding that a corporate opportunity has not been usurped." *Id.* at *157. But the *Broz* court further noted that, "[o]f course, presenting the opportunity to the board creates a kind of 'safe harbor' for the director, which removes the specter of a *post hoc* determination that the director or officer has improperly usurped a corporate opportunity. Thus, presentation avoids the possibility . . . [of] future liability for breach of fiduciary duty." *Id.* As Plaintiff acknowledges, the Board approved the Secondary Sales in this case, which removes the possibility that Falcao could be found to have breached his fiduciary duty by participating in the Secondary Sales and, therefore, Count 9 must be dismissed as against Falcao.

Nor does Plaintiff's Count 10 fair any better as alleged against Falcao. As Falcao explains in his opening brief, Dkt. 65 at 21-22, the Complaint does not state a claim for misuse of confidential information. Plaintiff responds by stating that Count 10 is "not one for 'insider

10

trading,'" but instead "is a claim for breach of fiduciary duty claim based on misuse of confidential corporate information." Dkt. 118 at ECF 92. Plaintiff, however, fails to explain the difference it intends to draw by this distinction and goes on to cite a case, *Heartland Payment Sys., LLC v. Carr*, which is an insider trading case. The Complaint fails to allege any facts from which the Court can infer that Falcao used confidential information to further his own private interests in breach of the duty he owed to the Company's shareholders. Count 10 must be dismissed against Falcao.

And Plaintiff cannot maintain its aiding and abetting claim (Count 11) against Falcao. *See* Dkt. 65 at 23. Contrary to Plaintiff's suggestion, this is not only true in cases where a Court determines that a primary breach of fiduciary duty count could proceed against the same defendant. Dkt. 118 at ECF 96. Rather, because an officer of a Company owes fiduciary duties to the Company and conduct that would constitute aiding and abetting a fiduciary duty would be a breach of his/her own fiduciary duty, a separatee aiding and abetting claim cannot be stated. *Higher Educ. Mgmt. Group, Inc. v. Mathews*, No. Civ.A. 9110-VCP, 2014 WL 5573325 at *13 (Del. Ch. Nov. 3, 2014) (dismissing an aiding and abetting claim against the CFO in the same opinion that dismisses the primary breach of fiduciary claim against the director defendants), citing *Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del. 2009).

## CONCLUSION

For all these reasons and the reasons provided in Falcao's opening brief, the Court should enter an Order either compelling arbitration of the claims made against Falcao and staying the case pending arbitration or, in the alternative, dismissing all claims against Falcao, and granting such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: New York, New York<br>June 16, 2025 | Respectfully submitted,<br><br>FELICELLO LAW P.C.<br><br>By: ___*/s/ Jae H. Cho*___ |

11

Michael James Maloney (admitted *pro hac vice*)
366 Madison Avenue
3rd Floor
New York, New York 10017
Tel. (212) 584-7806
mmaloney@felicellolaw.com

and

Jae H. Cho, Esq.
100 Plainfield Ave., Ste 8E
Edison, NJ 08817
Telephone: 732-545-9600
Email: jae@felicellolaw.com

*Counsel for Joseph Falcao*