UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

David A. Kotler
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3669
Facsimile:  (212) 698-3599
Email: david.kotler@dechert.com

*Counsel for Defendants Carlos Cashman, Mounir Ouhadi,*
*Aditya Rathod, and Cashman Family Investment II, LLC*

| | |
|---|---|
| In re: | Chapter 11 |
| 1 THRASIO ONE, INC., | Case No. 24-11850 (CMG) |
| *Reorganized Debtor.* | |
| META ADVISORS, LLC, solely in its capacity as Trustee of the Thrasio Legacy Trust, | |
| *Plaintiff,* | Adv. Pro. No. 24-01637 |
| v. | Hearing Date: <u>July 15, 2025</u><br>10:00 a.m. |
| JOSHUA SILBERSTEIN; CARLOS CASHMAN; DANIEL BOOCKVAR; JOSEPH FALCAO; MOUNIR OUHADI; ADITYA RATHOD; ARI HOROWITZ; EVERYTHING'S COMING UP MILLHOUSE, LLC; CASHMAN FAMILY INVESTMENT II, LLC; HUDSON PALM LLC; and YARDLINE CAPITAL CORP., | Judge: <u>Christine M. Gravelle</u> |
| *Defendants.* | |

**DEFENDANTS CARLOS CASHMAN, MOUNIR OUHADI, ADITYA RATHOD, AND
CASHMAN FAMILY INVESTMENT II, LLC'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO DISMISS**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ...................................................................................................................... 3

I.    THE COMPLAINT DOES NOT PLEAD SUFFICIENT FACTS TO
OVERCOME THE BUSINESS JUDGMENT RULE ................................................... 3

    A.    The Court Can And Should Apply The Business Judgment Rule Now ........... 3

    B.    Plaintiff Fails Sufficiently To Allege Fraud On The Board ............................ 5

    C.    Plaintiff Does Not State An Oversight Claim .................................................. 8

    D.    Decisions By Both Directors And Officers Are Owed Deference Consistent
With The Business Judgment Rule ................................................................ 10

II.    PLAINTIFF CANNOT NOW ASSERT ALLEGATIONS INCONSISTENT
WITH REPRESENTATIONS THRASIO MADE EARLIER IN THE
BANKRUPTCY PROCEEDINGS ................................................................................ 10

III.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM AND CERTAIN OF ITS
BREACH OF FIDUCIARY DUTY CLAIMS ARE TIME-BARRED ....................... 13

    A.    Plaintiff's Unjust Enrichment Claim Is Time-Barred Under Delaware Law ... 13

    B.    Certain of Plaintiff's Breach Of Fiduciary Duty Claims Also Are Time-Barred
Under Delaware Law, And No Tolling Doctrines Are Applicable Here ......... 14

        1.    None Of The Relevant Claims Involves An Inherently
Unknowable Injury .............................................................................. 14

        2.    There Is No Basis For Equitable Tolling ............................................. 16

        3.    The Continuing Wrong Doctrine Does Not Apply Here ..................... 18

IV.    THE CASHMAN SEPARATION AGREEMENT IS VALID AND
ENFORCEABLE ......................................................................................................... 19

    A.    The Cashman Separation Agreement Is Not An Executory Contract And
Therefore Could Not Have Been Rejected By The Plan ................................. 20

    B.    The Cashman Separation Agreement's Release Encompasses Each Of
Plaintiff's Claims Against Cashman .............................................................. 20

    C.    Massachusetts Law Does Not Limit The Release ........................................... 23

V.    PLAINTIFF FAILS TO STATE A FRAUDULENT CONVEYANCE CLAIM ......... 24

    A.    Plaintiff's Allegations Fail To Meet Basic, Much Less Heightened, Pleading
Standards ........................................................................................................ 24

    B.    Plaintiff's Failure To Identify The Applicable State Law Violates Rules 8 and
9(b)'s Pleading Requirements ........................................................................ 26

    C.    Bankruptcy Courts Do Not Recognize A Claim For "Conspiracy To
Fraudulently Transfer" ................................................................................... 28

i

D.    Plaintiff's Conclusory Allegations Fail To Support Its Fraudulent Conveyance Claims ...................................................................................................... 29

1.    Plaintiff Fails Plausibly To Allege That The Release Of Claims By Thrasio Against Cashman Was A Fraudulent Transfer.................. 29

2.    Plaintiff Fails Plausibly To Allege That The Transfer Of Tender Offer Proceeds Was A Fraudulent Transfer........................................ 30

3.    Plaintiff Fails Plausibly To Allege That The Yardline Transactions Were Fraudulent Transfers .............................................. 31

VI.    PLAINTIFF FAILS PLAUSIBLY TO ALLEGE UNJUST ENRICHMENT UNDER DELAWARE, NEW JERSEY, OR MASSACHUSETTS LAW .................. 32

VII.    PLAINTIFF FAILS TO STATE A CLAIM FOR CORPORATE WASTE ................ 34

A.    Plaintiff Fails To State A Corporate Waste Claim Against Any COR Defendant Regarding Inventory.......................................................................................... 34

B.    Plaintiff Fails To Allege That No Rational Actor Would Accept The Thrasio Board's Purchase Of Yardline ........................................................................ 36

VIII.    CASHMAN DID NOT VIOLATE DELAWARE GENERAL CORPORATION LAW SECTION 160 BY VOTING TO APPROVE THE UNANIMOUSLY FAVORED TENDER OFFER...................................................... 37

CONCLUSION.................................................................................................................. 39

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdullah v. Rowan Univ.*,
2024 WL 4751196 (D.N.J. Nov. 12, 2024) ...........................................................28

*In re Acis Cap. Mgmt., L.P.*,
2024 WL 4500804 (Bankr. N.D. Tex. Oct. 15, 2024) ...........................................32

*In re Am. Int'l Grp., Inc.*,
965 A.2d 763 (Del. Ch. 2009).................................................................................9

*In re Aphton Corp.*,
423 B.R. 76 (Bankr. D. Del. 2010) .......................................................................12

*Bench Walk Lighting LLC v. LG Innotek Co.*,
530 F. Supp. 3d 468 (D. Del. 2021).......................................................................22

*Berg v. C&H Fin. Servs., Inc.*,
2024 WL 1255504 (D. Del. Mar. 25, 2024) ...........................................................6

*In re BH Sutton Mezz LLC*,
2016 WL 8352445 (Bankr. S.D.N.Y. Dec. 1, 2016).............................................30

*State ex rel. Brady v. Pettinaro Enters.*,
870 A.2d 513 (Del. Ch. 2005).................................................................................14

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) .......................................................................................36

*Buddenhagen v. Clifford*,
2024 WL 2106606 (Del. Ch. May 10, 2024)....................................................16, 17

*Cafaro v. HMC*,
2008 WL 4224805 (D.N.J. Sept. 8, 2008) .............................................................34

*Cap. Inv. Funding, LLC v. Lancaster Res., Inc.*,
2015 WL 892750 (D.N.J. Feb. 27, 2015) ..............................................................25

*In re Caremark Int'l Inc. Derivative Litig.*,
698 A.2d 959 (Del. Ch. 1996).............................................................................9, 10

*In re Citigroup Inc. S'holder Derivative Litig.*,
964 A.2d 106 (Del. Ch. 2009)..................................................................................8

*Cont'l Invs. Fund LLC v. TradingScreen, Inc.*,
2021 WL 3120860 (Del. Ch. July 23, 2021)........................................................38

*In re CRC Parent Corp.*,
2013 WL 781603 (Bankr. D. Del. Mar. 1, 2013)...................................................29

*In re CTE 1 LLC*,
No. 19-30256 (VFP), 2023 WL 5257940 (Bankr. D.N.J. Aug. 11, 2023) .................24, 25, 27

*In re Dean Witter P'ship Litig.*,
1998 WL 442456 (Del. Ch. July 17, 1998)......................................................15, 17

*Desimone v. Barrows*,
924 A.2d 908 (Del. Ch. 2007)...........................................................................18

*Devaney v. Chester*,
813 F.2d 566 (2d Cir. 1987)..............................................................................25

*In re Dex Media, Inc.*,
595 B.R. 19 (D. Del. 2018) ...............................................................................11

*Doelger v. JPMorgan Chase Bank, N.A.*,
2024 WL 4727989 (D. Mass. Mar. 25, 2024).......................................................23

*In re Dreier LLP*,
452 B.R. 467 (Bankr. S.D.N.Y. 2011) ...............................................................32

*In re DSI Renal Holdings, LLC*,
574 B.R. 446 (Bankr. D. Del. 2017) ..................................................................36

*In re DSI Renal Holdings, LLC*,
617 B.R. 496 (Bankr. D. Del. 2020) ..................................................................31

*ECB USA, Inc. v. Savencia, S.A.*,
2025 WL 417738 (D. Del. Feb. 6, 2025) ............................................................15

*Emerald Cap. Advisors Corp. v. Bayerische Moteren Werke Aktiengesellschaft (In
re Fah Liquidating Corp.)*,
572 B.R. 117 (Bankr. D. Del. 2017) ..................................................................26

*Emerson Radio Corp. v. Fok Hei Yu*,
2021 WL 1186824 (D.N.J. Mar. 30, 2021)..........................................................13

*In re Exide Techs.*,
378 B.R. 762 (Bankr. D. Del. 2007) ..................................................................20

*In re Fedders N. Am., Inc.*,
405 B.R. 527 (Bankr. D. Del. 2009) ..................................................................28

*Firefighters' Pension Sys. of City of Kansas City v. Found. Bldg. Materials, Inc.*,
   318 A.3d 1105 (Del. Ch. 2024)...........................................................................................3

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)..............................................................................................26

*Frederick Hsu Living Tr. v. ODN Holding Corp.*,
   2017 WL 1437308 (Del. Ch. Apr. 14, 2017) .....................................................................37

*In re Fruehauf Trailer Corp.*,
   250 B.R. 168 (D. Del. 2000)....................................................................................17, 22, 24

*In re FTX Trading Ltd.*,
   2024 WL 4562675 (Bankr. D. Del. Oct. 23, 2024) ...........................................................32

*Fulton Fin. Advisors, Nat. Ass'n v. NatCity Invs., Inc.*,
   2013 WL 5635977 (E.D. Pa. Oct. 15, 2013)......................................................................25

*Gavin v. Club Holdings, LLC*,
   2016 WL 1298964 (D. Del. Mar. 31, 2016) ......................................................................19

*Glazer v. Zapata Corp.*,
   658 A.2d 176 (Del. Ch. 1993)............................................................................................35

*In re Goldman Sachs Grp., Inc. S'holder Litig.*,
   2011 WL 4826104 (Del. Ch. Oct. 12, 2011) .......................................................................8

*In re Green Field Energy Servs., Inc.*,
   594 B.R. 239 (Bankr. D. Del. 2018) ..................................................................................36

*Hartsel v. Vanguard Grp. Inc.*,
   2015 WL 331434 (D. Del. Jan. 26, 2015)..........................................................................38

*Henry v. Bank of Am.*,
   147 A.D.3d 599 (2017) ......................................................................................................18

*Hunt Optics & Imaging, Inc. v. Greene*,
   2010 WL 3303792 (W.D. Pa. Aug. 19, 2010) ...................................................................27

*In re Innovation Fuels, Inc.*,
   No. 11-12911 (DHS), 2013 WL 3835827 (Bankr. D.N.J. July 22, 2013)................25, 26, 29

*In re Island View Crossing II, L.P.*,
   604 B.R. 181 (Bankr. E.D. Pa. 2019) ................................................................................29

*In re Jevic Holding Corp.*,
   2011 WL 4345204 (Bankr. D. Del. Sept. 15, 2011) ..........................................................26

*Jurista v. Amerinox Processing, Inc.*,
  492 B.R. 707 (D.N.J. 2013) ..................................................................................33, 34

*JZS Madison, LLC v. Kramer Levin Naftalis & Frankel, LLP*,
  2024 WL 4112555 (N.J. Super. Ct. App. Div. Sept. 9, 2024) ...........................................13, 14

*Lautieri v. Bae*,
  2003 WL 22454645 (Mass. Super. Oct. 29, 2003) ....................................................23

*Lebahn v. Owens*,
  813 F.3d 1300 (10th Cir. 2016) ...........................................................................27

*In re Leff*,
  631 B.R. 106 (Bankr. E.D.N.Y. 2021)......................................................................26

*Loughlin v. Harada*,
  2022 WL 610672 (D. Del. Feb. 28, 2022) ...............................................................5

*In re Mall at the Galaxy*,
  2023 WL 2966785 (D.N.J. Apr. 17, 2023) ...............................................................30

*Marcus v. Rapid Advance, LLC*,
  2013 WL 2458347 (E.D. Pa. June 7, 2013) ...............................................................19

*Marshal T. Simpson Tr. v. Invicta Networks, Inc.*,
  2017 WL 4684325 (D. Del. Oct. 18, 2017) ...............................................................16

*McCarrell v. Hoffmann La Roche, Inc.*,
  227 N.J. 569 (2017) ........................................................................................13

*In re McDonald's Corp. S'holder Derivative Litig.*,
  291 A.3d 652 (Del. Ch. 2023)......................................................................3, 5, 37

*McGowan v. Empress Ent., Inc.*,
  791 A.2d 1 (Del. Ch. 2000)................................................................................16

*McLane, Graf, Raulerson & Middleton, P.C. v. Grady*,
  2014 WL 2504540 (Mass. Super. Apr. 1, 2014)....................................................34

*In re Millennium Lab Holdings II, LLC*,
  2019 WL 1005657 (Bankr. D. Del. Feb. 28, 2019) ...............................................31

*Mills Acquisition Co. v. Macmillan, Inc.*,
  559 A.2d 1261 (Del. 1989) ...............................................................................7

*In re ML-Lee Acquisition Fund II, L.P. & ML-Lee Acquisition Fund (Ret. Accts.)
II, L.P. Sec. Litig.*,
  848 F. Supp. 527 (D. Del. 1994)...........................................................................15

*Moody v. Sec. Pac. Bus. Credit, Inc.*,
   971 F.2d 1056 (3d Cir. 1992) ................................................................24

*Nemec v. Shrader*,
   991 A.2d 1120 (Del. 2010) ...................................................................33

*In re Oakwood Homes Corp.*,
   340 B.R. 510 (Bankr. D. Del. 2006) ................................................26, 28

*Off. Comm. of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R.*
   *Grace & Co.)*,
   281 B.R. 852 (Bankr. D. Del. 2002) .....................................................26

*Off. Comm. of Unsecured Creditors v. Clark (In re Nat'l Forge Co.)*,
   304 B.R. 214 (Bankr. W.D. Pa. 2004) ..................................................11

*In re PennySaver USA Publ'g, LLC*,
   587 B.R. 445 (Bankr. D. Del. 2018) .....................................................24

*Polk 33 Lending, LLC v. Schwartz*,
   555 F. Supp. 3d 38 (D. Del. 2021) ........................................................35

*Portillo v. Nat'l Freight, Inc.*,
   323 F. Supp. 3d 646 (D.N.J. 2018) .......................................................23

*Richie v. Hillstone Env't Partners, LLC*,
   2019 WL 2995178 (D. Del. July 9, 2019) .............................................25

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
   311 F.3d 198 (3d Cir. 2002) .................................................................25

*In re Row NYC, LLC*,
   2024 WL 61915 (Bankr. S.D.N.Y. Jan. 4, 2024) ..................................32

*Schmidt v. Skolas*,
   706 F. App'x 68 (3d Cir. 2017) ..............................................................4

*Segway Inc. v. Cai*,
   2023 WL 8643017 (Del. Ch. Dec. 14, 2023) ........................................10

*Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*,
   872 F.2d 36 (3d Cir. 1989) ...................................................................20

*Smith v. Donald L. Mattia, Inc.*,
   2012 WL 252271 (Del. Ch. Jan. 13, 2012) ...........................................16

*In re Sols. Liquidation LLC*,
   608 B.R. 384 (Bankr. D. Del. 2019) .......................................................4

*South v. Baker*,
   62 A.3d 1 (Del. Ch. 2012)................................................................................8

*In re Space Case*,
   2024 WL 1628440 (Bankr. D. Del. Apr. 15, 2024) ......................................5

*In re Sportco Holdings, Inc.*,
   2021 WL 4823513 (Bankr. D. Del. Oct. 14, 2021) .....................................4, 35, 37

*In re SuperMedia, Inc.*,
   2013 WL 5567838 (Bankr. D. Del. Oct. 9, 2013) .................................20

*SV Inv. Partners LLC v. ThoughtWorks, Inc.*,
   7 A.3d 973 (Del. Ch. 2010)............................................................................38

*In re Thomas Lawrence Reeves Irrevocable Tr. Under Agreement Dated Feb. 26,*
*1997*,
   2015 WL 1947360 (Del. Ch. Apr. 29, 2015) .........................................18

*TL of Fla., Inc. v. Terex Corp.*,
   54 F. Supp. 3d 320 (D. Del. 2014) ............................................................14

*Traisman v. Khmelnitsky*,
   2021 WL 2847751 (D.N.J. June 1, 2020) ................................................29

*In re Trib. Co. Fraudulent Conv. Litig.*,
   2017 WL 82391 (S.D.N.Y. Jan. 6, 2017) .........................................25, 32

*In re Troll Commc'ns, LLC*,
   385 B.R. 110 (Bankr. D. Del. 2008) ..........................................................3

*In re Tronox Inc.*,
   429 B.R. 73 (Bankr. S.D.N.Y. 2010)........................................................28

*In re Tyson Foods, Inc.*,
   919 A.2d 563 (Del. Ch. 2007)...................................................................15

*United States v. Chubb Inst.*,
   2010 WL 1076228 (D.N.J. Mar. 22, 2010)...............................................25

*In re W.J. Bradley Mortg. Cap., LLC*,
   598 B.R. 150 (Bankr. D. Del. 2019) ..........................................................4

*White v. Panic*,
   783 A.2d 543 (Del. 2001) .........................................................................35

*In re W.R. Grace & Co.*,
   626 B.R. 217 (Bankr. D. Del. 2021) ...................................................11, 12

*In re Xura, Inc., S'holder Litig.*,
 2018 WL 6498677 (Del. Ch. Dec. 10, 2018)............................................................................8

**Statutes**

6 Del. C. §§ 1301-1311..................................................................................................................27

M.G.L. c. 109A, §§ 1-12................................................................................................................27

N.J.S.A. §§ 25:2-20-25:2-36...................................................................................................27, 29

N.Y. Debt. & Cred. Law §§ 270-281.............................................................................................27

## PRELIMINARY STATEMENT

Plaintiff spends the majority of its 114-page omnibus Opposition Brief rehashing and improperly attempting to amend its deficient Complaint.  But voluminous filings cannot mask the weakness of Plaintiff's allegations.  Despite unfettered access to millions of pages of Thrasio documents for many months, and the largely exculpatory findings of an exhaustive investigation by Thrasio's Disinterested Directors,[1] Plaintiff has pled only hindsight-driven allegations that second-guess business decisions approved unanimously by an independent and informed Board, a majority of which was comprised of sophisticated, significant investors in Thrasio.  Throughout the Opposition Brief, Plaintiff concedes that its liability theory against Defendants is based on its own *post-hoc* opinion of what it believes Thrasio <u>ought</u> to have done, *e.g.*, "the Company's cash used to fund the Tender Offer <u>should have been invested</u> into a struggling business," and "excess" inventory purchased during the Covid-19 pandemic "<u>should have been avoided</u> by implementing proper controls."[2]  Not only does Plaintiff improperly substitute its current judgment for the reasoned and contemporaneous judgment of Thrasio's Board, Plaintiff also rejects the conclusions of Thrasio's own Disinterested Directors, who investigated and rejected many of the claims Plaintiff now asserts.  Courts routinely reject such textbook second-guessing, particularly when challenged decisions are approved (here, usually unanimously) by a fully informed and sophisticated board of directors.

To avoid this result, Plaintiff's Opposition Brief frequently misstates the law or simply cites none.  For example, Plaintiff:

---

[1] Capitalized terms not defined herein are defined in the COR Defendants' opening brief (Dkt. 67) ("Opening Brief").

[2] *See* Plaintiff's Omnibus Opposition to Defendants' Motion to Dismiss (Dkt. 118) ("Opposition Brief" or "Opp.") at 7 (emphasis added).

1

- Wrongly asserts that it need not plead facts to rebut the presumption of the business judgment rule at the pleading stage;

- Wrongly argues (ignoring controlling law to the contrary) that decisions over normal business operations (such as over inventory control) can be the subject of an oversight claim;

- Wrongly argues that the conclusions of the Disinterested Directors do not estop many of its claims;

- Wrongly argues that, estoppel aside, the Disinterested Directors' conclusions are not entitled to any deference because they were not "final," notwithstanding that Thrasio filed the Disinterested Directors' Report with this Court and relied upon it to obtain the broad release it received;

- Wrongly claims that inapplicable equitable tolling doctrines spare its claims from the statute of limitations;

- Wrongly argues that the Cashman Separation Agreement is an executory contract voided by the Confirmation Plan;

- Wrongly argues that the claims asserted against Cashman are not released by the Cashman Separation Agreement because the Board did not know of the claims, even though the allegations in the Complaint and facts subject to judicial notice flatly refute that argument;

- Wrongly argues it need not meet the heightened pleading standard for its fraudulent conveyance claims where it has had unfettered access to Thrasio's documents for many months;

- Wrongly asserts it need not identify under which State's law it brings its fraudulent conveyance claims by relying on a single case decided prior to *Twombly* and *Iqbal*; and

- Wrongly contends that simply reciting elements is sufficient to plead fraudulent conveyance, waste, and Section 160 claims, especially when the Complaint and incorporated facts flatly contradict those claims.

For these and other reasons stated herein and in briefs of certain other of the defendants,

the claims against the COR Defendants fail as a matter of law and should be dismissed.[3]

---

[3] In addition to the foregoing, the COR Defendants adopt and incorporate by reference the arguments made in Points I (group pleading), II.A (Sec. 546 safe harbor), IV.A (failure to state claim for usurpation of corporate opportunity) and IV.B (failure to state claim for misuse of confidential information) of the reply memorandum filed by Defendants Silberstein and Everything's Coming Up Millhouse LLC.

## ARGUMENT

### I.    THE COMPLAINT DOES NOT PLEAD SUFFICIENT FACTS TO OVERCOME THE BUSINESS JUDGMENT RULE

#### A.    The Court Can And Should Apply The Business Judgment Rule Now

In considering the sufficiency of the Complaint, the Court can and should apply the default standard of review for fiduciary duty claims under Delaware law, the business judgment rule. The business judgment rule is a judicial presumption that actions taken by disinterested and informed directors are reasonable and in the best interests of the company and will not be second guessed by the courts.[4] In the Opening Brief, the COR Defendants established that all of the transactions challenged by Plaintiff in the Complaint were approved unanimously by Thrasio's Board, the majority of which was comprised of outside, disinterested directors representing the Company's largest investors. The Complaint contains no allegation that any of these directors acted improperly. Consequently, as a matter of law, the COR Defendants cannot be held liable for breach of fiduciary duty in connection with those transactions.[5]

In its Opposition Brief, Plaintiff incorrectly attempts to recast the legal presumption afforded by the business judgment rule as "an affirmative defense" to avoid the clear result that application of the rule would have on its claims.[6] Plaintiff relies almost entirely on *In re W.J. Bradley Mortg. Cap., LLC* for the proposition that the business judgment rule is an affirmative

---

[4] *In re Troll Commc'ns, LLC*, 385 B.R. 110, 118 (Bankr. D. Del. 2008) (recognizing that the business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company," and thus under the rule, "the judgment of a properly functioning board will not be second guessed"). *See Firefighters' Pension Sys. of City of Kansas City v. Found. Bldg. Materials, Inc.*, 318 A.3d 1105, 1139 (Del. Ch. 2024) ("Only when a decision lacks any rationally conceivable basis will a court infer bad faith and a breach of duty.").

[5] *In re McDonald's Corp. S'holder Derivative Litig.*, 291 A.3d 652, 686 (Del. Ch. 2023) ("At the pleading stage, to change the standard of review from the business judgment rule to entire fairness, the complaint must allege facts supporting a reasonable inference that there were not enough sufficiently informed, disinterested individuals who acted in good faith when taking the challenged actions to comprise a board majority.") (emphasis added).

[6] Opp. at 31.

defense and should not be considered on a motion to dismiss.[7]  But *Bradley* recognized that the business judgment rule is a "powerful <u>presumption</u> in favor of actions taken by the directors" that "will not be overturned by the courts unless there is no rational business purpose." [8] Notwithstanding the use of the business judgment rule as an affirmative defense by defendants in that case, *Bradley*'s recognition that there is a presumption in favor of directors, and that <u>Plaintiff</u> must overcome that presumption, is consistent with decisions by other courts in this circuit that have required plaintiffs to plead facts sufficient to overcome the business judgment rule in order to plead breach of fiduciary duty under Delaware law.

In *Schmidt v. Skolas*, for example, the Third Circuit affirmed the lower court's dismissal of the plaintiff's breach of fiduciary duty claim against director and officer defendants, applying the business judgment rule.[9]  In *In re Sols. Liquidation LLC*, the court held, "[o]n a motion to dismiss, the business judgment rule dictates that a plaintiff must allege facts that raise a reasonable inference that the board of directors either breached its duty of loyalty or duty of care with regard to the transaction at issue."[10]  Similarly, in *In re Space Case*, the court recognized correctly that "the Third Circuit Court of Appeals has determined that <u>a complaint challenging a business decision must plead around the business judgment rule by alleging facts that rebut the presumption</u>."[11]  The court explained: "[A] plaintiff may overcome the presumption that directors

---

[7] *Id.* at 31-32.

[8] *In re W.J. Bradley Mortg. Cap., LLC*, 598 B.R. 150, 163 (Bankr. D. Del. 2019) (emphasis added).

[9] *Schmidt v. Skolas*, 706 F. App'x 68, 74 (3d Cir. 2017) (summary order) ("The District Court correctly dismissed Schmidt's claim for breach of fiduciary duty against the D&O Defendants.  The business judgment rule applies, and the directors' actions are presumptively valid.").

[10] *In re Sols. Liquidation LLC*, 608 B.R. 384, 402 (Bankr. D. Del. 2019).  *Accord In re Sportco Holdings, Inc.*, 2021 WL 4823513, at *6 (Bankr. D. Del. Oct. 14, 2021) ("When alleging breach of fiduciary duties, to survive a motion to dismiss under Rule 12(b)(6), the Trustee must plead around the business judgment rule.  When assessing claims for breach of fiduciary duties, the Court bears in mind that a director does not become a guarantor of success by choosing to continue a firm's operations when it may be insolvent.").

[11] *In re Space Case*, 2024 WL 1628440, at *6 (Bankr. D. Del. Apr. 15, 2024) (emphasis added).

and officers acted on an informed basis by establishing that a decision was the product of an irrational process or that directors failed to establish an information and reporting system reasonably designed to provide the senior management and the board with information regarding the corporation's legal compliance and business performance, resulting in liability."[12]  And, indeed, in deciding a motion for reconsideration in *Loughlin v. Harada*, the court held that the defendants waived their right to raise the business judgment rule after failing to address it in their motion to dismiss.[13]  Therefore, if the COR Defendants had not raised it at this stage of the litigation, the business judgment rule would be unavailable to them at a later stage.  Plaintiff plainly bears the burden of pleading around the business judgment rule.

## B.  Plaintiff Fails Sufficiently To Allege Fraud On The Board

Having failed to dodge its pleading burden, Plaintiff also has failed to meet it.  As the COR Defendants' Opening Brief established, to challenge decisions made and approved by the full Thrasio Board, Plaintiff must allege that a majority of the Board was impaired.[14]  Because the majority of the Board received liability releases in the Plan, the Complaint points only at the two Board members who did not receive releases—Messrs. Cashman and Silberstein—to allege that the full Board's decisions were improper.  Recognizing the infirmity of its fiduciary duty allegations, Plaintiff attempts to side-step its pleading obligations by asserting an unpled "fraud on

---

[12] *Id.*

[13] *Loughlin v. Harada*, 2022 WL 610672, at *2 (D. Del. Feb. 28, 2022) ("In connection with the pending motion for reconsideration, Defendants argue, for the first time, that the 'allegations of Defendants' participation in a 'retaliatory scheme' fail[] to rebut the business judgment rule.'  This argument does not form an appropriate basis for reconsideration because Defendants <u>could have made this argument on their motion to dismiss but failed to do so</u>.") (emphasis added).

[14] *In re McDonald's*, 291 A.3d at 686.

the board" theory in its Opposition Brief.[15]  But "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."[16]

Plaintiff points to only two allegations regarding the Secondary Sales to support its "fraud on the board" theory.[17]  Neither suggests that the remaining directors were conflicted or uninformed about any challenged transaction, including the Secondary Sales.[18]  Nor do they support Plaintiff's theory that an informational vacuum existed such that the Thrasio Board was defrauded into approving these transactions.  Rather, the Board approved the Secondary Sales as a valid exercise of its business judgment because it recognized the benefits of the transactions including, among other things, "diversify[ing] the community of equity holders."[19]

Like its Complaint, Plaintiff's Opposition Brief identifies no allegations of fraud on the Board as to the other purported bases for its fiduciary duty claims—the Tender Offer or the Silberstein Agreement.  With respect to the Tender Offer, the Complaint only offers the conclusory allegation that the "[B]oard was not presented with any proper calculation . . . ," but does not allege

---

[15] Opp. at 34-36.

[16] *Berg v. C&H Fin. Servs., Inc.*, 2024 WL 1255504, at *2 (D. Del. Mar. 25, 2024) (quoting *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("A plaintiff may not supplement its pleading with allegations made only in subsequent briefs or affidavits . . . . [I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")).

[17] Opp. at 34-35.

[18] The first allegation concerns Silberstein's alleged "insistence on a price that was well beyond what the SPAC investor could bear." Compl. ¶ 75.  Plaintiff fails to allege how management's alleged negotiations to extract more value for investors possibly could constitute a breach of a fiduciary duty or fraud on the Board.  The second allegation, as explained in the Opening Brief, is also undercut by the Complaint itself.  The Complaint alleges that CFO Wafford tendered his resignation to Silberstein and Silberstein failed to inform the Board (which included Cashman). *Id.* ¶ 76.  The next paragraph then names Cashman as someone who "withheld" a fact the Complaint just previously alleged was known only to Silberstein.  *See* Opening Br. at 25 & n.97.  In any event, this allegation fails to rebut the presumption that even the Secondary Sales were approved through a reasonable, independent process.

[19] Disinterested Directors' Report ¶ 38.  For the same reason, Plaintiff has not plausibly alleged that the COR Defendants usurped corporate opportunity by engaging in the Secondary Sales.  These transactions benefitted Thrasio as a whole.  The Opposition Brief bends over backwards trying to bolster the Complaint's cursory allegations concerning this issue.  But Plaintiff's theory rests on the flawed premise that any stock sales by insiders for a company whose value subsequently declined must have constituted a usurpation of corporate opportunity.  The theory ignores the contemporaneous Board approvals, the after-the-fact recognition by the Disinterested Directors of the benefits of the Secondary Sales, and the significant equity raises that Thrasio continued to conduct even <u>after</u> the Secondary Sales.

facts supporting fraud, whether any Defendant had access to different calculations, or other misconduct by the COR Defendants or other defendants.[20]

With respect to the Silberstein Separation Agreement, the Complaint not only fails to allege fraud on the Board, but it alleges actual Board knowledge of the facts underlying Plaintiff's claims. Specifically, the Complaint alleges that by July 2021, "the relationship between Silberstein and Thrasio's major equity investors with seats on the Board deteriorated" and by August 2021, "the Board determined that Silberstein could no longer stay at the Company."[21]  Notwithstanding those allegations, Plaintiff inexplicably asserts, in a conclusory manner, that in September 2021 "Cashman, as a member of the Board, approved the Silberstein Separation Agreement, despite knowing that the Company had valuable claims against Silberstein."[22]  Plaintiff does not, and cannot, explain how a Board that forced out Silberstein could have been defrauded by Cashman through some unnamed knowledge of purportedly "valuable claims" against Silberstein.

In an attempt to prop up its new "fraud on the board" contention, Plaintiff relies on a handful of inapposite cases, where the plaintiffs actually alleged facts giving rise to the theory.  In *Mills Acquisition Co.*, the fraud on the board stemmed from the defendant steering the board's sales process toward its favored private equity buyer <u>at the stockholders' expense</u> and then concealing that information from the board.[23]  And in *Xura*, the complaint alleged that a CEO met privately and otherwise communicated with representatives of a private equity firm to discuss the terms of the firm's buyout proposal in an effort to save his own job on the post-transaction

---

[20] Compl. ¶¶ 59-64.  Further, the Disinterested Directors confirm in their report that Thrasio netted $112 million in cash, even when taking into account the Tender Offer, and Thrasio's directors likely held a good faith belief that the Company had a surplus or other funds with which to effectuate the Tender Offer.  Disinterested Directors' Report ¶ 52.

[21] Compl. ¶¶ 120-21.

[22] *Id.* ¶ 244.

[23] *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1264-79 (Del. 1989).

management team.[24]   There, the CEO "favor[ed one bidder] over other potential bidders, [fed] information to [his preferred bidder] that would fortify its bid[,] and . . . negotiate[d] quickly for his Transaction-related payout."[25]   There are simply no facts here that resemble those clear allegations of conflicted management, active concealment of transaction details from the Board, or surreptitious actions to depress the value received in a transaction in order to benefit a defendant. Therefore, the Court should reject Plaintiff's new theory of fraud on the Board and apply the default business judgment rule to decisions made by Thrasio's Board.

## C.    Plaintiff Does Not State An Oversight Claim

Plaintiff's Opposition Brief suffers from the same misunderstanding of Delaware law that characterizes the oversight allegations in the Complaint: *Caremark* claims are not about directors' and officers' assumption of business risk, even if that risk is "ill-advised or even bone-headed."[26] Instead, *Caremark* claims arise only where there is an abject failure to prevent or remedy corporate conduct that violates positive law, not a failure to create or apply internal controls regarding normal business risk, like inventory controls and internal financial reporting.[27]

The primary case upon which Plaintiff relies to save its *Caremark* claims confirms their limited reach, as it involved "widespread illegal misconduct at the direction and under the control of the Chairman of [the] board of directors and Chief Executive Officer" and an executive team

---

[24] *In re Xura, Inc., S'holder Litig.*, 2018 WL 6498677, at *2 (Del. Ch. Dec. 10, 2018).

[25] *Id.* at *13.

[26] *In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, at *24 n.217 (Del. Ch. Oct. 12, 2011).  *See also In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 131 (Del. Ch. 2009) ("Oversight duties under Delaware law are not designed to subject directors, even expert directors, to <u>personal liability</u> for failure to predict the future and to properly evaluate business risk.") (emphasis added).

[27] *See South v. Baker*, 62 A.3d 1, 6 (Del. Ch. 2012) (noting that fiduciaries can be held liable under *Caremark* "for knowingly causing or consciously permitting the corporation to violate positive law, or for failing utterly to attempt to establish a reporting system or other oversight mechanism to monitor the corporation's <u>legal compliance</u>.") (emphasis added); *In re Citigroup*, 964 A.2d at 131 ("To impose oversight liability on directors for failure to monitor 'excessive' risk would involve courts in conducting hindsight evaluations of decisions at the heart of the business judgment of directors.").

that amounted to a "criminal organization."[28]  Compare that with the Complaint's allegations of "dysfunctional financial and inventory controls" in support of its oversight claims.[29]  Simply put, Plaintiff's allegations of mismanagement do not amount to a *Caremark* claim as a matter of law.

Plaintiff's argument that various inventory control issues caused Thrasio to amass "massive amounts of excess inventory" similarly fails to support a *Caremark* claim.[30]  Like the Complaint, which alleges that Thrasio had "three different methods to calculate the value of its inventory," the Opposition Brief concedes that Thrasio was making significant efforts toward its controls, including by "relying on third-party platforms like Amazon and Shopify, to track inventory."[31] Even Thrasio's Disinterested Directors recognized that, "[l]ike a number of other companies, Thrasio over-purchased inventory of certain products to meet outsized demand driven by the COVID-19 pandemic.[32]  They did so because "Thrasio's management weighed the impact of purchasing excess inventory" or "running out of stock and being penalized in the rankings of Amazon's search algorithm" and decided the former was worth the risk.[33]  Such efforts to monitor and manage an extremely difficult business environment are not only an improper subject of a *Caremark* claim, they also fail the high bar of pleading an abject failure to even attempt to institute controls that is required for an oversight claim.[34]  Thus, the Court should dismiss Count VII and Count XI.

---

[28] *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 774, 799 (Del. Ch. 2009).

[29] Compl. ¶ 88.

[30] *Id.* ¶ 58.

[31] *Id.* ¶ 57; Opp. at 66.

[32] Disinterested Directors' Rep. ¶ 33.

[33] *Id.* ¶ 34.

[34] *See In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996) ("[O]nly a sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system exists—will establish the lack of good faith that is a necessary condition to liability.").

**D.    Decisions By Both Directors And Officers Are Owed Deference Consistent With The Business Judgment Rule**

To support its argument that the business judgment rule does not apply to officers, Plaintiff erroneously cites two decisions by federal courts in California interpreting a California statute.  As the COR Defendants explained in their Opening Brief, while Delaware courts have not explicitly held that the business judgment rule applies to officers, they have in practice applied the same substantive analysis of fiduciary duty claims against both directors and officers.  In *Segway*, the Delaware Court of Chancery held that the same standards that apply to fiduciary duty claims against a director also apply against an officer: "Segway's claim rests on the misimpression that an oversight claim pursued against an officer is easier to plead than one against a director. Irrespective of the defendant's corporate title, a *Caremark* claim is 'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'"[35]  Invoking language similar to that of the business judgment rule, the court held, "[o]fficers' management of day-to-day matters does not make them guarantors of negative outcomes from imperfect business decisions."[36]  This Court should follow the Delaware Court of Chancery's reasoning in *Segway* to evaluate claims against the Defendant officers, rather than inapplicable California cases.

**II.    PLAINTIFF CANNOT NOW ASSERT ALLEGATIONS INCONSISTENT WITH REPRESENTATIONS THRASIO MADE EARLIER IN THE BANKRUPTCY PROCEEDINGS**

In the Opening Brief, the COR Defendants established that numerous claims asserted in the Complaint were debunked categorically in the Disinterested Directors' Report.  Unable to dispute this inconvenient truth, Plaintiff seeks to hide behind boilerplate language contained in the

---

[35] *Segway Inc. v. Cai*, 2023 WL 8643017, at *5 (Del. Ch. Dec. 14, 2023) (quoting *In re Caremark*, 698 A.2d at 967).

[36] *Id.*

10

Confirmation Order and thereby require the parties to litigate claims that have already been thoroughly investigated by independent, outside directors and counsel, and deemed not colorable.

Plaintiff cites to a single case, *In re Nat'l Forge Co.*, which does not bear that weight Plaintiff puts on it.[37]  That court did not hold that language in a plan restricting the use of estoppel in adversary proceedings categorically bars judicial estoppel or *res judicata*.  Instead, the court analyzed the specific facts of the case to deny judicial estoppel because the cause of action asserted "was contemplated for a significant duration of the case," the creditors' committee that brought the case was charged with "investigating the legitimacy of the Banks' claims," and the plan "made it crystal clear that all transactions with the Debtor would be subject to scrutiny and potential action."[38]  Not one of those things is present in this case.  Here, the Disinterested Directors were charged with investigating which of the Debtors' claims were "colorable" and found many asserted in the Complaint did not even reach that low bar.  The Disinterested Directors' Report served as justification for the broad release the Debtor received from this Court.  Unlike *In re Nat'l Forge Co.*, this case presents every element of judicial estoppel, particularly as Plaintiff "has reversed positions on several critical issues"[39] and the Bankruptcy Court has "ample evidence in the record from which an inference of deliberate manipulation could be drawn."[40]

Moreover, "a bankruptcy court may take judicial notice of its own docket entries, its own records, and contents of court records from other courts in related matters."[41]  Although the Court must take the allegations in the Complaint as true in deciding a motion to dismiss, when "the

---

[37] Opp. at 16 (citing *Off. Comm. of Unsecured Creditors v. Clark (In re Nat'l Forge Co.)*, 304 B.R. 214, 223 (Bankr. W.D. Pa. 2004)).

[38] *In re Nat'l Forge Co.*, 304 B.R. at 222-23.

[39] *In re Dex Media, Inc.*, 595 B.R. 19, 39 (D. Del. 2018).

[40] *Id.* at 39 (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 363 (3d Cir. 1996)).

[41] *In re W.R. Grace & Co.*, 626 B.R. 217, 236 n.13 (Bankr. D. Del. 2021) (collecting cases).

allegations of the Complaint are contradicted by documents incorporated therein . . . the document controls and the Court need not accept as true the allegations of the Complaint."[42]  Here, the Complaint incorporates by reference the bankruptcy proceedings before this Court, including the Disinterested Directors' Report filed by Thrasio, which contains findings directly contradicting myriad allegations in the Complaint.[43]  Standing in Thrasio's shoes, Plaintiff now asserts causes of action that its own Disinterested Directors explicitly concluded were unworthy of pursuit.[44]

Regardless of whether Plaintiff is estopped from bringing its claims based on Thrasio's prior, conflicting representations, the Complaint is still subject to ordinary Rule 8 pleading standards and this Court's analysis under Rule 12(b)(6).  The Court is not required to accept the allegations in Plaintiff's Complaint as true where, as here, the Complaint flatly contradicts the Disinterested Directors Report on which the Plan is predicated.[45]

What is more, in these bankruptcy proceedings, Thrasio cynically used the findings of the Disinterested Directors' Report to obtain something of great value: a confirmed Plan and accompanying releases for the Company's preferred directors and officers.  In its Opposition Brief, Plaintiff argues that to apply the business judgment rule, there must have been a "conscious decision by directors to act or refrain from acting."[46]  Thrasio certainly made a conscious decision to act upon the Report's findings when it submitted it to the Court as a basis for confirming the Plan and securing exculpations for the Released Parties, including several members of the Thrasio Board.  Plaintiff is not entitled to ignore those same findings from which it previously benefited.

---

[42] *In re Aphton Corp.*, 423 B.R. 76, 91 (Bankr. D. Del. 2010).

[43] *E.g.*, *In re W.R. Grace & Co.*, 626 B.R. at 236 n.13 ("[A] bankruptcy court may take judicial notice of its own docket entries, its own records, and contents of court records from other courts in related matters.").

[44] Opening Br. at 26-30.

[45] *In re Aphton Corp.*, 423 B.R. at 91.

[46] Opp. at 36 (quoting *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993)).

## III.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM AND CERTAIN OF ITS BREACH OF FIDUCIARY DUTY CLAIMS ARE TIME-BARRED

### A.    Plaintiff's Unjust Enrichment Claim Is Time-Barred Under Delaware Law

The Opening Brief established that Plaintiff's unjust enrichment claim is barred under Delaware's three-year statute of limitations.[47]  Plaintiff's unjust enrichment claim is based entirely on the internal affairs of Thrasio—namely the Tender Offer, to which Plaintiff has already conceded Delaware law applies.[48]  When an unjust enrichment claim implicates a company's internal affairs, the law of the company's state of incorporation applies.[49]  Because Thrasio is incorporated in Delaware, Delaware's three-year statute of limitations applies to bar Plaintiff's unjust enrichment claim.

Plaintiff mistakenly asserts that New Jersey's or Massachusetts' statute of limitations, both six years, applies to its unjust enrichment claim.[50]  Plaintiff's citation to *McCarrell* to support the application of New Jersey law is inapposite.  There, New Jersey clearly had a substantial interest in regulating a New Jersey-incorporated drug manufacturer operating in New Jersey to prevent it from developing, making, and distributing unsafe products.[51]  Here, Thrasio is a Delaware corporation that neither did business in New Jersey nor was it incorporated there.

Thrasio's headquarters in Massachusetts does not alter the analysis, as "[m]erely having a principal place of business in the state is not sufficient to establish a substantial interest."[52]  For

---

[47] Opening Br. at 55-56.

[48] Opp. at 23.

[49] *Emerson Radio Corp. v. Fok Hei Yu*, 2021 WL 1186824, at *4 (D.N.J. Mar. 30, 2021) (applying Delaware law because the unjust enrichment claim implicated the Delaware corporation's internal affairs).

[50] Opp. at 28-31.

[51] *McCarrell v. Hoffmann La Roche, Inc.*, 227 N.J. 569, 597-98 (2017).

[52] *JZS Madison, LLC v. Kramer Levin Naftalis & Frankel, LLP*, 2024 WL 4112555, at *3 (N.J. Super. Ct. App. Div. Sept. 9, 2024).

example, in *JZS Madison, LLC*, the court declined to find New Jersey had a significant interest despite plaintiff's principal place of business there because the defendant was a New York law firm and the operative facts were centered in New York.[53]

The Court should apply Delaware law to the unjust enrichment claim and find that it is time-barred.

### B.     Certain of Plaintiff's Breach Of Fiduciary Duty Claims Also Are Time-Barred Under Delaware Law, And No Tolling Doctrines Are Applicable Here

Plaintiff concedes that Delaware law applies to its breach of fiduciary duty claims.[54]  As established in the Opening Brief, Counts I (Tender Offer), VII (inventory controls), and IX and XI (2020 Secondary Sales) are therefore barred by Delaware's three-year statute of limitations.[55] Plaintiff grasps for a lifeline by invoking various doctrines to bring its claims after the statute of limitations has elapsed.  None applies.

#### 1.     None Of The Relevant Claims Involves An Inherently Unknowable Injury

Contrary to Plaintiff's assertion, Thrasio's finances were not "inherently unknowable" to its own Board.  A "plaintiff asserting a tolling exception must plead facts supporting the applicability of th[ose] exception[s]."[56]  Under the "discovery rule", the statute of limitations is tolled when (1) the injury is "inherently unknowable," and (2) "the claimant is blamelessly ignorant of the wrongful act and the injury complained of."[57]  Plaintiff must plead facts that show

---

[53] *Id.*

[54] Opp. at 23.

[55] Opening Br. at 33-35.

[56] *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 525 (Del. Ch. 2005).

[57] *TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 328 (D. Del. 2014)

it was "practically impossible for [it] to discover the existence of a cause of action."[58]  The facts underlying the claim must be "so hidden that a reasonable plaintiff could not discover them."[59]  The limitations period then would be tolled until such time that "persons of ordinary intelligence and prudence would have facts sufficient to put them on inquiry which, if pursued, would lead to the discovery of the injury."[60]  The Court evaluates a plaintiff's objective awareness by examining "whether there were 'red flags' that clearly and unmistakably would have led a prudent person of ordinary intelligence to inquire further and by determining if [a] plaintiff gained 'possession of facts sufficient to make him suspicious, or that ought to make him suspicious.'"[61]

Plaintiff cites only one case in support of its argument—*In re ML-Lee Acquisition Fund II, L.P.*—which is inapposite here.[62]  In that case, two retail investors brought claims against defendant mutual funds and others, alleging that they were misled by a "materially false Prospectus" that stated investment guidelines would be followed and contemporaneous co-investments made.[63]  The court held that plaintiffs pled sufficient facts that their injury was unknowable until the funds' annual report was disclosed.  There, however, plaintiffs were outside investors purchasing units from the defendant funds.  Outside investors have virtually no insight into a company's finances and operations apart from public filings.

Far from being a stranger or outsider to the internal workings of the Company, Plaintiff stands in the shoes of the Company itself in seeking to bring claims alleging injury to Thrasio.

---

[58] *In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007).

[59] *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *5 (Del. Ch. July 17, 1998).

[60] *Id.* at *7.

[61] *ECB USA, Inc. v. Savencia, S.A.*, 2025 WL 417738, at *22 (D. Del. Feb. 6, 2025).

[62] Opp. at 24.

[63] *In re ML-Lee Acquisition Fund II, L.P. & ML-Lee Acquisition Fund (Ret. Accts.) II, L.P. Sec. Litig.*, 848 F. Supp. 527, 536 (D. Del. 1994).

The Trust, and the Thrasio Board and management before it, had total access to Company records, both confidential and public, as well as to all employees, systems, auditors, and vendors sufficient to put it on notice of any of the facts or injuries alleged in the Complaint, including a purported $800 million in excess inventory or an alleged lack of controls.

Plaintiff fails to allege how Thrasio's Board possibly could have been objectively unaware of facts giving rise to the claim. A company's directors are "entitled to virtually unfettered access to the books and records of the corporation."[64] Courts have rejected invocation of tolling doctrines under far less compelling facts for plaintiffs. In *Marshal T. Simpson Tr. v. Invicta Networks, Inc.*, the court rejected the application of tolling doctrines where Delaware General Corporation Law Section 220 afforded plaintiffs rights to demand certain company books and records that would have provided information sufficient to bring their claims.[65] Here, of course, the rights of management, the Board, and the Trust, go well beyond the scope of shareholders' rights to books and records. Because "[a]n injury is not 'inherently unknowable' where a plaintiff possesses all of the tools to discover it, but simply waits a while," Counts I, VII, IX, and XI should be dismissed as time-barred.[66]

## 2.      There Is No Basis For Equitable Tolling

The Opposition Brief next improperly invokes the doctrine of equitable tolling to save its time-barred claims. "[T]o invoke the equitable tolling doctrine, the facts underlying a claim [must be] so hidden that a reasonable plaintiff could not timely discover them."[67] The doctrine exacts a high standard from plaintiffs such that even in situations where a defendant "uses every fraudulent

---

[64] *E.g.*, *McGowan v. Empress Ent., Inc.*, 791 A.2d 1, 5 (Del. Ch. 2000).

[65] *Marshal T. Simpson Tr. v. Invicta Networks, Inc.*, 2017 WL 4684325, at *7-8 (D. Del. Oct. 18, 2017).

[66] *Smith v. Donald L. Mattia, Inc.*, 2012 WL 252271, at *3 n.18 (Del. Ch. Jan. 13, 2012).

[67] *Buddenhagen v. Clifford*, 2024 WL 2106606, at *24 (Del. Ch. May 10, 2024).

device at its disposal to mislead a victim or obfuscate the truth, no sanctuary from the statute will be offered to the dilatory plaintiff who was not or should not have been fooled."[68]

In support of its argument, Plaintiff again cites only one case, *In re Fruehauf*.[69]  There, the court found the plaintiffs pled sufficient actionable or fraudulent self-dealing because the defendants caused them to pay large sums of money for largely unperformed management and legal services and because the defendants engaged in insider trading.[70]  Here, Plaintiff conclusorily states that Defendants knowingly relied on materially wrong financial information to sell their personal shares to outsiders to the Company.[71]  First, even at the pleading stage, Plaintiff still must provide at least some factual support to bolster its contentions that the CEO continually duped Thrasio's sophisticated Board in such a way that Plaintiff could not possibly have had inquiry notice.  As Delaware courts have recognized, even "the trusting plaintiff still must be reasonably attentive to his interests."[72]  Second, Plaintiff's allegations pertain to misleading outside investors. But Plaintiff stands in the shoes of the Company itself—not outside investors—in seeking to bring claims for injury to the Company.  While an outside investor may not be privy to the internal state of a company, Plaintiff's arguments that fundamental financial and operational issues were objectively undiscoverable to Thrasio's own Board fall flat.

Plaintiff also provides no support for its argument that equitable tolling should be applied to Counts VII and XI, underscoring the mismatch in this contention and the application of the tolling doctrine.  Plaintiff would have to allege that the Defendants hid their inventory control

---

[68] *Id.*

[69] Opp. at 25-26.

[70] *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 193 (D. Del. 2000).

[71] Opp. at 25-26.

[72] *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *8 (emphasis in original).

methods from the rest of the Company to such an extent that Plaintiff could not have discovered it in time.    Plaintiff clearly fails to accomplish this and the Disinterested Directors Report conclusively rebuts any such argument.

### 3.      The Continuing Wrong Doctrine Does Not Apply Here

The COR Defendants established in the Opening Brief that Plaintiff is not entitled to rely on the "continuing wrong doctrine" because under Delaware law, "it is settled that the failure to remedy a wrong does not mean that the wrong is continuing."[73]  This doctrine is intended to be a "narrow one . . . applied only in unusual situations,"[74] and it "may only be predicated on continuing unlawful acts and <u>not on the continuing effects of earlier unlawful conduct</u>.   The distinction is between a single wrong that has continuing effects and a series of independent, distinct wrongs."[75]

Instead of engaging with this well-settled law, Plaintiff sidesteps it by asserting that the various acts are "so inexorably intertwined" that there is "but one continuing wrong."[76]  Accepting this interpretation would "frustrate the purpose behind requiring parties to bring timely claims and bring nearly every claim within the category of a continuing wrong."[77]  With respect to Count VII, Plaintiff alleges that Defendants failed to establish proper financial and inventory records.  Even construed in the light most favorable to Plaintiff, that alleged failure is merely a failure to remedy a wrong, not separate and independent wrongs.  Similarly, Count XI, Plaintiff's aiding and abetting claim, fails as it is based on the aforementioned discrete oversight allegations.

---

[73] Opening Br. at 34.

[74] *Desimone v. Barrows*, 924 A.2d 908, 925 (Del. Ch. 2007).

[75] *Henry v. Bank of Am.*, 147 A.D.3d 599, 601 (2017) (emphasis added).

[76] Opp. at 26.

[77] *In re Thomas Lawrence Reeves Irrevocable Tr. Under Agreement Dated Feb. 26, 1997*, 2015 WL 1947360, at *9 (Del. Ch. Apr. 29, 2015).

Finally, Claim IX, for "Usurping Corporate Opportunity," is based on Defendants' involvement the 2020 and 2021 Secondary Sales. The 2020 Secondary Sale was entered into on December 31, 2020. Therefore, the statute of limitations expired on December 31, 2023. The continuing wrong doctrine cannot save this claim because it concerns a discrete event.[78]

## IV. THE CASHMAN SEPARATION AGREEMENT IS VALID AND ENFORCEABLE

Almost two years before Thrasio filed for bankruptcy, Thrasio and Cashman entered into the Cashman Separation Agreement that contained, among other things, a mutual release of claims that, as the Opening Brief explained, now bars Plaintiff's claims against Cashman.[79] Plaintiff does not dispute that Thrasio released the claims it now asserts against Cashman through the Cashman Separation Agreement.[80] Rather, Plaintiff tries to circumvent the Agreement's release provision by arguing that: (1) the Plan and Confirmation Order rejected the Agreement as an executory contract; (2) its 20 claims against Cashman fall within the release's limited exceptions; and (3) the Cashman Separation Agreement should be construed under Massachusetts law, under which it purportedly fails. Each of Plaintiff's arguments fails for the reasons stated below. And because the validity of the Cashman Separation Agreement, and the liability release contained therein, is a threshold issue that would resolve all, or substantially all, claims against Cashman, the Court should resolve it first.[81]

---

[78] *See Gavin v. Club Holdings, LLC*, 2016 WL 1298964, at *7 (D. Del. Mar. 31, 2016) (holding the continuing wrong doctrine did not apply to the plaintiff's claims for avoidance and recovery of transfers because the parties entered the related agreements on discrete dates).

[79] Opening Br. at 12. As noted in the Opening Brief, Cashman is defined to include Cashman Family Investment II, LLC.

[80] *See, e.g.*, Opp. at 85 ("The fair market value of the claims against . . . Cashman [would be at least] the amount [he] earned from the Secondary Sales. The Company did not receive anything of equivalent value in releasing such high-value claims.").

[81] *Marcus v. Rapid Advance, LLC*, 2013 WL 2458347, at *3 (E.D. Pa. June 7, 2013) ("[T]he law of this Circuit (the so-called 'Third Circuit Rule') permits a defense based on a release to be raised by motion under Rule 12(b)(6), where the release is raised in the complaint or the defense is apparent on the face of the complaint.").

19

A.     **The Cashman Separation Agreement Is Not An Executory Contract And Therefore Could Not Have Been Rejected By The Plan**

Plaintiff provides no legal authority to support its argument that the language of the Plan and Confirmation Order rejected the Cashman Separation Agreement.  While the Plan rejected certain executory contracts and unexpired leases,[82] the Cashman Separation Agreement is not an executory contract as defined by the Third Circuit because it involved no "unperformed material obligations" that could have led it to be rejected.[83]  "Section 365 [of the Bankruptcy Code] allows debtors to assume or reject an executory contract, but provides no such option for a non-executory contract."[84]  Unlike an executory contract, a release is not an ongoing obligation; at the moment of its execution, "the parties have received the benefit of their bargain."[85]  As such, any and all claims Thrasio had against Cashman, and vice versa, instantly were released on the date the Cashman Separation Agreement was executed.  Because the Separation Agreement was not an executory contract, the Plan did nothing to destroy its mutual release of claims.  Plaintiff may not now resuscitate claims that already were released in exchange for good and valuable consideration.

B.     **The Cashman Separation Agreement's Release Encompasses Each Of Plaintiff's Claims Against Cashman**

Because the release of claims unequivocally released Cashman from liability for each of the claims Plaintiff now asserts, Plaintiff argues that the limited exceptions enumerated in the release allow it to bring its claims.[86]  The Opposition Brief mischaracterizes the release's

---

[82] *See* Opp. at 38-39.

[83] *In re Exide Techs.*, 378 B.R. 762, 766 (Bankr. D. Del. 2007); *see Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989) ("[An executory contract is] a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.").

[84] *In re Exide Techs.*, 378 B.R. at 765.

[85] *In re SuperMedia, Inc.*, 2013 WL 5567838, at *4 (Bankr. D. Del. Oct. 9, 2013).

[86] *See* Opp. at 39-41.

20

exceptions as "expansive,"[87] despite the release permitting claims only for: (i) gross negligence, fraud, or criminal conduct (ii) of which the Company had no knowledge at the time of execution.[88] None of Plaintiff's claims against Cashman falls within these narrow exceptions.

Plaintiff's argument that Cashman asks the Court to rely on matters "from outside the Complaint and to draw inferences in his favor"[89] as to Thrasio's actual or constructive knowledge is plainly incorrect.  Cashman simply asks the Court to consider Plaintiff's own Complaint and filings previously made in the bankruptcy proceedings before this Court, including the Disinterested Directors' Report and the Cashman Separation Agreement.

The Complaint itself demonstrates Thrasio's knowledge that Cashman was a beneficiary of the Tender Offer and the Secondary Sales, as the Board evaluated and approved all of these decisions long before the Cashman Separation Agreement was contemplated.[90]  The Complaint concedes that the Board was also aware of, and unanimously approved, the Silberstein Separation Agreement in September 2021, many months before the Cashman Separation Agreement.[91] Finally, the Complaint concedes on its face that Thrasio had actual knowledge of what Plaintiff alleges was Cashman's culpability prior to the execution of the Cashman Separation Agreement, and in so doing, Plaintiff tips its hand concerning the Board's awareness of the state of the Company's finances.  The Complaint alleges that "[i]n February 2022 . . . [a] board member became alarmed and realized that, contrary to what he had been led to believe, the Company was not operating at a profit.  The Board decided that a significant management change was needed

---

[87] *Id.* at 40.

[88] Cashman Separation Agreement ¶ 10.

[89] Opp. at 40 (emphasis in original).

[90] Compl. ¶¶ 63, 77, 96, 98, 119.

[91] *Id.* ¶ 122.

and, in search of a new CEO, immediately engaged . . . AlixPartners to salvage what the investors had come to realize was a failing business."[92]  Notwithstanding this alleged knowledge, Thrasio opted to release Cashman from liability months later.

Other filings made in these bankruptcy proceedings also reveal Thrasio's actual and/or constructive knowledge of the conduct underlying Plaintiff's claims well before the Cashman Separation Agreement was executed.[93]  The Disinterested Directors' Report concluded that Thrasio's independent directors became aware of the Company's "financial and inventory control issues" no later than the receipt of the AlixPartners report in September 2021.[94]  The Report also concluded that the material decisions regarding Thrasio's investment in, purchase of, and divestment of Yardline were approved by the Thrasio Board in September 2021, well before the Cashman Separation Agreement was executed.[95]

Plaintiff relies on *Fruehauf* to argue that whether Thrasio had "actual or constructive knowledge" of Cashman's allegedly culpable acts is a factual issue precluding dismissal.[96]  But *Fruehauf* found a factual issue because the release's language that it applied to claims "arising out of the litigation only" was reasonably susceptible to two different meanings.[97]  Here, Plaintiff does not dispute the meaning of the release's carve-out language.[98]

---

[92] *Id.* ¶ 125.  Of course, the Cashman Separation Agreement itself stated that it did not construe any of Cashman's conduct of which it was aware as "gross negligence or fraudulent conduct or that would result in a felony criminal conviction."  Cashman Separation Agreement ¶ 10.

[93] *See In re W.R. Grace & Co.*, 626 B.R. at 236 n.13 ("[A] bankruptcy court may take judicial notice of its own docket entries, its own records, and contents of court records from other courts in related matters."); *see also* Opening Br. at 44 n.186, 188 (first citing Cashman Separation Agreement ¶ 10, and then citing Disinterested Directors' Report ¶ 40).

[94] Disinterested Directors' Report ¶ 35.

[95] *Id.* ¶ 42.

[96] Opp. at 40 (citing *In re Fruehauf*, 250 B.R. at 195).

[97] *In re Fruehauf*, 250 B.R. at 195.

[98] *See* Opp. at 39-41; *see also Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 477 (D. Del. 2021) ("[W]hen one side files a motion raising an issue, and the other side does not respond, the other side is considered to have conceded the point.").

For these reasons, Plaintiff has failed to demonstrate that Cashman's conduct falls within the narrowly drawn exceptions to the Cashman Separation Agreement's release of claims.

### C.    Massachusetts Law Does Not Limit The Release

Plaintiff's final attempt to evade the release is its flawed argument that the Cashman Separation Agreement must be construed under Massachusetts law, which does not permit releases for grossly negligent conduct.

While Plaintiff accurately recites the Agreement's Massachusetts choice-of-law and venue provisions,[99] this adversary proceeding does not relate to the construction, or breach, of the Cashman Separation Agreement itself.  Rather, this dispute concerns the application of the release to the conduct alleged in the Complaint.[100]

Regardless, Plaintiff has not sufficiently alleged that Cashman acted with gross negligence, which is a distinct cause of action under Massachusetts law.[101]  Massachusetts defines gross negligence as "very great negligence, or the absence of slight diligence, or the want of even scant care."[102]  The Complaint's references to gross negligence regarding the Silberstein Separation Agreement,[103] the purchase of Yardline,[104] and Thrasio's inventory and accounting controls[105] are conclusory, providing little more than a formulaic recitation of the required element.  And the term

---

[99] *See* Opp. at 41 (citing Cashman Separation Agreement ¶ 12(e)).

[100] *See Portillo v. Nat'l Freight, Inc.*, 323 F. Supp. 3d 646, 652-53 (D.N.J. 2018) (concluding a narrowly drafted choice-of-law provision applied only to interpretation and performance of the agreement itself and not to related claims that did not arise directly from the agreement).

[101] *Doelger v. JPMorgan Chase Bank, N.A.*, 2024 WL 4727989, at *18-21 (D. Mass. Mar. 25, 2024) (analyzing breach of fiduciary duty claims and gross negligence claims as separate and distinct under Massachusetts law), *report and recommendation adopted*, 2024 WL 4406990 (D. Mass. Sept. 27, 2024).

[102] *Lautieri v. Bae*, 2003 WL 22454645, at *1 (Mass. Super. Oct. 29, 2003) (quoting *Zavras v. Capeway Rovers Motorcycle Club, Inc.*, 44 Mass. App. Ct. 17, 20 (1997)).

[103] Compl. ¶ 241.

[104] *Id.* ¶ 290.

[105] *Id.* ¶ 198.

"gross negligence" appears only within Plaintiff's claims for breach of fiduciary duty, further confirming that Delaware law applies.[106]  Thus, even under Massachusetts law, Plaintiff's claims against Cashman are still barred by the release.

## V.    PLAINTIFF FAILS TO STATE A FRAUDULENT CONVEYANCE CLAIM

The COR Defendants established in the Opening Brief several fatal deficiencies in Plaintiff's fraudulent conveyance claims, including, among others, Plaintiff's failure to meet its heightened pleading standard, its attempted use of these claims to remedy alleged general corporate misconduct and impermissibly repackage its fiduciary duty claims as fraud, and its conclusory treatment of the badges of fraud required to be alleged under relevant law.  Plaintiff's Opposition Brief is largely a regurgitation of the Complaint's general and conclusory allegations of misconduct by Plaintiff's disfavored officers and directors from whom it now seeks to recover money it could not obtain through the Plan.[107]  Repeating allegations does not cure their deficiency.

### A.    Plaintiff's Allegations Fail To Meet Basic, Much Less Heightened, Pleading Standards

Plaintiff's inability to provide more than conclusory allegations in support of its fraudulent conveyance claims is particularly troublesome given its extensive knowledge of the facts underlying the alleged fraudulent transactions by virtue of its access to the millions of documents obtained during exhaustive discovery.  Plaintiff does not contest that it received these documents six months prior to filing the Complaint, nor that it relied on them in forming the basis of its claims.  Still, Plaintiff contends that the rigid requirements of Rule 9(b),[108] which courts have relaxed in

---

[106] *Id.* ¶¶ 198, 205, 210, 241, 290.

[107] *See Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1073 (3d Cir. 1992) ("[B]usinesses fail for all sorts of reasons, and [] fraudulent [conveyance] laws are not a panacea for all such failures.").

[108] As Plaintiff acknowledges, its constructive fraudulent conveyance claims are subject to Rule 8(a)'s notice pleading requirements, *In re PennySaver USA Publ'g, LLC*, 587 B.R. 445, 455-56 (Bankr. D. Del. 2018), and its actual fraudulent conveyance claims are governed by the heightened pleading standards of Rule 9(b), *In re CTE 1 LLC*, No. 19-30256 (VFP), 2023 WL 5257940, at *12 (Bankr. D.N.J. Aug. 11, 2023).

instances where a Trustee "does not have actual knowledge of the underlying transactions,"[109] should not be strictly applied to its actual fraudulent conveyance claims.[110] But this relaxed standard applies only "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control."[111] Because this showing cannot be made, the heightened pleading standard of Rule 9(b) applies to Plaintiff's actual fraudulent conveyance claims.[112] For the following reasons, Plaintiff's actual fraudulent conveyance claims do not pass muster under Rule 9(b),[113] nor do Plaintiff's constructive fraudulent claims withstand Rule 8(a)'s notice pleading requirements.

---

[109] *In re CTE 1 LLC*, 2023 WL 5257940, at *12.

[110] Opp. at 86-87.

[111] *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002); *see also Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987) ("[T]he degree of particularity required should be determined in light of such circumstances as whether the plaintiff has had an opportunity to take discovery of those who may possess knowledge of the pertinent facts."); *In re Trib. Co. Fraudulent Conv. Litig.*, 2017 WL 82391, at *4 (S.D.N.Y. Jan. 6, 2017) ("[T]he particularity requirement [of Rule 9(b)] still applies in cases where, as here, the bankruptcy trustee had access to 'numerous documents' and 'depositions of many witnesses' when crafting [its] Complaint[.]"), *aff'd*, 10 F.4th 147 (2d Cir. 2021).

[112] Plaintiff asserts that the Third Circuit has consistently relaxed the requirements of Rule 9(b) where the plaintiff had access to documents before filing its complaint and thus was able to evaluate any potential causes of action. *See* Opp. at 86-87. While not specific to fraudulent conveyance claims, courts within the Third Circuit have found relaxing Rule 9(b) to be inappropriate in similar contexts. *See, e.g., United States v. Chubb Inst.*, 2010 WL 1076228, at *11 (D.N.J. Mar. 22, 2010) (refusing to relax Rule 9(b) pleading requirements for claims brought under the False Claims Act where the plaintiffs "had access for the past two years to voluminous records concerning [the defendant's] employment placement statistics"); *Fulton Fin. Advisors, Nat. Ass'n v. NatCity Invs., Inc.*, 2013 WL 5635977, at *4 n.3 (E.D. Pa. Oct. 15, 2013) (refusing to relax 9(b) pleading requirements for, *inter alia*, common law fraud claims where the plaintiff's allegations of fraud were "not focused on [] inside, non-public information, but rather on publicly available information[.]"); *see also Cap. Inv. Funding, LLC v. Lancaster Res., Inc.*, 2015 WL 892750, at *5 (D.N.J. Feb. 27, 2015) (noting that Rule 9(b)'s requirements will not be relaxed "where the information necessary to plead fraud claims with specificity may be obtained from a third-party (i.e., that information is not in a defendant's exclusive control)"); *Richie v. Hillstone Env't Partners, LLC*, 2019 WL 2995178, at *5 (D. Del. July 9, 2019) (finding that the plaintiffs failed to explain how information necessary to plead their claims lied exclusively within the defendant's control where the plaintiffs were granted access to the information), *report and recommendation adopted*, 2019 WL 5110501 (D. Del. Aug. 26, 2019).

[113] Even where Rule 9(b)'s requirements are relaxed, a plaintiff "must accompany [its] allegations with facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendant['s] control." *In re Innovation Fuels, Inc.*, No. 11-12911 (DHS), 2013 WL 3835827, at *4 (Bankr. D.N.J. July 22, 2013) (quoting *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 646 (3d Cir. 1989)).

### B.     Plaintiff's Failure To Identify The Applicable State Law Violates Rules 8 and 9(b)'s Pleading Requirements

Plaintiff's fraudulent conveyance claims should be dismissed because they fail to identify the applicable state statute(s), forcing Cashman to speculate about the grounds upon which the claims are based and preventing him from defending himself.

Plaintiff asserts that it has no obligation to allege the statute on which its fraudulent conveyance claims rest, primarily relying on *In re Oakwood Homes Corp.*[114] But *Oakwood Homes* is no longer good law, as it "was decided prior to *Twombly* and *Iqbal*,"[115] which raised the pleading standards under Rule 8 "from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss."[116] "In light of *Twombly* and *Iqbal* especially, case law provides that [failure to identify the applicable state law] necessitates dismissal of [a plaintiff's] § 544 claim for failure to state a claim upon which relief can be granted."[117] Thus, Plaintiff must plead the state law applicable to its fraudulent conveyance claims, and *Oakwood Homes* does not warrant a finding to the contrary.

Plaintiff also incorrectly contends that it need not specify the applicable state law because the Court will simply perform a choice-of-law analysis,[118] which warrants application of the law

---

[114] 340 B.R. 510 (Bankr. D. Del. 2006).  *See* Opp. at 21, 87.

[115] *In re Innovation Fuels, Inc.*, 2013 WL 3835827, at *9.

[116] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[117] *In re Jevic Holding Corp.*, 2011 WL 4345204, at *10 (Bankr. D. Del. Sept. 15, 2011) (collecting cases); *see also In re Leff*, 631 B.R. 106, 117 (Bankr. E.D.N.Y. 2021) (dismissing fraudulent conveyance claim where "[t]he Trustee d[id] not identify the applicable state law he seek[ed] to utilize pursuant to § 544").

[118] Plaintiff relies on *Emerald Cap. Advisors Corp. v. Bayerische Moteren Werke Aktiengesellschaft (In re Fah Liquidating Corp.)*, 572 B.R. 117 (Bankr. D. Del. 2017) and *Off. Comm. of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.)*, 281 B.R. 852 (Bankr. D. Del. 2002), in making the sweeping statement that "[c]ourts within the Third Circuit recognize as a matter of course that is unnecessary for plaintiff to specify the state law applicable to fraudulent transfer claims, as the court will engage in a choice of law analysis based on the state law of the forum state[.]"  Opp. at 21.  But there is no indication that the defendants in those actions sought dismissal of the plaintiffs' fraudulent conveyance claims on the basis that the plaintiffs failed to specify the applicable state law. Thus, the courts had no obligation to consider whether the failure to specify state law warranted dismissal of the

of the forum state, New Jersey.[119]  In support of this assertion, Plaintiff argues that "there is no actual conflict" between the potentially applicable laws—Delaware, Massachusetts, New Jersey, and New York.[120]  Not so.  For example, although New Jersey and New York have adopted the Uniform Voidable Transactions Act ("UVTA"),[121] the Uniform Fraudulent Transfer Act ("UFTA") remains in effect in Delaware and Massachusetts.[122]  The UVTA supplemented the UFTA in one critical manner—the UVTA provides that fraudulent conveyance claims "shall be governed by the local law of the jurisdiction in which the debtor is located when the transfer is made or the obligation is incurred."[123]  For debtors that have "only one place of business," such as Thrasio, the debtor is "located at its place of business."[124]  Thus, because Thrasio "had a principal place of business in Massachusetts,"[125]  Plaintiff's fraudulent conveyance claims, if evaluated under the law of a State that has adopted the UVTA, are to be governed by Massachusetts law.

The intricacies do not end there.  New Jersey's UVTA became effective on August 10, 2021, and therefore governs only transactions that occurred on or after that date.[126]  Relevant here, the transactions underlying Plaintiff's fraudulent conveyance occurred between July 2020 and

---

plaintiffs' fraudulent conveyance claims.  *See Lebahn v. Owens*, 813 F.3d 1300, 1308 (10th Cir. 2016) (noting that a district court does not have an obligation to *sua sponte* construct an argument on a party's behalf); *Hunt Optics & Imaging, Inc. v. Greene*, 2010 WL 3303792, at *1 (W.D. Pa. Aug. 19, 2010) ("[I]t is the parties' duty, not the courts', to present legal authority and arguments in support of a motion.").

[119] Opp. at 21-22.

[120] *Id.* at 22.

[121] *See* N.J.S.A. §§ 25:2-20-25:2-36; N.Y. Debt. & Cred. Law §§ 270-281,

[122] *See* 6 Del. C. §§ 1301-1311; M.G.L. c. 109A, §§ 1-12

[123] N.J.S.A. § 25:2-35(b); *see also* N.Y. Debt. & Cred. Law § 279(b) (same).

[124] N.J.S.A. § 25:2-35(a)(2); *see also* N.Y. Debt. & Cred. Law § 279(a)(2) (same).

[125] Opp. at 22.

[126] *See In re CTE 1 LLC*, 2023 WL 5257940, at *24 n.106 (noting that the New Jersey UVTA replaced the UFTA "for transfers that occurred on or after the August 10, 2021 effective date of the new statute").

August 2022.[127]  It appears that if New Jersey law is to apply to Plaintiff's claims, some of the transactions underlying the Complaint would be governed by the UFTA, while others would be governed by the UVTA.  But again, the New Jersey UVTA requires Massachusetts law to govern those transactions that occurred after August 10, 2021.  Such complexity demonstrates why Plaintiff must specify the applicable law.  Plaintiff's fraudulent conveyance claims must be dismissed on this basis alone.[128]

## C.    Bankruptcy Courts Do Not Recognize A Claim For "Conspiracy To Fraudulently Transfer"

Plaintiff's conspiracy to fraudulently transfer claims must be dismissed because bankruptcy courts do not allow trustees to bring such claims.[129]  Plaintiff's contention that "[t]he New Jersey Supreme Court has recognized conspiracy to commit fraudulent transfer as a cause of action"[130] is irrelevant.[131]  "[A] bankruptcy trustee is not authorized to pursue every state law action that creditors of the debtor might pursue, only those that the [Bankruptcy] Code expressly allows the trustee to pursue."[132]  "The trustee's only authority to assert a creditor's state law causes of action related to fraudulent conveyances is found in section 544(b) of the Code," which "only

---

[127] *See* Compl. ¶¶ 59, 116, 148, 168, 265, 299, 300, 310, 311.

[128] Plaintiff does not address the COR Defendants' argument that Plaintiff has failed plausibly to allege a fraudulent conveyance claim pursuant to N.J.S.A. § 25:2-27(b).  *See* Opening Br. at 49 n.211.  Plaintiff's failure to do so warrants dismissal of Plaintiff's fraudulent conveyance claims to the extent they rely on N.J.S.A. § 25:2-27(b), or another analogous state statute.  *See Abdullah v. Rowan Univ.*, 2024 WL 4751196, at *16 (D.N.J. Nov. 12, 2024) (collecting cases for proposition that when a plaintiff "fails to respond to arguments supporting dismissal of a claim, courts treat that failure as an abandonment of the claim").

[129] *In re Fedders N. Am., Inc.*, 405 B.R. 527, 548 (Bankr. D. Del. 2009) (noting that bankruptcy courts have refused to permit trustees to pursue claims for conspiracy to commit a fraudulent transfer).

[130] Opp. at 63.  This is another instance where Plaintiff's legal shell game of failing to state which State's fraudulent conveyance claims Plaintiff seeks to assert provides insufficient notice to the Defendants (and the Court) of which claims are being asserted and what defenses are available.

[131] *See In re Fedders N. Am., Inc.*, 405 B.R. at 548 ("Whether any state law recognizes such a claim, even the law of the controlling state . . . is irrelevant in bankruptcy proceedings[.]"); *In re Tronox Inc.*, 429 B.R. 73, 102-04 (Bankr. S.D.N.Y. 2010) (rejecting the plaintiffs' argument that they were permitted to bring "civil conspiracy and aiding and abetting a fraudulent conveyance claims," despite these claims being recognized under Oklahoma law).

[132] *In re Fedders N. Am., Inc.*, 405 B.R. at 548.

permits the trustee to <u>avoid</u> a fraudulent transfer."[133]  Accordingly, Plaintiff's conspiracy to fraudulently transfer claims must be dismissed.

### D.    Plaintiff's Conclusory Allegations Fail To Support Its Fraudulent Conveyance Claims

#### 1.    Plaintiff Fails Plausibly To Allege That The Release Of Claims By Thrasio Against Cashman Was A Fraudulent Transfer

Plaintiff's claims seeking to avoid the Cashman Separation Agreement's release as a fraudulent conveyance are insufficiently alleged.  Plaintiff does little more than recite the elements necessary to state a claim.[134]  Plaintiff's allegations of insolvency—that "the total fair value of Thrasio's liabilities exceeded the total amount of Thrasio's assets"—are conclusory[135] and inconsistent, as the Complaint asserts that Thrasio became insolvent at various points in time.[136]  Plaintiff's empty allegation that Thrasio "did not receive 'reasonably equivalent value' for the transfer,"[137] does not account for the benefits Thrasio received from the Cashman Separation Agreement's release of claims against the Company, non-compete and confidentiality agreements,

---

[133] *Id.* (emphasis added).

[134] *See Traisman v. Khmelnitsky*, 2020 WL 2847751, at *5-7 (D.N.J. June 1, 2020) (finding allegations that "merely parrot[ed] the language of the statute" insufficient to support fraudulent conveyance claims).

[135] *See In re Innovation Fuels, Inc.*, 2013 WL 3835827, at *13 (finding insufficient allegations of insolvency where the plaintiff merely asserted that the fraudulent transfers occurred at a time when the debtors were insolvent, despite having access to the debtors' books and records).  Plaintiff takes issue with the COR Defendants' reliance on *In re Innovation Fuels, Inc.*, asserting that the defendants in that decision "were able to point to loan documents that directly contradicted the allegations of insolvency."  Opp. at 84.  But the court found that plaintiff's allegations were insufficient even standing alone.  *In re Innovation Fuels, Inc.*, at *13.  In any event, other decisions support a finding that Plaintiff has failed to plausibly allege insolvency.  *See, e.g.*, *In re Island View Crossing II, L.P.*, 604 B.R. 181, 199-200 (Bankr. E.D. Pa. 2019) (finding insufficient allegations of insolvency where the plaintiff only "state[d] the boilerplate conclusion that the Transfers were made when the Debtor was insolvent or rendered the Debtor insolvent"); *In re CRC Parent Corp.*, 2013 WL 781603, at *5 (Bankr. D. Del. Mar. 1, 2013) (finding insufficient the plaintiff's "near-verbatim recitation of the statutory elements of section 548 [and failure to] provide[] any facts to support [its] assertion that the Debtors were insolvent or became insolvent as a result of the transfers").

[136] Plaintiff contends that it is not required to allege the exact moment of insolvency because its claims are subject to relaxed Rule 9(b) pleading standard.  Opp. at 86.  Plaintiff's argument should be rejected because, as discussed *supra*, relaxing Rule 9(b)'s heightened pleading standard would be inappropriate here.  In any event, Plaintiff has had access to all of Thrasio's financial documents for months and cannot be heard that they could not allege facts to support a date of insolvency.

[137] Opp. at 85.

29

forfeitures of restricted stock units, and restrictions on sale of stock.[138]    These terms of the

Separation Agreement demonstrate that it was negotiated at arm's length,[139] a finding supported

by the fact that Thrasio and Cashman were represented by their own counsel during negotiations.

Plaintiff's minimal allegations fail to suggest otherwise.    Thus, Plaintiff's fraudulent conveyance

claims concerning the Cashman Separation Agreement must be dismissed.

### 2.    Plaintiff Fails Plausibly To Allege That The Transfer Of Tender Offer Proceeds Was A Fraudulent Transfer

Plaintiff's claims seeking to avoid the Tender Offer proceeds as a fraudulent conveyance

are similarly without merit.    Plaintiff again asserts that "Thrasio was insolvent at the time of the

Tender Offer or rendered insolvent by the Tender Offer."[140]    Such conclusory allegations do little

more than provide a formulaic recitation of the required elements and should be dismissed on that

basis alone.    Moreover, the allegations are directly contradicted by the findings and conclusions in

the Disinterested Directors' Report that "sophisticated and highly-experienced third-party equity

investors in the Series C-1 Stock Issuance believed, based on due diligence, that the Company had

significant equity value after accounting for the Tender Offer."[141]

---

[138] Cashman Separation Agreement ¶¶ 3(e), 6, 9.  *See In re BH Sutton Mezz LLC*, 2016 WL 8352445, at *34 (Bankr. S.D.N.Y. Dec. 1, 2016) (finding reasonably equivalent value where the debtors received indirect benefits, such as "the opportunity to engage in workout negotiations with the Defendants and avoid the potential of an immediate default, acceleration and foreclosure," in return for "surrender[ing] the opportunity to pursue any claim that the Debtors might have had").

[139] *In re Mall at the Galaxy*, 2023 WL 2966785, at *5 (D.N.J. Apr. 17, 2023) (noting that to determine whether reasonably equivalent value was conferred, courts consider, among other factors "the arm's-length nature of the transfer"), *aff'd sub nom. In re Mall at the Galaxy, Inc.*, 2024 WL 3688721 (3d Cir. Aug. 7, 2024).

[140] Opp. at 57.

[141] Disinterested Directors' Report ¶ 53.  Plaintiff argues that "the fact that third parties invested is not adequate proof of solvency" because "the D&O Defendants provided fraudulent information to those investors, concealed information about the Company's true financial condition, and had unreliable and inaccurate financial and operational records." Opp. at 59.  But Plaintiff fails to point to any allegations in its Complaint that the Series C-1 investors, in particular, were misled.

Plaintiff also contends that Thrasio did not receive reasonably equivalent value for the Tender Offer proceeds, but a straightforward review of the transaction as alleged[142] indicates otherwise—"Thrasio received approximately $259 million in cash in the Series C-1 Stock Issuance, while paying approximately $146.5 million in the Tender Offer[.]"[143]  The Opposition Brief's assertion that "the Company immediately retired the shares it redeemed—and the shares had no value in any event" does not alter this conclusion.[144]  Plaintiff offers no explanation for how the retirement of shares did not benefit Thrasio, despite numerous advantages associated with share retirement.  Consequently, Plaintiff fails plausibly to allege that the Series C-1 Stock Issuance and Tender Offer were anything but legitimate business dealings, and the corresponding fraudulent conveyances claims must be dismissed.

### 3.    Plaintiff Fails Plausibly To Allege That The Yardline Transactions Were Fraudulent Transfers

Plaintiff's fraudulent conveyance claims concerning cash payments to Yardline in exchange for Promissory Notes and Thrasio's "writing off/forgiving" Promissory Notes also fail. Plaintiff does not allege that the Yardline transactions were to or for the benefit of Cashman, and indeed concedes that the transactions did not constitute transfers to Cashman himself.[145]  Instead, the Opposition Brief argues that Silberstein wrote to Cashman that the Yardline transfers would

---

[142] It is necessary to view the Series C-1 Stock Issuance and the Tender Offer as a single, integrated transaction because "[t]he parties agreed to the Series C-1 Stock Issuance and the Tender Offer in a single contract . . . and the Board approved issuing the Series C-1 Stock and launching the Tender Offer in a single Unanimous Written Consent[.]" Disinterested Directors' Report ¶ 51; *see also In re DSI Renal Holdings, LLC*, 617 B.R. 496, 504 (Bankr. D. Del. 2020) ("In analyzing a fraudulent transfer claim where there are multiple transactions, courts may collapse the steps, exchanges, and transactions that are "part of one integrated transaction" to examine the substance, rather than the form, of the transactions."); *In re Millennium Lab Holdings II, LLC*, 2019 WL 1005657, at *6 (Bankr. D. Del. Feb. 28, 2019) ("To determine whether the collapsing doctrine should be applied to a series of transactions, courts look to the substance rather than to the form of the transactions.  In other words, the court focuses on the overall financial consequences of the transactions and how they impact creditors.").

[143] Disinterested Directors' Report ¶ 52; *see also* Compl. ¶¶ 59-60.

[144] Opp. at 59.

[145] *Id.* at 96.

make Cashman "feel covered" from "any liability he may have incurred in his dual role as a

Thrasio D&O and Yardline Director."[146]  But giving a "feeling" of security is not sufficient to state

a fraudulent conveyance claim; "the benefit must be direct, ascertainable and quantifiable and must

correspond to, or be commensurate with, the value of the property that was transferred."[147]  The

Complaint is devoid of allegations regarding Cashman's potential liability from which he was

supposedly being covered, and any benefit from the purported "feeling" is pure speculation.[148]

Like the other fraudulent conveyance claims, those premised on the Yardline transactions must be

dismissed.[149]

## VI.    PLAINTIFF FAILS PLAUSIBLY TO ALLEGE UNJUST ENRICHMENT UNDER DELAWARE, NEW JERSEY, OR MASSACHUSETTS LAW

To circumvent Delaware's statute of limitations, Plaintiff attempts to convince the Court

instead to apply New Jersey or Massachusetts law to its unjust enrichment claim.[150]  But the claim

---

[146] Compl. ¶ 115.

[147] *In re Dreier LLP*, 452 B.R. 467, 478 (Bankr. S.D.N.Y. 2011) (cleaned up).

[148] *See In re Row NYC, LLC*, 2024 WL 61915, at *13 (Bankr. S.D.N.Y. Jan. 4, 2024) (finding that the plaintiff failed to allege that an alleged fraudulent transfer was to the benefit of the defendant where there was no "allegation that [the defendant] would be personally liable for [a cause of action], and so any potential benefit [from reducing liability] is not only speculative, but 'incidental, unquantifiable, or remote,' which prevents the Trustee from prevailing against [the defendant] under section 550"); *In re Acis Cap. Mgmt., L.P.*, 2024 WL 4500804, at *18 (Bankr. N.D. Tex. Oct. 15, 2024) (noting that "alleging that a transfer was intended to benefit a particular defendant is not enough"), *report and recommendation adopted sub nom. In re Acis Cap. Mgmt. LP*, 2025 WL 565676 (N.D. Tex. Jan. 6, 2025).

[149] Moreover, Plaintiff's allegations of insolvency and Thrasio's alleged failure to receive reasonably equivalent value are, yet again, wholly conclusory.  Especially so for Plaintiff's actual fraudulent conveyance claims, as Plaintiff has only alleged two badges of fraud, insolvency and lack of reasonably equivalent value, which, when alleged alone, have been held insufficient to state an actual fraudulent conveyance claim.  *See In re FTX Trading Ltd.*, 2024 WL 4562675, at *9-10 (Bankr. D. Del. Oct. 23, 2024) (noting that allegations of insolvency and a lack of reasonably equivalent value are insufficient to state a claim for actual fraudulent transfer because combined, these allegations merely state the definition of a claim for constructive fraudulent transfer); *In re Trib. Co. Fraudulent Conv. Litig.*, 2017 WL 82391, at *14 (finding insolvency and lack of reasonably equivalent value insufficient to support an inference of actual intent when standing alone because "[t]o hold otherwise would turn every constructive fraudulent conveyance claim into an actual fraudulent conveyance claim and thereby undermine the distinction between the two claims").

[150] Opp. at 28-31.

fails on its face regardless of whether the Court applies Delaware, New Jersey or Massachusetts law.

As for Delaware law, Plaintiff must show "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[151]  Plaintiff cites no authority for the proposition that it was impoverished due to Cashman's participation in the Tender Offer.  Nor does Plaintiff contest that the Tender Offer actually benefitted Thrasio or that the Tender Offer was justified by the contemporaneous Series C funding round that raised significant capital for the Company.[152]  Plaintiff also fails to allege the absence of a remedy provided by law.[153]  Instead, the Complaint includes five other claims predicated on Cashman's approval of the Tender Offer.[154]  Plaintiff's unjust enrichment claim must be dismissed under Delaware law.

Plaintiff's unjust enrichment claim also fails to pass muster under New Jersey law.  "New Jersey law does not recognize unjust enrichment as an independent tort cause of action."[155]  Plaintiff suggests that this case presents a quasi-contractual relationship for which it expected remuneration in return from Cashman.[156]  But "Plaintiff[] do[es] not allege that [it] performed or otherwise conferred a benefit on Defendant[s] under a quasi-contractual relationship with the expectation of remuneration."[157]  Rather, Plaintiff's allegations that Defendants "conducted [the Company] for their own benefit, . . . pirated [the Company's] assets, [and] fraudulently transferred

---

[151] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

[152] Plaintiff also fails to address whether other Board members whom the Plan released also were unjustly enriched by their own participation in the Tender Offer.  *See* Opening Br. at 57.

[153] *Nemec*, 991 A.2d at 1130-31 (dismissing unjust enrichment claim because alternate remedies existed).

[154] Compl. ¶¶ 130-86.

[155] *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 753-54 (D.N.J. 2013).

[156] Opp. at 64.

[157] *Cafaro v. HMC*, 2008 WL 4224805, at *7 (D.N.J. Sept. 8, 2008).

[] assets . . . sound[] in tort rather than contract."[158]  Indeed, the Complaint brings no contract claims against Cashman and numerous tort claims.  Plaintiff's unjust enrichment claim thus fails under New Jersey law.[159]

Finally, Plaintiff offers no authority showing that it adequately pled unjust enrichment under Massachusetts law.[160]  In Massachusetts, "[u]njust enrichment requires more than a benefit; the benefit must be unjust, which is dependent upon the reasonable expectations of the parties."[161] Plaintiff alleges nothing about what Thrasio, in whose shoes it stands, reasonably expected regarding the Tender Offer.  In any case, through the Disinterested Directors' Report, Thrasio articulated that expectation and found no colorable claim in connection with the Tender Offer.[162]

Under any law, Plaintiff's unjust enrichment claim must be dismissed.

## VII.    PLAINTIFF FAILS TO STATE A CLAIM FOR CORPORATE WASTE

### A.    Plaintiff Fails To State A Corporate Waste Claim Against Any COR Defendant Regarding Inventory

Plaintiff's argument that it adequately pled corporate waste regarding Thrasio's inventory is patently wrong and contradicts applicable case law.  As an initial matter, the corporate waste claim against Ouhadi and Rathod must be dismissed because such a claim may not be stated against corporate officers.[163]  Plaintiff fails to assert allegations against all COR Defendants that "shoulder

---

[158] *Jurista v. Amerinox Processing, Inc.*, 492 B.R. at 754.

[159] *Id.* at 753-55 (dismissing unjust enrichment claim brought under New Jersey law where, *inter alia*, the conduct underlying the claim sounded in tort because "New Jersey does not recognize unjust enrichment as an independent tort cause of action").

[160] *See* Opp. at 28-31, 64-65.

[161] *McLane, Graf, Raulerson & Middleton, P.C. v. Grady*, 2014 WL 2504540, at *3 (Mass. Super. Apr. 1, 2014).

[162] Disinterested Directors' Report ¶ 54.

[163] *See In re DSI Renal Holdings, LLC*, 574 B.R. 446, 475-76 (Bankr. D. Del. 2017) (dismissing corporate waste claim as asserted against officers because "[t]he Trustee has not cited to (nor did [the judge] uncover) any cases in which the Delaware courts have determined that officers [] could be liable for corporate waste."); *In re Sportco Holdings, Inc.*, 2021 WL 4823513, at *17 n.162 (recognizing that corporate waste claims have not been held to apply to non-directors).

[its] burden of proving that the exchange was 'so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration.'"[164]

Plaintiff misstates the law in its attempt to distinguish *Polk 33 Lending, LLC v. Schwartz*.[165] In *Polk*, the debtor-plaintiff argued that the company's founder and CEO committed waste by purchasing excess inventory despite uncertainty that it would be able to sell.[166] Though the company ended up needing just some of the inventory purchased to fulfill orders, the court dismissed the corporate waste claim, observing that "a finding of waste is inappropriate 'even if hindsight proves that the transaction may have been ill-advised.'"[167] Plaintiff argues that Defendants committed waste by purchasing inventory without "knowledge as to whether that inventory was needed or . . . could ever be sold."[168] Plaintiff's logic is flawed for two reasons.

First, Plaintiff ignores the litany of cases (including *Polk*) recognizing that courts are "ill-fitted to attempt to weigh the 'adequacy' of consideration under the waste standard or, *ex post*, to judge appropriate degrees of business risk."[169]

Second, to defeat a corporate waste claim, the COR Defendants simply need to have had a "good faith judgment that in the circumstances the transaction [was] worthwhile[.]"[170] As stated in the Opening Brief and by Thrasio CFO Josh Burke in the bankruptcy proceedings before this

---

[164] *In re Sportco Holdings, Inc.*, 2021 WL 4823513, at *17 (dismissing corporate waste claim at motion to dismiss stage).

[165] *See* Opp. at 72-73 (citing *Polk 33 Lending, LLC v. Schwartz*, 555 F. Supp. 3d 38, 43-44 (D. Del. 2021)).

[166] *Polk 33 Lending, LLC*, 555 F. Supp. 3d at 43-44.

[167] *Id.* at 44.

[168] Opp. at 73.

[169] *White v. Panic*, 783 A.2d 543, 554 (Del. 2001) (quoting *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000)); *see also Polk 33 Lending, LLC*, 555 F. Supp. 3d at 44; *Glazer v. Zapata Corp.*, 658 A.2d 176, 183 (Del. Ch. 1993) ("If reasonable, informed minds might disagree on the question, then in order to preserve the wide domain over which knowledgeable business judgment may safely act, a reviewing court will not attempt to itself evaluate the wisdom of the bargain or the adequacy of the consideration.").

[170] *Brehm v. Eisner*, 746 A.2d at 263.

Court, the COR Defendants, along with the entire Board, made decisions to purchase inventory based on forecasted growth and the need to keep Thrasio's products from being "'deprioritized in search results' by Amazon and being 'heavily penalized due to inventory shortages.'"[171] These considerations, coupled with "outsized demand driven by the COVID-19 pandemic, which Thrasio's management mistakenly projected would continue," led the Board to make business decisions regarding inventory purchases that, although ultimately unsuccessful, clearly served a corporate purpose.[172] Because Plaintiff fails to allege that any of the COR Defendants made "a transfer of corporate assets that serve[d] no corporate purpose,"[173] Plaintiff's corporate waste claim as to inventory must be dismissed.

## B. Plaintiff Fails To Allege That No Rational Actor Would Accept The Thrasio Board's Purchase Of Yardline

Plaintiff's second count of corporate waste against Cashman fares no better in overcoming the "extreme test" it must meet to adequately allege waste.[174] Plaintiff asserts in its Opposition Brief that "no rational actor would accept" Thrasio's purchase of Yardline,[175] yet in its Complaint, Plaintiff itself noted that Thrasio "envisioned that Yardline would complement Thrasio's business model."[176] This alone shows that the Thrasio Board's decision to approve the purchase of Yardline was not "a decision so extreme as to be inexplicable on any basis other than bad faith."[177]

---

[171] Opening Br. at 8 n.13 (quoting Decl. of Josh Burke, CFO Of Thrasio, In Supp. Of First Day Mots., Bankr. Dkt. 38, ¶ 43).

[172] Disinterested Directors' Report ¶ 33.

[173] *In re Green Field Energy Servs., Inc.*, 594 B.R. 239, 299 (Bankr. D. Del. 2018).

[174] *See id.* ("The test for corporate waste is an extreme test").

[175] Opp. at 102.

[176] Compl. ¶ 96.

[177] *In re McDonald's Corp. S'holder Derivative Litig.*, 291 A.3d at 694.

"Although reasonable minds could disagree with [the Defendants'] course of action, the bargain is not so out of whack as to constitute waste."[178]

Plaintiff attempts to convert its corporate waste claim into a fact issue. The Court is empowered, however, to dismiss a corporate waste claim at the motion to dismiss stage when, as here, "the Complaint fails to plead facts demonstrating that the Defendants engaged in transactions [that] no reasonable person could conclude made sense for [Thrasio]."[179] Plaintiff's second count of corporate waste must therefore be dismissed.

## VIII. CASHMAN DID NOT VIOLATE DELAWARE GENERAL CORPORATION LAW SECTION 160 BY VOTING TO APPROVE THE UNANIMOUSLY FAVORED TENDER OFFER

Finally, Plaintiff fails adequately to allege that Cashman's vote approving the Tender Offer violated Section 160 of the Delaware General Corporation Law. "Section 160(a)(1) takes a snapshot of a corporation's financial condition at the time of the redemption and requires that the corporation have sufficient surplus at that time."[180] Plaintiff bears the burden of alleging that the Thrasio Board, of which Cashman was one member, "acted in bad faith, relied on methods and data that were unreliable, or made determinations so far off the mark as to constitute actual or constructive fraud" in approving the Tender Offer.[181] The "board's determination as to the amount of funds legally available is a judgment-laden exercise entitled to deference."[182]

Plaintiff's Opposition Brief ignores the known circumstances surrounding the Tender Offer: (1) it was unanimously approved by the Board; (2) it occurred contemporaneously with the

---

[178] *Id.* at 663.

[179] *In re Sportco Holdings, Inc.*, 2021 WL 4823513, at *17.

[180] *Frederick Hsu Living Tr. v. ODN Holding Corp.*, 2017 WL 1437308, at *14 (Del. Ch. Apr. 14, 2017).

[181] *SV Inv. Partners LLC v. ThoughtWorks, Inc.*, 7 A.3d 973, 983 (Del. Ch. 2010), *judgment entered* (Del. Ch. 2011), and *aff'd*, 37 A.3d 205 (Del. 2011).

[182] *Cont'l Invs. Fund LLC v. TradingScreen, Inc.*, 2021 WL 3120860, at *17 (Del. Ch. July 23, 2021), *judgment entered* (Del. Ch. 2021), and *aff'd*, 275 A.3d 754 (Del. 2022).

Series C funding that raised hundreds of millions of dollars for the Company; (3) it occurred before

Covid supply shocks, which the bankruptcy proceedings make clear caused Thrasio's financial

issues; and (4) the Disinterested Directors concluded there were no claims worthy of pursuit arising

out of it.  Plaintiff's attempt to manufacture an issue of fact fails because "conclusory arguments

are not sufficient to justify discovery to assist [it] with [its] pleadings."[183]

---

[183] *Hartsel v. Vanguard Grp. Inc.*, 2015 WL 331434, at *5 (D. Del. Jan. 26, 2015), *aff'd*, 648 F. App'x 265 (3d Cir. 2016) (summary order).

## <u>CONCLUSION</u>

For the foregoing reasons as well as those set forth in the Opening Brief, Defendants Carlos Cashman, Aditya Rathod, Mounir Ouhadi, and Cashman Family Investment II, LLC respectfully request that their Motion to Dismiss be granted and the Complaint be dismissed against each of them in its entirety and with prejudice.

Dated: June 16, 2025

Respectfully submitted,

By:   s/ David A. Kotler

**DECHERT LLP**

David A. Kotler
Micaela Scotti (*pro hac vice*)
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Email: david.kotler@dechert.com
        micaela.scotti@dechert.com

Eric Auslander (*pro hac vice*)
1900 K Street, N.W.
Washington, D.C. 20006-1110
Telephone: (202) 261-3300
Facsimile: (202) 261-3333
Email: eric.auslander@dechert.com

**SHEPPARD MULLIN**

Joshua D.N. Hess (*pro hac vice*)
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: (415) 434-9100
Email: jdhess@sheppardmullin.com

*Counsel for Defendants Carlos Cashman,
Mounir Ouhadi, Aditya Rathod, and
Cashman Family Investment II, LLC*